IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DARRELL BOYE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 07-195C |
| | ) | (Judge Sweeney) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, respectfully requests this Court to dismiss the complaint of Plaintiff Darrell Boye and his co-plaintiffs for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of this Court ("RCFC"), failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), and claim preclusion.

QUESTION PRESENTED

Whether this Court lacks subject matter jurisdiction to adjudicate the plaintiffs' claims against the United States, which are not cognizable under the Tucker Act, 28 U.S.C. § 1491(a), whether the plaintiffs have failed to state a claim upon which relief can be granted, and whether plaintiffs are barred from bringing this claim because they should have brought it in their earlier actions.

STATEMENT OF FACTS[1]

I. The Facts Alleged In The Plaintiffs' Most Recent Complaint

As discussed in greater detail below, the complaint that is currently before the Court is

[1] For the sole purpose of this motion, we will treat the allegations in the plaintiffs' complaint as true. The documents attached to their complaint will be referred to as "Pl. Ex. _".

the fourth complaint filed by the plaintiffs alleging similar pay-related claims.[2] According to their current complaint, the plaintiffs are past and present employees of the Navajo Nation Division of Public Safety ("Navajo Nation"), which provides law enforcement on the Navajo Reservation. Compl. at ¶ III & IV. The plaintiffs claim that they "have not received their contractually agreed-upon benefits and rates of pay." Id. at ¶ V. The plaintiffs allege that the Navajo Nation has entered into a contract with the Bureau of Indian Affairs ("BIA") within the United States Department of the Interior, referred to as a "638 Contract." Id. at ¶ VIII. Under this 638 Contract, according to the plaintiffs, the Navajo Nation has agreed to "provide law enforcement within the boundaries of the Navajo Reservation and certain state counties adjacent to the Navajo Reservation." Id.; see Pl. Ex. B (unsigned document entitled "Law Enforcement Patrol P.L. 93-638: Statement of Work"); Pl. Ex. C (unsigned document entitled "Criminal Investigations P.L. 93-638 Contract: Statement of Work").[3] Further, the plaintiffs allege, that under the 638 Contract, "BIA has the duty to investigate to insure[sp] that its 'employees' are paid their proper salaries and benefits." Compl. at ¶ XII.

The plaintiffs allege that the 638 Contract between the BIA and the Navajo Nation, as well as certain regulations, require that Navajo Nation employees "be paid the same as their BIA counterparts." Id. at ¶ X. The plaintiffs allege that in breach of this 638 Contract, and in violation of these regulations, the plaintiffs are not being paid "the clearly defined rates of pay."

[2]All of the plaintiffs in the present action, with the exception of Jeremiah Dee, appear to have been plaintiffs to one or more of the prior actions discussed below in Part II of the Statement of Facts.

[3]The plaintiffs state that the document attached as Exhibit B to their complaint is a copy of the 638 Contract, although the document is not signed, and is entitled "Statement of Work." See Pl. Ex. B.

Id. at ¶ XIV. It appears that they are alleging specifically that they are not being paid the rates of pay which apply to their "BIA counterparts." In their complaint, the plaintiffs make reference to "25 C.F.R. § 12.33 et seq." and 25 C.F.R. § 12.62, but do not specifically state whether these are the regulations they are alleging the BIA has violated.[4]

The plaintiffs in the complaint allege "breach of contract," and seek the following remedies: (1) an accounting by the United States of all amounts due them; (2) payment of all amounts due them; (3) costs and attorneys' fees; (4) interest on all amounts due them; and (5) further relief as the Court deems just and proper. Id. at 8.

II. Prior Claims Against The United States Brought By The Plaintiffs

In February 2002, the plaintiffs filed a complaint against the Navajo Nation in the federal district court for the District of Arizona, alleging unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq.[5] Complaint at 1, Snyder v. Navajo Nation, No. 02-0308 (D. Ariz.) (complaint filed Feb. 20, 2002). The plaintiffs later amended their complaint to assert a claim against the United States for unpaid overtime wages "and other benefits," alleging that the United States was liable to them because they, as employees of the Navajo Nation, were deemed employees of the BIA. Third Amended Complaint at 1,3, Snyder v.

[4]We note that 25 C.F.R. § 12.33 states that BIA law enforcement officer positions are not to be established at a lower grade level on the Federal pay scale than similar Federal law enforcement officer positions in other agencies. We also note that 25 C.F.R. § 12.34, which was not cited by the plaintiffs, explains that 638 Contracts must require that tribal law enforcement officers are paid at least the same salary as a BIA officer "performing the same duties." Finally, 25 C.F.R. § 12.62 states that BIA law enforcement officers shall be paid a regular allowance to cover the cost of their required uniforms.

[5]The plaintiffs named in the original Snyder complaint make up the names Darrell Boye through Randall Tomasyo in the complaint currently before this Court. Compare Compl. with Complaint at 1, Snyder v. Navajo Nation, No. 02-0308 (D. Ariz.) (complaint filed Feb. 20, 2002).

Navajo Nation, No. 02-0308 (D. Ariz.) (complaint filed Aug. 21, 2002). The United States moved to dismiss this complaint on the ground that the Navajo Nation, was a necessary and indispensable party to the action, but immune from suit. Snyder v. Navajo Nation, No. 02-0308 (D. Ariz. Jan. 31, 2003) (order dismissing complaint). The court dismissed the complaint on this ground, and the plaintiffs appealed to the Ninth Circuit Court of Appeals. See Snyder v. Navajo Nation, 382 F.3d 892 (9th Cir. 2004).

Also in August 2002, a group of plaintiffs not originally part of the Snyder litigation filed a complaint against the Navajo Nation and the United States alleging similar claims under FLSA and the 638 Contract between the Navajo Nation and the United States.[6] Complaint, Cooke v. United States, No. 02-1627 (D. Ariz.) complaint filed Aug. 21, 2002). This litigation was consolidated with the Snyder litigation in November 2002, and proceeded under the caption Snyder v. Navajo Nation. Snyder v. Navajo Nation, No. 02-0308 (D. Ariz. Nov. 12, 2002) (order consolidating Snyder and Cooke).

The Ninth Circuit affirmed the dismissal of the Snyder complaint, explaining,

> The claims against the United States are in reality claims against the tribe, which is appellants' true employer. Appellants have joined the United States only through a tenuous link. It involves the tribe's self-determination contract [the "638 Contract"] and a statutory provision that limits the tort liability of the tribe for employees' torts [25 U.S.C. § 450f].

382 F.3d at 896. Because the plaintiffs did not assert tort claims, and because Congress did not intend Section 450f to "provide a remedy against the United States in civil actions unrelated to

---

[6]The plaintiffs named on the Cooke complaint make up the names Antonio Cooke through Raymond Butler in the complaint currently before the Court. Compare Compl. with Snyder v. Navajo Nation, No. 02-0308 (D. Ariz. Nov. 12, 2002) (order consolidating Snyder and Cooke).

the [Federal Tort Claims Act]," the court concluded that "the United States is therefore an inappropriate party to this action." 382 F.3d at 897.

The plaintiffs, on remand, moved for a new trial in the case on the basis of allegedly new evidence regarding their responsibilities as Navajo Nation employees. Snyder v. Navajo Nation, No. 02-0308 (D. Ariz. Dec. 19, 2005) (order denying motion for new trial). The Court denied their motion "without prejudice to the filing of a new case." Id.

In the meanwhile, the plaintiffs filed a third complaint against the Navajo Nation and the United States, again alleging that the defendants had violated the FLSA and breached the 638 Contract.[7] Complaint, Henderson v. Navajo Nation, No. 03-2162 (D. Ariz.) (complaint filed Nov. 5, 2003). The Navajo Nation and the United States moved to dismiss the complaint on the same grounds as their motions in Snyder. The district court, finding that "[t]he factual foundation, as well as the substantive allegations, in the Snyder and Henderson cases are identical," and relying on the Ninth Circuit's decision in Snyder, dismissed the complaint. The plaintiffs had also sought to transfer the case to this Court; the district court denied the transfer motion as moot. Henderson, No. 03-2162 (D. Ariz. June 22, 2004) (order dismissing complaint, and denying motion to transfer). The Ninth Circuit affirmed the district court's dismissal of the Henderson complaint on February 8, 2005. Henderson v. Navajo Nation, No. 04-16635 (9th Cir. Feb. 8, 2005) (summary affirmance of district court opinion).

## ARGUMENT

[7] The plaintiffs named in the Henderson complaint make up the names Marjorie Henderson through Denise Billy in the complaint currently before the Court. Compare Compl. with Complaint, Henderson v. Navajo Nation, No. 03-2162 (D. Ariz.) (complaint filed Nov. 5, 2003).

I. Applicable Legal Standard

It is axiomatic that if this Court lacks subject matter jurisdiction over the claims in the complaint, the complaint must be dismissed. RCFC 12(b)(1). The plaintiff bears the burden of showing that the Court possesses jurisdiction over his claims. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Furthermore, the plaintiff must carry this burden by a preponderance of the evidence. Reynolds, 846 F.2d at 748.

In determining whether it possesses subject matter jurisdiction, this Court is to treat the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). The Court may, however, take into account "evidentiary matters outside the pleadings" in making this determination. Indium Corp. Of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985); Thomas v. United States, 34 Fed. Cl. 619, 621 (1995).

The jurisdiction of this Court is limited; Congress has only granted this Court jurisdiction over claims where the United States has waived its sovereign immunity from suit. United States v. Testan, 424 U.S. 392, 399 (1972); Booth v. United States, 990 F.2d 617, 619 (Fed. Cir. 1993). The Tucker Act, 28 U.S.C. § 1491, governs the United States' waiver of sovereign immunity from suit in this Court:

> This statute confers jurisdiction on the Court of Federal Claims, and a corresponding waiver of the government's sovereign immunity from suit, when the constitutional provision, statute, or regulation in question expressly creates a substantive right enforceable against the federal government for money damages.

LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Because the Tucker Act is

merely a jurisdictional statute, however, it creates no substantive right to relief in suits against the United States. Accordingly, a plaintiff in this Court must identify a contract or money-mandating constitutional provision, statute, or regulation that entitles him to relief. Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997); Sanders, 34 Fed. Cl. at 78. In any event, claims for money under the Tucker Act must be brought within six years after the date the claim accrues, and this is a jurisdictional requirement. 28 U.S.C. § 2501; Soriano v. United States, 352 U.S. 270, 273 (1957); MacLean v. United States, 454 F.3d 1334, 1336 (Fed. Cir. 2006).

In addition, to state a claim for relief in any court, a plaintiff must set forth factual allegations in support of his claim, rather than merely setting forth labels and conclusions, or merely reciting the elements of a cause of action. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-69 (May 21, 2007) (limiting the language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). As the Supreme Court recently held, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id., 127 S.Ct. at 1965.

Generally, on a motion to dismiss, the Court does not consider matters outside of the pleadings. The Court can, however, consider matters of public record. Sebastian v. United States, 185 F.3d 1368, 1374 (Fed. 1999). In addition, where a plaintiff has attached materials to his complaint, these materials may be considered as part of the complaint on a motion to dismiss. Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334 1342 n. 6 (Fed. Cir. 2006).

Issue preclusion, or collateral estoppel, operates to preclude "relitigation in a second suit

of issues actually litigated and determined in the first suit." Masco Corp. v. United States, 303 F.3s 1316, 1329 (Fed. Cir. 2002); see also Sharp Kabushiki Kaisha v. Thinksharp, Inc., 448 F.3d 1368, 1370 (Fed. Cir. 2006). Issue preclusion applies when the following conditions are satisfied:

> (1) the issue is identical to one decided in the first action;
> (2) the issue was actually litigated in the first action;
> (3) resolution of the issue was essental to a final judgment in the first action; and
> (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

Masco, 303 F.3d at 1329; see also Simmons v. Small Business Administration, 475 F.3d 1372, 1374 (Fed. Cir. 2007).

Claim preclusion, on the other hand, or res judicata, operates to preclude litigation for the first time of matters that should have been litigated in an earlier suit. Sharp, 448 F.3d at 1370. In order for claim preclusion to apply, the following must be true: (1) there is an identity of parties or their privies; (2) there has been a final judgment on the merits of the prior claim; (3) the second claim is "based on the same transactional facts as the first and should have been litigated in the prior case." Sharp, 448 F.3d at 1370; Mayer/Berkshire Corp. v. Berkshire Fashions, Inc., 424 F. 2d 1229, 1232 (Fed. Cir. 2005). Where these conditions are met, this Court can dismiss the complaint. See Schrader v. United States, 75 Fed. Cl. 242, 248-49 (2007).

The plaintiffs have failed to meet their burden to show that this Court possesses jurisdiction over their claims. They have not identified any contract or money-mandating legal provision that entitles them to money damages, and their claims fall well outside the established jurisdiction of the Court of Federal Claims. Furthermore, even if this Court possesses jurisdiction, the plaintiffs have failed to state a claim for relief, and their claims are precluded by

the doctrine of claim preclusion.

## II. This Court Lacks Jurisdiction Over the Plaintiffs' Claims Under The Tucker Act

The plaintiffs have pointed to no contract or money-mandating provision which entitles them to relief; accordingly, this Court lacks jurisdiction over their claims under the Tucker Act.

### A. The Plaintiffs Are Not Parties To Any Contract With The Government Nor Are They Entitled To Third-Party Beneficiary Status

In their complaint, the plaintiffs are unable to point to any breach of any contract between them and the BIA. It is clear from the facts they have alleged that they have not entered into any such contract with the BIA. Because they are not parties to any contract with the BIA, they assert that they are third-party beneficiaries of the contracts that do exist, namely, the contracts between the BIA and the Navajo Nation. Compl. at ¶ X-XVII.

The plaintiffs cannot show that they are intended third party beneficiaries of the 638 Contracts, and therefore cannot prevail in this action. The Federal Circuit has endorsed the following two-part test for determining whether or not a party can be considered an "intended third party beneficiary" of a contract. To be considered an intended third-party beneficiary, "(1) the contract must reflect the intent to benefit the third-party, and (2) the contract must give the third-party the direct right to compensation or to enforce that right against the promisor." Montana v. United States, 124 F.3d 1269 1273 (Fed. Cir. 1997). Neither of these conditions are met here.

In order to determine whether the contract "reflects the intent" to benefit the plaintiffs, this Court asks whether the plaintiffs would be reasonable in relying on the promise as manifesting an intention to confer a right on them. Id. at 1273. This Court distinguishes between direct beneficiaries, on the one hand, who are entitled to third-party beneficiary status,

and indirect or incidental beneficiaries on the other hand, who are not entitled to third-party beneficiary status. Schuerman v. United States, 30 Fed. Cl. 420, 433 (1994). It is not reasonable for the plaintiffs to rely on the 638 Contracts as granting them a right to a certain salary because they are merely "incidental" beneficiaries of the provisions they cite. In fact, on this point, this case is on all fours with the decision of this court in Christos v. United States, 48 Fed. Cl. 469, 477 (2000), in which employees of a government contractor attempted to sue the United States asserting third-party beneficiary status.

The employees in Christos relied upon a contract between a government contractor (their employer) and the Government. The contract stated that "severance pay will be paid to terminated employees as follows" and "eligible involuntarily separated . . . full-service employees will receive severance pay." Christos, 48 Fed. Cl. at 473. The Court, nevertheless, found that it was not reasonable for these employees to rely on this language as conferring a right upon them; they were merely incidental beneficiaries. Rather, the provisions cited to represented an agreement between the Government and the contractor that the Government would reimburse the contractor for severance pay costs. Because "there was no indication in the contract that this provision was intended to create a direct benefit to laid-off employees," they were not third-party beneficiaries. 48 Fed. Cl. at 477; see also Stokes v. Westinghouse Savannah River Co., 206 F.3d 420 (4th Cir. 2000) (decision rendered in case involving same plaintiffs as Christos).

The 638 Contract at issue and the entire statutory scheme regarding this contract is not for the benefit of individual employees of BIA contractors; rather these contracts are intended to benefit the tribes as a whole. This is set forth explicitly in the governing statute:

> The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services. In accordance with this policy, the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities.

25 U.S.C. §2450a (Congressional Policy). Courts have recognized that the policy of the ISDEAA was to benefit Indian tribes and Indian people as a whole. See, e.g., Demontiney v. United States, 255 F.3d 801, 806 (9th Cir. 2001); Demontiney v. United States, 54 Fed. Cl. 780, 787, 791 (2002) ("The BIA's traditional role of protector and guardian of Native American interests, and involvement with Tribal organizations in self-determination contracts, does not place the BIA in privity of contract with contractors with which Tribal organizations contract."). At most, the provisions plaintiffs have identified are a means of ensuring that the BIA and the tribe agree as to the general nature of the costs to be incurred by the tribe in carrying out the contract. They cannot be read to confer rights on these plaintiffs or any other employees of the Navajo Nation.

We note that the plaintiffs' claims stand in stark contrast to the claims of the plaintiffs in Carlow v. United States, 40 Fed. Cl. 773 (1998). In that case, the plaintiffs were found to be third-party beneficiaries of the contracts at issue because those contracts specifically contemplated a process of retrocession whereby the tribe could withdraw from a 638 Contract, and the government would assume its role and obligations with respect to the program covered by that contract. 40 Fed. Cl. 782-83. No such circumstances exist here. No retrocession or

modification of the contract is alleged, nor are any other facts alleged which would show that the Government agreed to assume the role of the tribe with respect to its employees.

B. The Plaintiffs Are Not Employees Of The BIA

The plaintiffs appear to claim in their complaint that "by statute," they are "deemed employees of the BIA," which entitles them to relief. Compl. at ¶ VII. This legal proposition is erroneous, and the statute they cite does not support this proposition. Furthermore, the Ninth Circuit already determined that question with respect to the very same plaintiffs in this case.

The statute the plaintiffs cite, 25 U.S.C. § 450f, is a provision of the ISDEAA which permits employees of contracting tribes to be deemed employees of the BIA for the sole purpose of suits *against those employees for torts* resulting from the performance of functions under 638 Contracts. Snyder, 382 F.3d at 896-97; see also Demontiney, 255 F.3d at 807; FGS Constructors, Inc. v. Carlow, 64 F.3d 1230, 1234 (8th Cir. 1995) (explaining that Section 450f effectuated Congress's intent to "provide liability insurance to the tribal government for self-determination contracts"). The plain language of the statute precludes plaintiffs from relying upon this provision regarding tort claims against tribes to obtain the Court's jurisdiction over their quasi-contractual claims against the Government.

Moreover, the plaintiffs are not to be deemed employees of the BIA for any other purpose but for claims under the Federal Tort Claims Act. Snyder, 382 F.3d at 897. The doctrine of issue preclusion bars relitigation of this question, as all of the requirements for issue preclusion are met. First, the issue—whether the plaintiffs are to be deemed employees of the BIA—is identical to the one decided by the Ninth Circuit in Snyder. Second, this issue was actually litigated in Snyder. Third, resolution of this issue was essential to final judgment in

Snyder as the plaintiffs' theory of relief was that the BIA constituted their employer for FLSA purposes. Fourth, the plaintiffs had a full and fair opportunity to litigate this issue. In order to avoid application of this doctrine, plaintiffs would have to make a "compelling showing of unfairness or inadequacy in the prior litigation." Pactiv v. Dow Chemical Corp., 449 F.3d 1227, 1233 (Fed. Cor. 2006); see Montana v. United States, 440 U.S. 147, 163-64 (1979). Accordingly, this Court should refuse to reconsider the question whether the plaintiffs are BIA employees; they are not.

C. The Plaintiffs Have Pointed To No Money-Mandating Legal Provision Entitling Them To Relief

Because the plaintiffs can point to neither a contract nor a money-mandating legal provision entitling them to relief, this Court lacks jurisdiction. A legal provision provides jurisdiction under the Tucker Act only if it "can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained." United States v. Mitchell, 463 U.S. 206, 217 (1983); see Doe v. United States, 463 F.3d 1314, 1324. There is no such provision which applies to the plaintiffs. It appears that the plaintiffs seek relief based upon 25 C.F.R. §12.34, which states, "Any contract or compact with the BIA to provide law enforcement services for an Indian tribe must require a law enforcement officer to be paid at least the same salary as a BIA officer performing the same duties."[8] This provision merely sets forth a requirement for 638 Contracts regarding law enforcement, and does not mandate compensation to any class of

[8]In their complaint, the plaintiffs cite to "25 C.F.R. § 12.33 et seq." Section 12.33, regarding the pay scales of BIA employees versus other federal employees does not appear to apply, and may have been cited in error. Section 12.34 is the provision regarding salaries of tribal employees. The plaintiffs also cite 25 C.F.R. §12.62, which discusses the requirement that BIA officers be paid an allowance to cover the cost of their uniforms. As the plaintiffs are not BIA officers, this provision does not apply.

persons. Nor does this provision establish a private right of action. In fact there is nothing in the ISDEAA statutory scheme that plaintiffs have been able to point to which even suggests that suits against the United States of this sort were contemplated, or that the United States explicitly waived its sovereign immunity with respect to such claims. With no money mandating provision, there is no waiver of sovereign immunity under the Tucker Act, and there is no jurisdiction in this Court.[9]

III. The Indian Tucker Act Does Not Permit This Court To Assert Jurisdiction Over The Plaintiffs' Claims

In their complaint, the plaintiffs have alleged that the Indian Tucker Act, 28 U.S.C. §1505, grants this Court jurisdiction over their claims. This allegation is plainly in error as the Indian Tucker Act only applies to claims by Indian tribes, not to claims by individuals. Fields v. United States, 423 F.2d 380, 383 (Ct. Cl. 1970) ("[S]ince the instant case is one brought by individual Indians and not a tribe, band, or identifiable group of Indians, we feel that defendant is correct in asserting that [the Indian Tucker Act] does not apply to the present case."); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (explaining that the Indian Tucker Act is the companion to the Tucker Act for claimants which are "Indian tribes"); Mitchell, 463 U.S. at 214-215 (same). It appears from their complaint that plaintiffs are a group of "employees of the Navajo DPS and the Emergency Services Department." Compl. at ¶ III-IV. Plaintiffs do not allege, however, that they constitute an Indian tribe although the lead plaintiff,

[9]Plaintiffs appear to allege third-party beneficiary status both with respect to the 638 Contract as well as with respect to the cited regulatory provisions. There is no doctrine which permits a plaintiff to obtain the jurisdiction of this Court by way of third-party beneficiary status with respect to a statute or regulation. In any event, even if there were, for the same reasons as stated above with respect to the 638 Contract, the plaintiffs are not "third-party beneficiaries" with respect to the statute and regulations at issue.

Darrell Boye, is alleged to be a "registered member of the Navajo Tribe." Id. at ¶ III. Accordingly, the Indian Tucker Act does not apply and this Court cannot assert jurisdiction under this provision.

## IV. Even If The Plaintiffs Were Third Party Beneficiaries Of The Contract, They Would Still Have No Valid Claim Against The United States Because The Alleged Breach Is Merely A Breach Of An Alleged Duty To Investigate

Finally, even if the plaintiffs were the intended third-party beneficiaries of the contract, and this Court could assert jurisdiction over their pay claims, the BIA promise they are relying upon is an allegedly nondelegable "duty" by the BIA "to investigate to insure[sp] that its 'employees' are paid their proper salaries and benefits." Compl. at ¶ XII. The plaintiffs point to no provision of the 638 Contract setting forth this duty, nor does such a provision appear to exist. In any event, however, even if the BIA had such a duty, and even if the plaintiffs were third-party beneficiaries of its promise to carry out this duty, this Court would still not possess jurisdiction over this claim because this claim would constitute a claim for specific performance of the BIA's "investigatory duty." It is well-settled that this Court cannot order specific performance, as this is a form of equitable relief. Massie v. U.S., 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief."). The plaintiffs point to no other contractual provision setting forth a promise to pay on the part of the BIA; accordingly, their complaint fails for want of jurisdiction.

## V. Even If This Court Determines That It Has Jurisdiction Over These Claims, And That Plaintiffs Have Stated A Claim, Claims Regarding Pay Prior To 2001 Are Time-Barred

Any claims regarding improper pay prior to March 23, 2001, are barred by the six-year statute of limitations applicable to Tucker Act claims. In their complaint, the plaintiffs attempt

to circumvent this jurisdictional bar by alleging, "[t]he Defendant's breach of the contractual and regulatory provisions regarding Plaintiffs' rate of pay, and payment of other benefits, was, and is, of a continuing nature for which the statute of limitations has no application." Compl. at ¶ XV. The statute of limitations in the Court of Federal Claims is jurisdictional, and cannot be so easily dismissed. 28 U.S.C. § 2501; Soriano v. United States, 352 U.S. at 273; MacLean v. United States, 454 F.3d at 1336.

It appears that the plaintiffs allege that the BIA has committed one breach, which had continued ill effects later on. If so, and if this breach occurred more than six years prior to their complaint, their complaint is barred. 28 U.S.C. § 2501; Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1455 (Fed. Cir. 1997) ("A claim first accrues within the meaning of the statute of limitations "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." (quotations omitted)). Even, however, if the continuing claim doctrine applies to the plaintiffs' claims, because this Court considers each failure to properly pay the plaintiffs and each failure to investigate whether the plaintiffs were being properly paid to constitute an "independent, distinct wrong," the plaintiffs are still not entitled to relief regarding any allegedly improper pay received more than six years prior to their complaint. See Brown Park Estates-Fairfield Dev. Co., 127 F.3d at 1455-56 (discussing the continuing claim doctrine in the context of contractual Tucker Act claims); Park Properties Assocs. L.P. v. United States, 74 Fed. Cl. 264, 270-272 (same); see also Weber v. United States, 71 Fed. Cl. 717, 720-726 (2006) (discussing the continuing claims doctrine in the context of an Equal Pay Act claim, explaining that each instance of allegedly improper pay "is a discrete act and therefore embodies a separate cause of action for purposes of the statute of

limitations."). Accordingly, this Court should dismiss any portion of the plaintiffs claims that arises prior to March 23, 2001.

## VI. The Plaintiffs Should Have Raised Their Third-Party Beneficiary Claim Earlier; By Failing To Do So, They Have Waived Their Claims, And The Entire Complaint Must Be Dismissed

Finally, it appears that the entirety of the plaintiffs complaint is barred by claim preclusion, or res judicata, because they failed to raise the third-party beneficiary claim earlier, although they had the opportunity to do so. All three of the conditions that must be satisfied for this Court to apply claim preclusion exist in this case: (1) identity of the parties; (2) final judgment on the merits; and (3) the same transactional facts. Sharp, 448 F.3d 1368; Mayer/Berkshire Corp., 424 F.3d at 1232.

The parties to this action are identical to the parties in the prior actions, with the possible exception of one plaintiff.[10] There was a final judgment on the merits as to the United States in the prior action; the Ninth Circuit affirmed the result reached by the district court that the United States could not be sued as the alleged employer of the plaintiffs. Snyder, 382 F.3d at 897. The transactional facts were precisely the same, as a review of the complaints shows. In all of the complaints, the plaintiffs recite that (1) they are employees of the Navajo Nation; (2) the Navajo Nation and the United States entered into a contract which stated, "Salaries paid law enforcement officers by the contractor under the contract shall be equal or greater than the

[10]As discussed above, it appears that there may be one plaintiff in this action, Jeremiah Dee, who was not a named plaintiff in the prior actions. Nevertheless, to the extent that Mr. Dee was in privity with the other named plaintiffs, his claims, too, would be precluded. See Mars Inc. v. Nippon Conlux Kabushiki-Kaisha, 58 F.3d 616, 619 (Fed. Cir. 1995) ("It is well-settled, for example, that claim preclusion may be invoked by and against those in privity with parties.").

salaries paid law enforcement officers with similar responsibilities employed directly by the Bureau of Indian Affairs;" (3) the United States breached that contract; and (4) the plaintiffs have not received the pay and benefits required under the contract. See Compl; Third Amended Complaint at 1,3, Snyder v. Navajo Nation, No. 02-0308 (D. Ariz.) (complaint filed Aug. 21, 2002); Complaint, Cooke v. United States, No. 02-1627 (D. Ariz.) complaint filed Aug. 21, 2002); Snyder v. Navajo Nation, No. 02-0308 (D. Ariz. Nov. 12, 2002) (order consolidating Snyder and Cooke) (enumerating the identical allegations of fact and prayer for relief between the two cases); Complaint, Henderson v. Navajo Nation, No. 03-2162 (D. Ariz.) (complaint filed Nov. 5, 2003); Henderson, No. 03-2162 (D. Ariz. June 22, 2004) (order dismissing complaint, and denying motion to transfer) ("The factual foundation, as well as the substantive allegations, in the Snyder and Henderson cases are identical.").

In the absence of a due process violation in the prior litigation, claim preclusion must apply. Kremer v. Chemical Const. Corp., 456 U.S. 461, 491 & n. 22 (1981); Pactiv, 449 F.3d at 1233. The plaintiffs could have and should have raised in their prior complaints that they constitute third-party beneficiaries to the 638 Contract. Because they failed to do so, they must be precluded from doing so now.

## CONCLUSION

The plaintiffs have made their fourth attempt at attributing liability to the United States for an alleged failure by their employer, the Navajo Nation, to pay them their entitled pay and other benefits. This Court does not have jurisdiction over this complaint, however, because the plaintiffs are not third-party beneficiaries of a contract with the United States, nor have they pointed to any money-mandating legal provision which would entitle them to relief.

Furthermore, this Court lacks jurisdiction over their alleged breach claim as plaintiffs essentially seek equitable relief. In addition, claims that arose more than six years prior to their complaint are statutorily time-barred. Finally, plaintiffs should have brought these claims in their earlier litigation, but failed to do so; accordingly, they are precluded from bringing them now.

For the foregoing reasons, this Court should dismiss the plaintiffs' complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Martin F. Hockey, Jr
MARTIN F. HOCKEY, JR.
Assistant Director

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
James L. Weiner
Office of the Solicitor
United States Department of the Interior
1849 C Street, N.W.
Room No. 7326
Washington, DC 20240
Tel: (202) 208-6984
Fax: (202)208-6475

July 23, 2007

CERTIFICATE OF FILING

I hereby certify that on this 23rd day of July, 2007, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah