**No. 1:07-CV-00195**
**(Judge Sweeney)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**DARRELL BOYE, et al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' RESPONSE TO DEFENDANT'S CORRECTED MOTION TO DISMISS

---

Edward D. Fitzhugh, #007138
LAW OFFICE OF EDWAR D. FITZHUGH
P.O. Box 24238
Tempe, Arizona 85288-4238
(480) 752-2200
Attorney for Plaintiffs

# TABLE OF CONTENTS

QUESTIONS PRESENTED ........ 5

STATEMENT OF THE CASE ........ 5

LEGAL STANDARD ........ 7

STATEMENT OF FACTS ........ 8

THE 638 LAW ENFORCEMENT CONTRACTS ........ 9

ARGUMENT ........ 11

I. THIS COURT HAS JURISDICTION PURSUANT TO THE TUCKER ACT, 28 USCA 1491(a)(1). THIS COURT HAS FOUND THAT 25 USCA 450(a) CONTAINS A MONEY MANDATING PROVISION. ........ 11

A. The Governing CFRs Referenced and Contained in the 638 Contract Require Plaintiffs be Compensated by Defendant. ........ 11

B. Plaintiffs are Intended Third-Party Beneficiaries of the 638 Contract Between the Navajo Nation and United States ........ 15

II. THE PRINCIPLES OF RES JUDICATA, CLAIMS PRECLUSION NOR ISSUE PRECLUSION APPLY; THE QUESTIONS PRESENTED HERE HAVE NOT BEEN ADJUDICATED ON THE MERITS ........ 21

III. PLAINTIFFS' WAGE CLAIMS ARE OF A CONTINUING NATURE; FURTHER THEY BEGIN WITH EACH PAYCHECK OR, AT A MINIMUM, THE NEW YEARLY CONTRACT, THEREFORE THE SIX YEAR STATUTE OF LIMITATIONS IS NOT APPLICABLE ........ 22

CONCLUSION ........ 24

CERTIFICATE OF FILING ........ 27

# TABLE OF AUTHORITIES

**Cases**

Baudier Marine Electronics, Sales and Service, Inc. v. United States, 6 Cl.Ct. 246, 249 (1984).......... 17
Big Owl v. United States, 961 F. Supp. 1304 (S.D. 1997) .......... 15
Carlow v. United States, 40 Fed. Cl. 773 (1998).......... 12, 15, 18, 19
Christos v. United States, 48 Fed.Cl. 469 (2000) .......... 20
Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) .......... 7
Cummings v. United States, 17 Cl.Ct. 475, 479 (1989) .......... 12
Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed.Cir.1995).......... 7
Hebah v. United States, 192 Ct.Cl. 785, 428 F.2d 1334 (1970) .......... 16
Locke v. United States, 215 F. Supp. 2d 1033 (S.D. 2002).......... 15
McAfee v. United States, 46 Fed.Cl. 428, 431 (2000).......... 7
Miree v. Dekalb County, 433 U.S. 25, 28, 97 S. Ct. 2490 (1977).......... 16
Mountain States Tel. & Tel. Co. v. Kennedy, 147 Ariz. 514, 711 P.2d 653 (1985).......... 17
Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed.Cir.1988).......... 7
Sallee v. United States, 41 Fed.Cl. 509, 514 (1998).......... 17, 18, 20
Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).......... 8
Schuerman v. United States, 30 Fed.Cl. 420, 433 (1994).......... 16, 17, 18
Sharp Kabushiki Kaisha v. Thinksharp, Inc., 448 F.3d 1368, 1370 (Fed.Cir.2006) .......... 22
Snyder v. Navajo Nation, 382 F.3d 892 (9th Cir.2004).......... 21
Spain v. General Motors, 171 Ariz. 226, 829 P.2d 1272 (1992) .......... 17
United States v. Standard Oil Company, 332 U.S. 301, 364, 67 S.Ct. 1604 (1947) .......... 16
Waters v. United States, 812 F. Supp. 166 (N.D. 1993).......... 15

**Other Authorities**

25 CFR 12.......... 10
25 CFR 12.33, 12.34.......... 13
28 USCA 1491.......... 4, 5, 21
28 USCA 1491(A)(1).......... 11, 12, 15
Restatement (Second) of Contracts § 302.......... 16

**Rules**

RCFC 12(b)(1).......... 7, 8
RCFC 12(b)(6).......... 7, 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DARRELL BOYE, et al., | ) | |
| | ) | No. 1:07-CV-00195 |
| Plaintiffs, | ) | (Judge Sweeney) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S CORRECTED MOTION TO DISMISS**

As supported herein, Plaintiffs move the court to deny Defendant's Motion to Dismiss. Defendant's motion materially misrepresents and omits relevant facts and misstates applicable law. Defendant's misrepresentations of fact and law materially prejudice Plaintiffs in a significant way. Defendant has yet an opportunity in its Reply, to address the corrected facts and law without a similar opportunity for response by Plaintiffs.

This court has jurisdiction to hear this matter pursuant to the Tucker Act, 28 USCA 1491, which allows six years for Plaintiffs to bring their claims. As detailed below and as defendant concedes Defendant's actionable conduct accrues with each paycheck the individual plaintiffs receive. The requisite money mandating provision on this issue has been determined by this court to be 25 USCA 450, *et. seq.* 25 USCA 2808 can be fairly construed as an applicable money-mandating provision.

Plaintiffs are authorized to proceed on the grounds that Plaintiffs are specifically referenced third-party beneficiaries of the ISDEAA Self-determination ("638") Law Enforcement contracts between the Navajo Nation and the United States.

The statutory and regulatory scheme for these contracts provides for the Bureau of Indian Affairs to maintain pervasive control over the operation of the contracts and inspection of the operation. This reflects the defendant's nondelegable duty to provide law enforcement services on the Navajo reservation at the federal standard including employees' rate of pay.

As with other cases of this nature, Plaintiffs' claim has a history ending with the U.S. District Court denying Plaintiffs' Motion for New Trial but granting leave to "file a new case". Recognizing that their claim is more appropriately before this court, Plaintiffs filed this lawsuit.

For convenience, Plaintiffs will reference the contracts attached to the Complaint and copied in Defendant's Motion. The court should consider that although Defendant chides Plaintiffs for submitting copies of unsigned contracts, Defendant has possession of the signed versions and other relevant documents but does not produce them.

## QUESTIONS PRESENTED

1. Whether this Court has jurisdiction, pursuant to the Tucker Act, 28 USCA 1491(a), and the money mandating provisions of 25 USCA 450 and 25 USCA 2808.

2. Whether Res Judicata and/or claims/issue preclusion applies, since the case has never been adjudicated on its merits.

3. Whether Plaintiffs' wage claims based on the facts are of a continuing nature and, therefore, the six year statute of limitations is not applicable.

## STATEMENT OF THE CASE

This case concerns the United States' responsibility for compensating a group of employees, third party beneficiaries, to continuing yearly 638 Law Enforcement contracts

between their employer, the Navajo DPS, and the United States, and who have been deprived of those contractually stated rate of pay and required by federal regulation.

Initially, an important consideration for the Court's deliberation is the fact that the 638 Law Enforcement contracts and related documents at issue in this case are, and always have been, in the sole possession of Defendant. From the outset of litigation, defendant has maintained 100% of the documents containing the relevant facts and issues in this case. Plaintiffs have access only to some unsigned copies of the yearly contracts. In its capacity the Department of Interior, specifically, the Bureau of Indian Affairs should not seek to gain advantage over Plaintiffs with its superior knowledge of the facts at the same time not presenting all these facts to the court, hoping for an unjust result. Plaintiffs have had no real access to the entire contents of the contracts. Defendant should be ordered to produce these documents with its Reply. At the same time, Plaintiffs are prejudiced at the late stage in this proceeding when these documents are produced. In the alternative, Defendant should have at least conceded essential facts it knows exist.

By statute, the Department of the Interior is entrusted with carrying out the United States "historical and special legal relationship and resultant responsibilities toward Indians" and enters into and ensures compliance with the terms of 638 contracts such as these. As the Department responsible for entering into the 638 contracts with the Navajo Tribe, it is, at a minimum, disingenuous for Defendant, in its motion, to advance any set of facts that seek to deny the existence of the contracts or their provisions. See Defendant's Motion, p.2 (employing the terms Plaintiffs "allege", "claim" and "according to Plaintiffs" to go as far as to deny the existence of these contracts. This is

hardly the standard to be expected when people petition their own government for relief from events caused by the dereliction of defendant's affirmative duty). Defendant not only has control and possession of the contracts, Defendant, through this particular arm of government, is a statutorily required fiduciary of such contracts when entered into with a Native American Tribe. It misleads the court and is a disservice to the Department of the Interior, for counsel to misrepresent the facts in an attempt to deny the existence of the 638 Law Enforcement contracts at issue. The fact that these contracts and the terms at issue exist should be undisputed by counsel for the Defendant – attempts to suggest to the court otherwise is a disservice to all involved.

## LEGAL STANDARD

Defendant's motion, in part, is based on RCFC 12(b)(1), lack of subject matter jurisdiction, and RCFC 12(b)(6), failure to state a claim upon which relief can be granted. A dismissal for lack of subject matter jurisdiction means that the court is not empowered to hear or decide the subject matter of the dispute. McAfee v. United States, 46 Fed.Cl. 428, 431 (2000) (citing Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed.Cir.1995)).

When considering a motion to dismiss, the court may consider all relevant evidence to resolve disputes related to the truth of the jurisdictional facts alleged in the complaint. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed.Cir.1988). Plaintiffs reiterate their demand that defendant be ordered to produce the relevant signed contracts and related documents. The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

In ruling on a RCFC 12(b)(1) motion and/or a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), the court must accept as true the undisputed factual allegations in Plaintiffs' complaint and construe those facts in the light most favorable to plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). If, on review of the undisputed facts, there exists any possible basis upon which the non-moving party (plaintiff in this case) may prevail, the court must deny the motion. Scheuer, 416 U.S. at 236, 94 S.Ct. at 1683. Defendant's failure to produce the contracts and related documents should be construed as an admission of the accuracy of Plaintiffs' factual allegations and the applicability of the cited CFRs.

**STATEMENT OF FACTS**

Plaintiffs are police officers and criminal investigators employed by the Navajo Nation Division of Public Safety ("DPS") an agency of the Navajo Nation. They bring this claim on their behalf and on behalf of "other similarly situated employees of the Navajo DPS. The Division of Public Safety pursuant to the 638 Law Enforcement Contracts entered into with the United States, provides law enforcement on the Navajo Nation Reservation which is in three states, but also in a growing number of adjacent state counties. For practical considerations Plaintiffs incorporate by reference the copies of the contracts attached to their complaint. Reference to such contracts will be cited as Pl. Amd. Compl., Exhibit _____.

The relief Plaintiffs seek is undeniable and is supported by statutes, regulations and the referenced contracts. This court has already ruled that it has jurisdiction over breach of contract claims pursuant to the ISDEAA.

The Navajo Nation Division of Public Safety employs in excess of seven hundred police officers, criminal investigators along with support personnel. Plaintiffs request the court take notice that with more than seven hundred employees, regularly there are retirements and new employees.

At all times alleged herein the Navajo Division or Public Safety was operating pursuant to 638 Law Enforcement Contracts with the United Stated Bureau of Indian Affairs as mandated by the Indian Self Determination and Educational Assistant Act (herein "ISDEAA"). 25 USCA 450, *et. seq*.

**THE 638 LAW ENFORCEMENT CONTRACTS**

The Law Enforcement contracts extend B.I.A. control over every facet of Navajo DPS law enforcement operations. The scope of the contracts is all-encompassing, reflecting the BIA's retained statutory duty to provide law enforcement on the Navajo reservation and ensuring that an federal level of service would be continued. In the body of the 638 contracts, the Navajo law enforcement program is referred to as a "Bureau Program." Pl. Amd. Compl., Exhibit B, p. 1, ¶101 ("The Contractor shall perform the following Bureau Program . . .").

The contract has a number of sub-parts: Agreement Between the Secretary of the Interior and the Navajo Nation; Scope of Work; Law Enforcement; Scope of Work; Criminal Investigations; Annual Funding Agreement.

The contracts provide for the B.I.A.'s pervasive control over even the most minor aspects of Navajo DPS operations. Examples of the B.I.A. control over the program are: overall, the contracts require that Navajo DPS law enforcement be performed "in accordance with the qualifications, training, code of conduct, inspection and evaluation

and other standards applicable to Bureau Law Enforcement and criminal investigation personnel…" (Pl. Amd. Compl., Exhibit B, ¶102; Exhibit C, ¶102 A-F); and sets forth training requirements. (Pl. Amd. Compl., Exhibit B, ¶103; Exhibit C, ¶103). The contracts require that officers and criminal investigators meeting the "personnel, qualifications and training provisions of each contract" shall be certified by the Bureau as a federal law enforcement officer or criminal investigator ( Pl. Amd. Compl., Exhibit B, ¶104; Pl., Exhibit C, ¶104); outlines uniform requirements (Pl. Amd. Compl., Exhibit B, ¶105; Pl., Exhibit C, ¶105); **and, the issue in this case, the contracts contain a specific provision that law enforcement officers and criminal investigators must be paid salaries at least the same or greater than the salaries paid to their counterparts employed by the BIA with similar responsibilities (Pl. Amd. Compl., Exhibit B, ¶106; Exhibit C, ¶106)**. The contract even includes detailed requirements regarding the manner in which reports are to be prepared (Pl. Amd. Compl., Exhibit B, ¶107(c); Exhibit C, ¶107(c)), a detailed description of the officers' duties (Pl. Amd. Compl., Exhibit B, ¶101; Exhibit C, ¶101); and that all records that must be properly maintained (Pl. Amd. Compl., Exhibit B, ¶7; Exhibit C, ¶7).

Further, the contract contains the means for the BIA to insure that the Navajo DPS operations are conducted by the required federal standard. The BIA has access to all records related to the Navajo DPS operations, and the authority to conduct periodic inspections (Pl. Amd. Compl., Exhibit B, ¶7). These mandatory terms in the 638 Law Enforcement contracts are included pursuant to 25 USCA 450(h)(L) and the specific regulations in 25 CFR 12, *et seq*. The BIA also has the authority to suspend or terminate the contract based upon the Navajo DPS' failure to meet these standards or adhere to the

other terms of the contract. 25 USCA 450(h)(L). This perhaps is the most conclusive proof that the B.I.A. not only cannot delegate away its responsibility but also that the operation must be conducted in accordance with the contract and incorporated regulatory standards to meet the federal level. In addition to being a signatory to the contracts, these statutory and regulatory pronouncements support Plaintiffs' claim that the B.I.A., having the duty to do so, failed to investigate the Navajo DPS' operation of the program to insure Plaintiffs be paid at the stated rate.

Defendant's motion does not acknowledge the existence of the Law Enforcement contracts merely conceding that Plaintiffs "allege" or that "according to" Plaintiffs, there is in effect 638 Law Enforcement contracts to provide law enforcement for the Navajo Nation. (Def. Motion to Dismiss, Pg. 2). Absurdly, Defendant refers to them as "documents". In fact, Defendant is in a superior position to confirm to the Court that such contracts do exist.

Plaintiffs recognize and respect the procedural requirements of this Court. They urge that the only real issue before this Court is whether they are, in fact, owed, and with each paycheck, promotion, or new contract, continue to be owed, the monies claimed.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION PURSUANT TO THE TUCKER ACT, 28 USCA 1491(a)(1). THIS COURT HAS FOUND THAT 25 USCA 450(a) CONTAINS A MONEY MANDATING PROVISION.

#### A. The Governing CFRs Referenced and Contained in the 638 Contract Require Plaintiffs be Compensated by Defendant.

This case is properly before this court. The Federal Court of Claims has jurisdiction in all cases where there is a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 USCA 1491(a)(1). The primary substantive right by which plaintiffs are authorized to proceed is grounded in contract, both expressly and by implication; namely ISDEAA Self-determination ("638") contracts between the Navajo Nation and the United States, to which Plaintiffs are third-party beneficiaries.

An additional basis upon which Plaintiffs are entitled to proceed is the existence of one or more enforceable money-mandating provisions (governing regulations) To succeed in a claim against the United States it must be based on statute or regulation, the relied upon provisions "must contain language which could be fairly interpreted as mandating recovery of compensation from the government." Cummings v. United States, 17 Cl.Ct. 475, 479 (1989), aff'd 904 F.2d 45 (Fed.Cir.1990).

This breach of contract claim has been addressed by this court in Carlow v. U.S., 40 Fed.CL. 773 (1998). In that case this court held that 25 USCA 450(a) permitted the claim and contained the requisite money mandatory provision "If the tribe is deemed to be part of the BIA while carrying out the self-determination contract, the contract entered into by the Tribe with Plaintiffs should be protected by a guarantee from the United States." Carlow v. United States, at p.782.

This court in Carlow determined the money mandating provision was contained in the statute: "Furthermore, the legislative history of the Indian Self-Determination Act 25 USCA 450, *et. seq.* under the heading Claims Resulting from Performance of Contract, Grant Agreements or Cooperative Agreement; Civil Action Against Tribe, Tribal Organization, etc. Deemed Action Against United States;

> …an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior … while carrying out any such contract or agreement and its employees are deemed employees of the Bureau … while acting within the scope of their employment in carrying out the contract or agreement: *Provided*, That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act…"

at 782.

25 USCA 2808 can also fairly be construed as a money mandating provision applicable to this claim. The ISDEAA allows the secretary of the Department of the Interior to contract for the provision of services it is required to provide. This statute provides for payment of those contracted expenses. Plaintiffs' claims are not extraordinary. They merely seek payment in the amounts required by the Contracts and CFR's as such they are reasonably anticipated by the Department of the Interior under this statute.

The regulatory-based, required pay provisions, which Plaintiffs seek to enforce, are much more than, as Defendant alleges, "a means of ensuring that the BIA and the tribe agree as to the general nature of the costs to be incurred by the tribe in carrying out the contract." Defendants motion at p. 12. The detailed regulations incorporated as terms of the contract are anything but "general". To the contrary, the terms are highly detailed and precisely govern specific employee wages.

First, the 638 Law Enforcement Contracts require that Navajo DPS law enforcement officers and criminal investigators be paid at a rate comparable to their BIA counterparts. 25 CFR 12.33, 12.34; Pl. Amd. Compl., Exhibit B, ¶106; Pl. Amd. Compl., Exhibit C, ¶106. Navajo DPS, however, instituted its own pay scale, with rates far below

those of the BIA. Finally, to insure that the terms of the contract were fulfilled, the statutorily incorporated terms authorize the BIA (the Defendant) to compel its contractor (the Navajo Nation) to provide all records and a full accounting. Pl. Amd. Compl., Exhibit B, ¶107(B) (1-20); Pl. Amd. Compl., Exhibit C, p. 12-13 (1-20). The Defendant also maintains authority via the contracts, to suspend or cancel the contract for non-compliance by the Navajo DPS.

The detailed nature of the regulations support the proposition that the pay provisions at issue were meant to be viewed as much more than a "generalized agreement" concerning projected costs that the Navajo DPS might incur. The Defendant, via the contracts, holds the statutory contracted authority and duty to prohibit the Navajo DPS from withholding promised employment benefits from Plaintiffs.

The Defendant's statutory duty is non-delegable. The contract acknowledges that the Department of the Interior did not assign or delegate its statutory duties and responsibilities to provide law enforcement on the Navajo Nation.

> Construction of Contract - Nothing in this contract may be construed to terminate, waive, modify, or reduce the trust responsibility of the United States to the tribe(s) or individual Indians.

25 USCA 450(h)(L).

Defendant has a responsibility, under the terms of these contracts and the federal regulations to ensure that the contractor, the Navajo DPS:

> "perform the contracted law enforcement program in accordance with the qualifications, training, code of conduct, inspection and evaluation and other standards applicable to Bureau law enforcement personnel, or the equivalent."

Pl. Amd. Compl., Exhibit B, p.2, ¶102; Pl. Amd. Compl., Exhibit C, p. 6, ¶10.

Because of their status as third party beneficiaries, Plaintiffs do not have a forum other than this Court, by which to enforce the unfulfilled contract provisions against their employer.

The only conceivable alternative would be the Navajo Tribal Court, a court of limited jurisdiction. The Navajo Tribal Court cannot adjudicate the rights and obligations of the United States in reference to contracts the United States enters into.

Defendant breached its nondelegable duty and Congress' mandate that the 638 Law Enforcement contracts not be carried out at a level lower than it would have cost the B.I.A., had it continued to operate it as a B.I.A. Law Enforcement Department.

**B. Plaintiffs are Intended Third-Party Beneficiaries of the 638 Contract Between the Navajo Nation and United States**

In this third-party beneficiary context, the United States stands in the place of the Navajo Tribe with respect to the monies owed to Plaintiffs under the terms of the contract. Existing case law is consistent that claims grounded on the ISDEAA are brought only against the United States. Carlow v. United States, 40 Fed. Cl. 7 (1998) (contract claim against the Oglala Sioux Tribe arising from an ISDEAA contract); Locke v. United States, 215 F. Supp. 2d 1033 (S.D. 2002) (tort claim against tribal police officer employed pursuant to ISDEAA contract); Waters v. United States, 812 F. Supp. 166 (N.D. 1993) (contract claim against Round Valley Community operating a health facility under a ISDEAA contract); Big Owl v. United States, 961 F. Supp. 1304 (S.D. 1997) (claim against Oglala Sioux Tribal Counsel operating school pursuant to ISDEAA contract). This court has jurisdiction to enforce the pay provisions contained in the contract with the United States in favor of the Plaintiffs in this matter, the third-party beneficiaries to the contract. 28 USCA 1491(a)(1).

It is undisputed that Plaintiffs were not contracting parties with the United States in the formation the specific 638 Law Enforcement contracts at issue. However, Plaintiffs are the specifically referenced third party beneficiaries of the contracts, an exception to the contractual privity requirement, and therefore may properly assert their claims against defendant in this court. "It is well established that this court may assert jurisdiction over claims brought by plaintiffs who are not named parties to, but rather are intended third-party beneficiaries of government contracts." Hebah v. United States, 192 Ct.Cl. 785, 428 F.2d 1334 (1970).

Third party beneficiary status is an exception to the contractual privity requirement and is applied in situations where a contract reflects an intention of the contracting parties, express or implied, to benefit a third party. State of Montana v. United States, 124 F.3d 1269, 1273 (Fed.Cir.1997). The analysis relied on by the courts to determine third party beneficiary status is commonly referred to as the "intention to benefit test." Schuerman v. United States, 30 Fed.Cl. 420, 433 (1994). For Plaintiffs to maintain and enforce third-party beneficiary status, the 638 contracts at issue must reflect an express or implied intent of the contracting parties to benefit the Plaintiffs. The contracts at issue do exactly that.

"Federal Common Law applies to third party beneficiary claims when a federal agency is a party to the action and the outcome may directly affect financial obligations of the United States." United States v. Standard Oil Company, 332 U.S. 301, 364, 67 S.Ct. 1604 (1947); Miree v. Dekalb County, 433 U.S. 25, 28, 97 S. Ct. 2490 (1977). Arizona case law has adopted the Restatement (Second) of Contracts § 302 definition of third party beneficiary status:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . .
>
> * * *
>
> (b) The circumstances indicate that the promisor intends to give the beneficiary the benefit of the promised performance.

Restatement §302 (1) (b) cmt. d. See Spain v. General Motors, 171 Ariz. 226, 829 P.2d 1272 (1992); Mountain States Tel. & Tel. Co. v. Kennedy, 147 Ariz. 514, 711 P.2d 653 (1985).

Defendant's Motion misstates the standard for determining third party beneficiary status. Defendant attempts to impose on Plaintiffs an additional requirement, stating that Plaintiffs, in addition to demonstrating an intention to benefit third parties, must also demonstrate that the contract "gives the third-party the direct right to compensation or to enforce that right against the promisor." Defendant's motion at p. 10. Defendant's assertion of this additional requirement is completely erroneous. In Schuerman, the court specifically rejected this additional requirement – the so-called "direct right to compensation" requirement. Id. at 420. The direct right to compensation requirement, articulated in Baudier Marine Electronics, Sales and Service, Inc. v. United States, 6 Cl.Ct. 246, 249 (1984), has been summarily rejected by later courts. at 420.

The Montana court affirmed as correct the third-party beneficiary test as enunciated in Schuerman, requiring that the contract be shown to reflect the express or implied intention of the parties to benefit the third party. Montana, 124 F.3d at 1273. The intended beneficiary need not be identified in the contract, specifically or individually, but the intended beneficiary must fall within a class of individuals that the contract clearly intended to benefit. Sallee v. United States, 41 Fed.Cl. 509, 514 (1998).

In this instance the contract provision leaves no doubt that Plaintiffs are the intended beneficiaries:

> **Salaries**. Salaries paid law enforcement officers by the Contractor under this Contract shall be equal to or greater than the salaries paid law enforcement officers with similar responsibilities employed directly by the Bureau of Indian Affairs. Pl. Amd. Compl., Exhibit B, p.6, ¶106.
>
> **Salaries**. Salaries paid criminal investigators by the Contractor under this Contract shall be equal to or greater than the salaries paid criminal investigators with similar responsibilities employed directly by the Bureau of Indian Affairs. Pl. Amd. Compl., Exhibit C, p. 11, ¶106.

These provisions and the applicable CFR's satisfy the "direct beneficiary" requirement as set forth in Schuerman, 30 Fed.Cl. at 433.

To determine the contract's intent, the court must look not only at the intent of the contested provisions, but must examine the parties' entire contractual relationship. Sallee, 41 Fed.Cl. at 514. In this instance, the court must consider as a whole, the unique contractual relationship between the Navajo Tribe and United States, including the purpose, goals, and underlying statutory scheme of the ISDEAA, the act that allows 638 contracts such as this one. Sallee, 41 Fed.Cl. at 514. This court is the proper one to adjudicate the rights and responsibilities of the U.S. to these contracts.

First, the court must consider the breadth with which the ISDEAA exercises control over 638 contracts an Indian Tribe might enter into pursuant to the statute. The ISDEAA is very specific regarding certain federal requirements to which such contracts and subcontracts must adhere, such as prevailing wage requirements as determined by the United States Secretary of Labor, in accordance with the Davis Bacon Act and Indian preference requirements. Carlow v. United States, 40 Fed.Cl. 773, 782 (1998). The ISDEAA recognizes that the United States government has had an "historical and special

legal relationship with, and resulting responsibilities to, American Indian people." 25 USCA 450(a). Within the context of this past "historical and special legal relationship with, and resulting responsibilities to, American Indian people", the ISDEAA maintains strict contracting requirements to help fulfill the overall goal of the legislation – to effectuate "meaningful participation by the Indian people in the planning, conduct, and administration" of programs by and for Indians. Id. The 638 or Self-determination contract, is one vehicle utilized by the United States in accomplishing these statutory goals. Carlow, 40 Fed.Cl. at 781.

Defendant's motion briefly references the decision in Carlow, making an untenable argument that the decision is not applicable when in fact, the Carlow decision reflects this court's interpretation of the ISDEAA in regard to breach of contract claims brought by individuals.

In this instance, the salary scale and other employment-related benefits to be conferred on Plaintiffs as employees of the Tribe (police officers and criminal investigators) are specifically addressed in the 638 Law Enforcement contracts in accordance with the ISDEAA. The end result is that certain individuals (specific, individual employees), whose positions are governed by terms contained in the contracts, do derive a direct benefit from the statutorily mandated terms. Employees are the actual beneficiaries of the contract provisions, just as contemplated by Congress under the ISDEAA.

Statutes and regulations incorporated as terms and provisions in this particular contract bear out Congress' larger intent, as set forth in the ISDEAA. In this case, law enforcement personnel hired by the Navajo Nation are accorded the same employment

benefits and protections as their BIA counterparts. Unquestionably, the 638 contracts in question and their pay provisions were created with the intent to foster professionalism and minimum standards of living for Navajo DPS employees. The contracts and accompanying CFR's specifically require parity of pay and other employment conditions, with BIA law enforcement personnel. The provisions in the 638 contracts, including the statutes and regulations incorporated into the contracts by reference, were intended to apply to Plaintiffs for their direct benefit and protection, while at the same time effectuating the larger goal of the ISDEAA.

When making a determination concerning the actual intended beneficiaries of these 638 contracts, the contracts' content and subject matter itself (employee pay and other employment benefits) confirms that Plaintiffs "fall within a class of individuals" that the contract intended to benefit. Sallee, 41 Fed.Cl. at 514. It is axiomatic that provisions concerning pay and employment benefits exist for the benefit of employees. Advocating a contrary position, that employees are not the intended beneficiaries of contract provisions concerning pay and other employment benefits, is, at minimum, illogical and at worst, disingenuous. If not employees such as these Plaintiffs, Defendant does not even attempt to explain who the intended beneficiaries would be.

Defendant, relying on Christos v. United States, 48 Fed.Cl. 469 (2000), asserts that, at most, Plaintiffs are merely incidental and indirect beneficiaries to the 638 contracts. The instant case, however, is significantly distinguishable from Christos. The parties in Christos were not American Indians. Nor were there 638 contracts and accompanying CFR's or a money mandating provision. Defendant itself points out that under 638 contracts and the entire ISDEAA statutory scheme related to 638 contracts,

Native Americans and Indian tribes maintain a different relationship with the United States, as required under the CFR's. See Defendant's Motion, p. 11. Given the undisputed goals and ISDEAA's legislative history, as previously discussed, Plaintiffs are not at all unreasonable in relying on the pay provisions in the 638 contracts as conferring an intended benefit on them; namely that they are entitled to employment benefits, at a minimum, equal to employees of the BIA.

## II. THE PRINCIPLES OF RES JUDICATA, CLAIMS PRECLUSION NOR ISSUE PRECLUSION APPLY; THE QUESTIONS PRESENTED HERE HAVE NOT BEEN ADJUDICATED ON THE MERITS

The multiple cases defendant refers to were in fact separate lawsuits filed by different Plaintiffs. The District Court's dismissal of the first claim was applied to the other Plaintiffs. The separate lawsuits were consolidated during the Appeal and the consequent District Court ruling permitting Plaintiffs to file a "new case". The original lawsuit included claims against the Navajo Nation for overtime pay under the FLSA. On motion the District Court ruled the FLSA did not apply to Indian Tribes. The District Court did not address the breach of contract claim instead dismissing the entirety of the case under FRCP 19 because the Navajo Nation no longer a party. Now, under 28 USCA 1491 and the ISDEAA the United States is the proper and only party before this court.

The decision in Snyder v. Navajo Nation, 382 F.3d 892 (9th Cir.2004) was limited to resolving the questions presented above, contained in the following holding: 1) that the Fair Labor Standards Act ("FLSA") does not apply to the Navajo Nation's Department of Public Safety, and 2) that the 638 Contract did not deem Plaintiffs federal employees for purposes of the FLSA.

Neither the FLSA, nor the question of the Navajo Nation as a defendant, are at issue here. Further, no determination on the merits of the issues presented in the instant case has been made.

For the court to apply claims preclusion the following must established: 1) there is an identity of the parties; 2) final judgment on the merits must have occurred; and 3) the same transactional facts exist. Sharp Kabushiki Kaisha v. Thinksharp, Inc., 448 F.3d 1368, 1370 (Fed.Cir.2006). Except for this matter and the prior cases having the same transactional facts, the requirements for claim preclusion have not been met. The parties are not identical in this matter nor has a final judgment on the third party beneficiary question been rendered. New Plaintiffs continue to be added. As other similarly situated employees continue to be employed by the Navajo DPS, they also are deprived of the contractually promised employment benefits of their positions.

The principles of res judicata are simply not applicable to this case, where the questions to be resolved are not at all similar to those presented in prior litigation.

## III. PLAINTIFFS' WAGE CLAIMS ARE OF A CONTINUING NATURE; FURTHER THEY BEGIN WITH EACH PAYCHECK OR, AT A MINIMUM, THE NEW YEARLY CONTRACT, THEREFORE THE SIX YEAR STATUTE OF LIMITATIONS IS NOT APPLICABLE

Plaintiffs' claims prior to March 23, 2001 are not barred by the six year statute of limitations contained in the Tucker Act. Plaintiffs' claims are controlled by the continuing claim doctrine and are not subject to the six year limitation.

Contrary to Defendant's assertion, Plaintiffs do not allege that Defendant has committed one significant breach. Rather, each failure to properly pay Plaintiffs constitutes a discrete and independent action. In Friedman v. United States, 159 Ct. Cl. 1, 310 F.2d 381 (1962), the court addressed application of the six year statute of limitations

when payments were to be made in a series or periodically. The Friedman court identified two basic categories of cases when determining application of the continuing claim doctrine.

First are cases where repeated "action (or failure to act) results in repeated causes of action," 310 F.2d at 382. Such cases are subject to the continuing claim doctrine. Contrasted with such cases are those in the second category, in which a cause of action accrues "after a seminal event occurs. Id at 386.

The first type of cases include wage and pay cases, where a claimant sues "for additional pay at a higher grade" or claims more compensation than claimant was receiving. Id at 384. Under Friedman, a "cause of action for pay or compensation accrues as soon as the payor fails or refuses to pay what the law (or the contract) requires". Id. at 385. Where payments are periodic, each continual "failure to make proper payment gives rise to a new claim upon which suit can be brought." Id.

In the case before the Court, there is no single, distinct event which occurred once then had ill effects on Plaintiffs later on. Rather, each paycheck received by Plaintiffs constitutes a separate cause of action under the test set forth in Friedman.

One important underlying rationale for the six year limitations period is to avoid litigating "stale claims" which could prejudice the Defendant due to the adverse effects of time. Kirby v. United States, 201 Ct. Cl 527, 539 (Ct. Cl. 1973). In this case, Plaintiffs' claims are anything but stale. The failure to be properly paid occurs with each individual paycheck Plaintiffs receive, each time individual Plaintiffs request, but are denied, proper pay, or each time a new Navajo DPS officer is hired at or receives the incorrect pay grade. Also, these contracts are entered into yearly.

Accordingly, the Court should refuse to dismiss those portions of Plaintiffs' claims that arise prior to March 23, 2001, as Plaintiffs' claims fall well within the principles articulated by Friedman and the continuing claim doctrine.

## CONCLUSION

In its' substance, Defendant's motion is very disturbing. Here the very same agency who had the duty to provide law enforcement services on the Navajo Reservation and entered into these "638 Contracts" comes to the court questioning their existence. Further, Defendant extensively takes the position that it is unaware of the pay provisions or concede the provisions are required by the related CFR's. This is no way for a government to act toward strangers much less its own people or subgroup to whom it owes a continuing responsibility.

The court should peremptorily rule that the subject 638 Contracts do exist with those terms, strike Defendant's motion and order it to submit any future document with a good faith argument why the stated provisions and accompanying CFR's are not what they say they are. Having framed its argument in such a way; not even acknowledging the existence of the contracts, Plaintiffs rely on Rule 12(b) which imposes the standard of accepting the allegations of the complaint as true and denying any Motion to Dismiss, where under any reasonably interpretation of the facts Plaintiffs have a claim.

This court clearly has jurisdiction under the Tucker Act and this court's its interpretation of the ISDEAA as providing a money mandating provision. Additionally, the Department of the Interior has the duty to provide law enforcement services on the reservation. The ISDEAA allows this agency to contract for the provision of these services for which it funds. 25 USCA 2808 provides for payment of these statutory

functions out of the department's general appropriations. In essence money for law enforcement on the Navajo Reservation has been appropriated it is channeled to the 638 Contractor. Plaintiffs are clearly the intended third party beneficiaries of cited provisions of the 638 Law Enforcement Contracts and the related CFR's. If not, Defendant fails to state who else was to receive this rate of pay.

The intent of the ISDEAA was for the government to promote and foster Indian "self determination". But the act and CFR's make it clear Congress did not want it done on the cheap. This specific rate of pay provision was included not only out of fairness but to further the professionalism of the Navajo DPS.

Defendant characterizes this as a case with many complaints. The complaints were filed by separate Plaintiffs. The cases were consolidated on appeal and the District Court subsequently allowed them to file a "new case". Regardless, Plaintiffs claim began anew with each new yearly 638 Law Enforcement Contract; when a Plaintiff receives a promotion creating a different pay disparity, or with each paycheck.

As detailed the U.S. District Court never addressed the merits of Plaintiffs' claim against the United States. It dismissed the United States believing the Navajo Nation was a required party. This is the same court that granted Plaintiffs, after the appeal, leave to file a new case. The overtime and wage claim was presented to the Ninth Circuit who ruled that the United States was not an appropriate party. It appears the District Court, after the FLSA overtime claim against the Navajo Nation was dropped found that the United States was the only proper party for the wage claim.

There has been no adjudication on the merits. Defendant cannot point to any ruling where a court addressed the wage claim provision and accompanying CFR's.

Clearly this contract, and the obligations of the United States are properly before this court.

WHEREFORE, Plaintiffs request the court strike Defendant's Motion to Dismiss until it produces the contracts at issue and makes a good faith argument why the provisions at issue are not as they state they are or deny Defendant's Motion to Dismiss based on the facts and law cited herein.

RESPECTFULLY SUBMITTED this 11th day of September, 2007.

LAW OFFICES OF EDWARD D. FITZHUGH

/s/ Edward Fitzhugh
Edward Fitzhugh
P.O. Box 24238
Tempe, Arizona 85288-4238
Attorney for Plaintiffs

**CERTIFICATE OF FILING**

I hereby certify that on this 11th day of September, 2007, a copy of the foregoing "Plaintiffs' Response to Defendant's Corrected Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s/ Edward D. Fitzhugh_________