reassumption of the Contract. Such records system, at a minimum, shall:

1) Provide for the creation, maintenance and safeguarding of records of lasting value, including those involving individual rights.

2) Provide for orderly retirement of records used or created under the Contract. Such records shall be returned to the BIA for disposition according to the General Records Schedules and the BIA Records Control Schedule.

b. When the Navajo Nation operates a system of records to accomplish a BIA function, the Navajo Nation shall comply with the Navajo Nation Privacy and Access to Information Act, 2 N.N.C. section 81, et seq..

c. The Navajo Nation shall make all reports and information concerning the Contract available to the Indian beneficiaries that the Contract serves or represents pursuant to the provisions of the Navajo Nation Privacy and Access to Information Act, 2 N.N.C. Section 81 et seq.

J. **EXAMINATION OF RECORDS.**

1. The Navajo Nation agrees to maintain books, records, documents and other evidence pertaining to the costs and expenses of the Contract (hereinafter collectively called "records") to the extent and in such detail as will properly reflect all net costs, direct and indirect, of labor, materials, equipment, supplies and services, and other costs of whatever nature for which expenditure, payment or reimbursement is claimed under the provisions of the Contract or this AFA.

2. The Navajo Nation agrees to make available at the Navajo Nation offices at all reasonable times during the time period of the Contract and this AFA below any of the records, with reasonable advance notice, for inspection, audit or reproduction by any

authorized representative of the Comptroller General or the Secretary of Interior as required under the ISDA, as amended, and applicable federal regulations..

3. Pursuant to Section (b)(7) of the Contract, the Navajo Nation shall preserve and make available its records related to the Contract and this AFA:

a. Until the expiration of the earlier of three years from the date of final payment under the Contract or the time period for the particular records specified in Part 1-20 of the Federal Procurement Regulations.

b. If the Contract is completely or partially cancelled, the records relating to the work terminated shall be preserved and made available for a period of three years from the date of any resulting final settlement.

4. Records which relate to appeals under the Section (b)(12), Disputes, of the Contract; litigation or the settlement of claims arising out of the performance of the Contract; or costs and expenses of the Contract as to which exception has been taken by the Awarding Official or any of his duly authorized representatives, shall be retained until such appeals, litigation, claims or exceptions have been disposed of.

5. Except for documentary evidence required under paragraph 4 above, the Navajo Nation may in fulfillment of its obligation to retain records substitute photographs, microphotographs, or other authentic reproductions or such records, after the expiration of 2 years following the last day of the month of payment or reimbursement to the Navajo Nation of the invoice or voucher to which such records relate, unless a shorter period is authorized by the Awarding Official with the concurrence of the Comptroller General or his duly authorized representative.

6. The provisions of this paragraph (J) shall be applicable to each subcontract hereunder which is on a cost; cost-plus-a-fixed-fee, time-and-material or labor-hour basis.

7. The Navajo Nation further agrees to include in each of its subcontracts hereunder a provision to the effect that the sub-Contractor agrees that the Comptroller General, the Secretary of the Interior, the Awarding Official, and the Tribal Contracting Officer, or any of their duly authorized representatives, shall, until the expiration of 3 years after final payment under the subcontract, or of the time periods for the particular records specified in Part 1-20 of the Federal Procurement Regulations, whichever expires earlier, have access to and the right to examine any directly pertinent books, documents, papers, and records of such sub-Contractor, involving transactions related to the sub-Contract. The term "sub-Contract" as used in this paragraph only, excludes:

i. Purchase orders not exceeding $10,000; and

ii. Sub-Contracts or purchase orders for public utility services at rates established for uniform applicability to the general public.

## K. NAVAJO PREFERENCE

Consistent with Section 7 (B) of the ISDA, as amended, the Navajo Nation Business Opportunity Act, 5 N.N.C. Section 201, et seq., and the Navajo Preference in Employment Act, 15 N.N.C. Section 601, et seq., shall apply to the administration of the Contract and this AFA.

## L. REPORTS

During the course of this AFA, the Navajo Nation shall submit the following reports:

1. **Financial Status Report** *(SF-269A)*. The Navajo Nation agrees to submit an original annual SF-269A report to the Awarding Official. This report shall be used to monitor expenditures incurred during annual operations. The SF-269A shall be submitted with the Annual Report 120 days after closure of each contract funding period.

2. **Annual Report.** The Navajo Nation agrees to submit the brief Annual Report to the Awarding Official 120 days after closure of each contract funding period. The report shall describe the conduct of the program and activities in:

a. Accomplishments of the program objectives;
b. Description of any significant problems encountered; and
c. Any changes required to the Contract and/or Scope of Work.

The Awarding Official Representative (AOR) will notify the Navajo Nation of delinquent report(s) and suggest the due date that the BIA must receive the delinquent report(s). If the Navajo Nation fails to submit the overdue report(s) by the established deadline, the AOR will notify the Awarding Official and recommend corrective action. A copy of such recommendation shall be provided to the Navajo Nation. The Awarding Official will than take appropriate action, consistent with the ISDA, as amended, to ensure that the Navajo Nation complies with the terms and conditions of the Contract and this AFA.

3. **Additional Reports.** Any additional reports required by law to be submitted beyond the Financial Status Report and Annual Report identified above shall be negotiated between the parties and delineated in Attachment C, which is incorporated herein by reference. Attached is the monthly crime report as needed for GPRA requirements.

M. SINGLE AUDIT REQUIREMENTS

1. The Navajo Nation shall comply with the Single Audit Act Amendment of 1996, 31 U.S.C. 7501 et seq., and agrees to arrange for an annual single organization-wide audit as prescribed by the ISDA, as amended; the Single Audit Act Amendment of 1996, 31 U.S.C. 7501 et seq.; Office of Management and Budget (OMB) Circular No. A-133 and 43 CFR Part 12.

2. If the Navajo Nation fails to comply with the requirements for obtaining audits according to the Single Audit Act Amendment of 1996, the BIA may take actions as appropriate given the circumstances and as allowed pursuant to Subpart B § __.225 of the OMB Circular No. A-133.

3. In addition to the submission requirements of the Single Audit Act Amendment of 1996, the Navajo Nation shall send two copies of its Single Audit Reports to the Office of Audit and Evaluation and Federal Audit Clearinghouse to meet the reporting requirements of the ISDA, as amended. The address is:

Office of Audit and Evaluation and Federal Audit Clearinghouse
U.S. Department of the Interior
Ely Parker Building
2051 Mercator Drive
Reston, VA. 20191

1201 E. 10th Street
Jeffersonville, IN 47132

## N. TECHNICAL ASSISTANCE AND MONITORING

1. The BIA will expeditiously provide special technical assistance to assist the Navajo Nation to successfully operate the program under the Contract and this AFA.

2. The Awarding Official and Awarding Official Technical Representative (AOTR) will monitor the submission of annual reports required under the Contract and the ISDA, as amended.

3. The BIA will provide monitoring services to ensure compliance with the terms of the Contract and this AFA. This monitoring function will include:

    a. One annual evaluation (Monitoring Session) by the Navajo Region, Branch of Indian Self-Determination Office program and the Awarding Official and AOTR. This visit shall be scheduled in advance as prescribed in Section (b)(7)(C) of the Contract. During the Monitoring Session, the Navajo Region, Branch of Indian Self-Determination and the Awarding Official will review records, speak to the Program Director and staff and inspect premises to determine compliance with the Contract and this AFA.

    b. Additional visits beyond the Monitoring Session shall only occur when requested by the Navajo Nation or when the Awarding Official determines that there is reasonable cause to believe that grounds for reassumption of the Contract, suspension of contract payments, or that other serious Contract performance deficiency may exist in accordance with Section (b)(7)(C) of the Contract. Such visits shall be scheduled in advance as prescribed in Section (b)(7)(C) of the Contract.

## O. FEDERAL TORT CLAIMS ACT

1. For purposes of Federal Tort Claims Act coverage, the Navajo Nation and its employees are deemed to be employees of the Federal government while performing work under the contract. This status is not changed by the source of the funds used by the Navajo Nation to pay the employees salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the Navajo Nation.

2. In accordance with the requirement in 25 CFR, Part 900, Subpart M, subsection 900.188(a) the Navajo Nation agrees to designate an individual to serve as tort claims liaison with the Federal government. The designated tort claims liaison shall provide the assistance specified in 25 CFR, Part 900, and Subpart M. subsection 900.188(c).

## P. CONTRACT ADMINISTRATION

1. **Federal Contract Administration**

All information or questions concerning the Contract and this Annual Funding Agreement (AFA) should be referred to:

Self-Determination Specialist/Awarding Official
Bureau of Indian Affairs – Navajo Regional Office
P.O. Box 1060
Gallup, New Mexico 87305
Telephone No. (505) 863-8403
Fax No. (505) 863-8461

2. **Tribal Contract Administration**

All notices, information, or questions concerning the Contract and this AFA should be referred to:

Navajo Nation Contracting Officer
Contracts and Grants Section - Office of Management and Budget
Post Office Box 646
Window Rock, Arizona 86515
Telephone No. (928) 871-6470
Fax No. (928)871-6567

**Q. SEVERABILITY**

The provisions of this AFA are severable. If any provision of this AFA is determined to be invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the remainder of the AFA.

**R. EFFECT ON EXISTING RIGHTS**

1. Nothing in this AFA shall be construed as affecting, modifying, diminishing, waiving or otherwise impairing the sovereign immunity from suit enjoyed by the Navajo Nation.

2. Nothing in this AFA shall be construed as waiving any rights of the parties under applicable federal law.

3. Nothing in this AFA shall be construed as authorizing or requiring the termination of any existing trust responsibility of the United States with respect to the Navajo Nation, Navajo people, or Indian beneficiaries.

**S. EFFECTIVE DATE**

This AFA shall be effective for the term of the funding year, January 1, 2007 through December 31, 2007, or until such time that a successor AFA is executed or a new contract is issued with a new contract term identified. However, this does not alter the obligation of the Navajo Nation to provide DOI with a proposed AFA for the following calendar year, or a notice of intent not to renew, at least 90 days prior to end of the current calendar year.

[signature] FEB 0 1 2007

Joe Shirley, Jr., President Date

**THE NAVAJO NATION**

[signature] 2-5-07

Secretary, Department of the Interior, Date

or designee

**UNITED STATES OF AMERICA**

# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Washington, D.C. 20240

IN REPLY REFER TO:

Law Enforcement Services
MS-2429

OCT - 6 2005

Memorandum
05-62

To: Associate Director of Operations
Associate Director of Professional Standards
All Special Agents in Charge
Chiefs of Police

From: Peter J. Maybee PJM
Assistant Deputy Director Office of Law Enforcement Services

Subject: New Procedures for Reporting Crime Data

The Office of Law Enforcement Services (OLES) recently submitted the 2005 Annual Crime report with less than half of all Indian country law enforcement programs reporting. What is even more alarming is that OLES failed to achieve 100 percent reporting from our own BIA law enforcement programs.

Per the directive from Deputy Bureau Director Chaney, to address this critical issue, effective immediately the following procedure will be implemented.

Assistant Deputy Director (ADD)

A. Will contact the Office of the Chief Information Officer to assist in implementing new procedures to report crime data.
B. Will work with the Department of Justice to implement procedures that will assist both organizations to report Indian country crime data.
C. The ADD's office will collect and forward to the Office of the Chief Information Officer crime data on a monthly basis.

Special Agent in Charge

A. Each district office will assign an Assistant Special Agent in Charge (ASAC) who is responsible for the collection and reporting of crime data from their respective region.
B. The ASAC's name and contact information will be forwarded to the ADD no later than October 15, 2005.

The ASAC's role will be to ensure that their region's crime data is reported by the 10th of each month. This data includes both BIA and Tribal programs. A "negative report" will be submitted for those tribal programs that refuse to report. Included will be the contact information of the (tribal) person contacted. Crime stats reports will be for the previous month.

We have also been mandated to collect stats on the number of federal cases opened and closed by each agency; the number of law enforcement programs that have implemented community-policing programs; and how these community police programs have affected the crime rate at their respective agencies. These measures have been added to our GPRA performance criteria. Guidelines for tracking and reporting this data will follow.

If you have any questions, please contact my office at (202) 208-5787.

DEPART NT OF INTERIOR LAW ENFORCEMENT EPORT
FOR THE MONTH OF ______ 2007
Department/Agency ______

| PART ONE OFFENSES | TOTAL # OF OFFENSES JAN 07 | CLEARED BY ARREST OR EXCEPTIONAL MEANS JAN 07 | OFFENSE REPORTED BY SLEC JAN 07 | ALCOHOL RELATED JAN 07 | DRUG RELATED JAN 07 | OFFENSE COMMITTED BY JUVENILES JAN 07 |
|---|---|---|---|---|---|---|
| HOMICIDE - MANSLAUGHTER | 0 | | | | | |
| MANSLAUGHTER BY NEGLIGENCE | 0 | | | | | |
| FORCIBLE RAPE | 0 | | | | | |
| ATTEMPTED FORCIBLE RAPE | 0 | | | | | |
| CHILD ABUSE | 0 | | | | | |
| DOMESTIC VIOLENCE | 0 | | | | | |
| ROBBERY - FIREARM | 0 | | | | | |
| ROBBERY - KNIFE (edged weapon) | 0 | | | | | |
| ROBBERY - STRONG-ARM | 0 | | | | | |
| ROBBERY - other dangerous weapons | 0 | | | | | |
| AGGRAVATED ASSAULT - firearm | 0 | | | | | |
| AGGRAVATED ASSAULT - knife | 0 | | | | | |
| AGGRAVATED ASSAULT - other dangerous weapons | 0 | | | | | |
| AGGRAVATED ASSAULT - hands, feet, fist, etc. | 0 | | | | | |
| BURGLARY - FORCIBLE ENTRY | 0 | | | | | |
| BURGLARY - unlawful entry, no force | 0 | | | | | |
| BURGLARY - attempted forcible entry | 0 | | | | | |
| LARCENY - THEFT not motor vehicle | 0 | | | | | |
| MOTOR VEHICLE THEFT - AUTO | 0 | | | | | |
| MOTOR VEHICLE THEFT - trucks and buses | 0 | | | | | |
| MOTOR VEHICLE THEFT - other vehicles | 0 | | | | | |
| ARSON - STRUCTURAL | 0 | | | | | |
| ARSON - MOBILE | 0 | | | | | |
| ARSON - OTHER | 0 | | | | | |
| TOTALS | 0 | 0 | 0 | 0 | 0 | 0 |

| LAW ENFORCEMENT OFFICERS KILLED OR ASSAULTED WHILE ON DUTY | NUMBER OF INCIDENTS |
|---|---|
| LAW ENFORCEMENT OFFICERS KILLED ON DUTY | 0 |
| LAW ENFORCEMENT OFFICERS ASSAULTED ON DUTY | 0 |

DEPARTMENT OF INTERIOR LAW ENFORCEMENT

FOR THE MONTH OF ________ 2007

Department/Agency ________

| OTHER THAN PART ONE OFFENSES | TOTAL # OF OFFENSES JAN 07 | CLEARED BY ARREST OR EXCEPTIONAL MEANS JAN 07 | OFFENSE REPORTED BY SLEC JAN 07 | ALCOHOL RELATED JAN 07 | DRUG RELATED JAN 07 | OFFENSE COMMITTED BY JUVENILES JAN 07 |
|---|---|---|---|---|---|---|
| ASSAULTS - NO WEAPONS USED | 0 | | | | | |
| FORGERY / COUNTERFEITING | 0 | | | | | |
| FRAUD | 0 | | | | | |
| EMBEZZLEMENT | 0 | | | | | |
| STOLEN PROPERTY - Buying, receiving, possessing | 0 | | | | | |
| VANDALISM | 0 | | | | | |
| WEAPONS - Carrying, possessing, etc. | 0 | | | | | |
| PROSTITUTION / COMMERCIALIZE VICE | 0 | | | | | |
| SEX OFFENSES | 0 | | | | | |
| DRUG ABUSE - Sell or manufacture | 0 | | | | | |
| DRUG ABUSE - Possession | 0 | | | | | |
| GAMBLING | 0 | | | | | |
| DWI | 0 | | | | | |
| LIQUOR LAWS | 0 | | | | | |
| DRUNKENNESS | 0 | | | | | |
| DISORDERLY CONDUCT | 0 | | | | | |
| ARPA VIOLATIONS | 0 | | | | | |
| ALL OTHER OFFENSES | 0 | | | | | |
| SUSPICIOUS PERSONS REPORTS | 0 | | | | | |
| CURFEW & LOITERING - persons under 18 | 0 | | | | | |
| RUNAWAYS - persons under 18 | 0 | | | | | |
| TOTALS | 0 | 0 | 0 | 0 | 0 | 0 |

| OTHER OFFENSES BY INCIDENT | NUMBER OF INCIDENTS |
|---|---|
| TRAFFIC (Not DWI) | 0 |
| HATE/BIAS CRIMES | 0 |
| ILLEGAL ALIEN APPRENSIONS/CONTACTS | 0 |

| SERVICE INCIDENTS | NUMBER OF INCIDENTS |
|---|---|
| SEARCH AND RESCUE | 0 |

Form: Part One Offenses Other than Part One Offenses
Rev: 4/22/04

## LAW ENFORCEMENT PATROL P.L.93-638 CONTRACT

### STATEMENT OF WORK

101. **The Contractor shall perform the following Bureau program: LAW ENFORCEMENT SERVICES.** Subject to the terms of the contract, the Annual Funding Agreement (AFA), and availability of funds, the Contractor shall perform police law enforcement activities as noted in the Indian Law Enforcement Reform Act, 25 U.S.C. § 2801, et seq., within Navajo Indian Country, as defined in 18 U.S.C. 1151, excluding the Moencopi Administrative Unit, ("Service Area"). In addition, the Contractor will provide one law enforcement officer each to the communities of Canoncito and Alamo (New Mexico) and New Lands in Apache County (Arizona). These services shall include:

A. Maintaining law enforcement and crime prevention services as deemed necessary by the Contractor within the service area.

B. Enforcing applicable Navajo Nation and federal laws and ordinances.

C. Protecting private, public and government property within the service area.

D. Providing community plans, prevention programs (i.e., Drug Awareness Resistance Education (DARE), Gang Resistance Education and Training (GREAT), and the Neighborhood Watch Program).

E. Creating and implementing specialized programs, task forces and teams for particular situations, including internal affairs investigations.

F. Responding to citizen's complaints or other request for law enforcement services within the service area.

G. Providing patrol services on and off roadways and in Indian communities within the service area.

H. Providing other services, such as serving criminal warrants, summons and subpoenas. Civil summons and other Navajo Nation Court orders may be served, provided the Contractor is properly reimbursed for all travel related expenses and provided these services do not significantly interfere with the Contractor's

ability to carry out its daily responsibilities and duties to the general public.

I. Writing clear, concise and comprehensive case reports, preparing cases for and testifying in court.

J. Familiarizing law enforcement personnel with all applicable provisions of the Navajo Nation Codes, federal and state laws, this statement of work, and other necessary references.

K. Conducting search and rescue operations for missing persons, runaway children, drowning victims, and for other victims of natural or manmade emergencies.

L. Completing investigations of all unattended deaths that do not involve foul play.

This contract does not include fire and rescue service, highway safety, environmental and resource enforcement provided by other Navajo Nation and federal programs.

102. **Personnel.** The Contractor shall perform the contracted law enforcement program in accordance with the qualifications, training, code of conduct, inspection and evaluation, and other standards applicable to Bureau law enforcement personnel, or the equivalent. In addition to Navajo Nation personnel employment standards, the Contractor shall require the following for each law enforcement position:

A. Employee candidates must present evidence of ability to discharge the duties of the position. Commissioned law enforcement officer candidates, in addition to other qualifications, shall demonstrate the traits and characteristics important to succeed in police work. Among these are: alertness, ability to work in stress situations, ability in oral expression, tact, integrity, capacity for effective public relations, practical intelligence and good judgment. Candidates must be honest and trustworthy; have integrity, sound judgment, temperate habits; and have a satisfactory work record. Any applicant who does not have these qualities shall not be appointed to a commissioned law enforcement position.

B. Prior to employment of any commissioned law enforcement officer, a full field background investigation shall be completed by the Contractor. Such investigation shall include, but not be limited to Navajo Nation, other tribal, local, state, and federal criminal history

checks. Background checks/clearances, through fingerprint charts (FD-258) must be conducted through the Assistant Director, Identification Division, Federal Bureau of Investigation, Washington, D.C. 20537. Checks/Clearance through the National Crime Information Center (NCIC), state criminal history centers and local police and tribal court records shall also be conducted. All background check/clearances shall be recorded, documented and kept on file for each commissioned officer at the Contractor's Public Safety headquarters. Careful review and documentation shall be made on each officer's family data, education, employment, medical and military history, previous residences, organizations, and affiliations, personal references, credit record and police record, including driver's license history and status. Background reviews shall be conducted through both a written questionnaire to be completed by the employee applicant and a personal interview with present and past supervisors and associates who have personal knowledge of the applicant's background and character. The Contractor shall update background investigation every five (5) years from the date of last background investigation on all commissioned officers.

C. Any person who has been convicted of a felony is not eligible for employment. Also any person who has been convicted of a misdemeanor, excluding minor traffic violations, within a period of three (3) years immediately preceding his/her appointment, or who has been convicted or plead guilty to a misdemeanor or domestic violence, shall not be eligible for employment as a commissioned law enforcement officer.

D. Persons appointed to commissioned law enforcement positions shall be at least 21 years of age. This requirement may be waived for United States armed services' veterans discharged under honorable conditions.

E. Applicants and commissioned law enforcement officer positions must be physically able to perform efficiently the duties of the positions, applicants shall have binocular vision correctable to 20/20 (Snellen) in each eye; uncorrected vision shall be no more than 20/100 in each eye. Near vision corrected or uncorrected shall be sufficient to read Yeager Type 2 at 14 inches. All law enforcement officers must be able to distinguish basic color. All law enforcement officer position applicants shall have the ability to

hear the conversational voice, without the use of a hearing aid. Persons with an amputation of arm, hand, leg or foot shall not be employed. Applicants shall possess emotional and mental stability. Any physical condition which would cause the employee to be a hazard to himself/herself or to others shall be disqualified for appointment/employment or continued employment or appointment as a law enforcement officer. Fitness for duty examination shall be ordered for any employee in question. In addition, an annual medical examination shall be completed for each commissioned law enforcement officer to ensure fitness for duty. Medical certificates shall be placed in each individual's official personnel folder.

F. Employee candidates must complete and successfully pass a psychological evaluation conducted by a licensed psychologist prior to employment. Any applicant who does not meet this requirement shall not be hired in a law enforcement officer position. The Bureau of Indian Affairs will cooperate with the Contractor in obtaining such services through the Indian Health Service. In the event that these services cannot be obtained through the Indian Health Services, upon written request from the Contractor, the Bureau of Indian of Affairs shall assist in developing and submitting a request for contract support funds to cover these costs. In the event that the Bureau develops a comprehensive mechanism to provide these services throughout Indian Country, the Contractor will have the opportunity to participate.

G. The Contractor, through its internal affairs unit, shall be responsible for promptly conducting administrative investigations in response to allegation of employee misconduct. Administrative investigations shall be conducted professionally, impartially and thoroughly and reports shall be timely, objective and accurate. All administrative investigations conducted by the internal affairs unit shall be documented and maintained in a confidential manner. Any subsequent disciplinary action shall be processed pursuant to applicable Navajo Nation personnel policies and procedures, as amended, and other policies and procedures applicable to the Contractor.

103 **Qualifications and Training.** The Contractor shall assure that each law enforcement officer is qualified, depending upon position classification in the field of law enforcement and has a working knowledge of arrest procedures, rules of

evidence, crime scene search, preservation of evidence, report writing, testifying in court and related law enforcement functions.

A. Each law enforcement officer must pass an approved firearms qualification course every six (6) months to be qualified to carry a firearm. Whenever an officer's firearms qualification lapses, all weapons issued to the law enforcement officer shall be returned. Any of the following firearms qualification courses may be used to qualify law enforcement officers in the use of a firearm:

1. The National Rifle Association National Police Course.

2. The National Rifle Association 25-Yard Course.

3. The National Rifle Association Practical Pistol Course.

4. The Federal Bureau of Investigation Practical Pistol Course.

5. All state approved firearms courses.

6. Federal Law Enforcement Training Center Courses.

B. Newly-employed law enforcement officers shall successfully complete, within their first year of service, the approved Basic Police Recruit Training Course conducted at the Indian Police Academy and approved by the Assistant Secretary of Indian Affairs or a comparable basic police recruit training course approved by the Assistant Secretary of Indian Affairs. An officer who fails to complete the training required by this paragraph shall be discharged or transferred to a position not involving law enforcement duties. Transfer may result in demotion. The Contractor may utilize law enforcement officer positions for newly employed law enforcement officers, classified as police recruits by the Contractor, until such time that they have successfully completed the Basic Police Recruit training required for peace officer certification.

C. Prior to, or within one year after, promotion or appointment to a supervisory law enforcement position, an employee shall complete the approved Supervisory Law Enforcement Officer Training Course conducted at the Indian Police Academy or a similar course

substantially meeting or exceeding the level of training provided by the Indian Police Academy and approved by the Assistant Secretary of Indian Affairs. A law enforcement officer who is serving in a supervisory position and fails to complete the training required in this paragraph shall be demoted.

D. Each law enforcement officer shall receive a minimum of forty (40) hours of local in-service training annually to meet training needs determined by Contractor and to keep abreast with developments in the field of law enforcement.

E. The Contractor may establish and maintain a training academy for the training of its personnel. The curriculum used for training, in compliance with the Bureau's mandated requirements shall be submitted to the COR for approval and certification prior to the implementation of the training. The COR, within thirty days of receipt of the curriculum, shall respond to the Contractor its approval or disapproval of the curriculum. If the COR fails to respond within the thirty days, it shall be deemed by the Contractor that the curriculum has been approved. Any disapproval of the curriculum by the COR shall explain the reason for disapproval.

F. To the extent of available resources, the Bureau shall provide additional necessary training, when requested in writing by the Contractor to enable the Contractor to carry out the terms and standards of the Contract. However, in the event that the Bureau cannot provide training needed by the Contractor to carry out the terms and conditions of this Contract, such failure will not adversely affect this Contract.

G. CERTIFICATES OF SATISFACTORY COMPLETION OF EACH OF THE ABOVE TRAINING REQUIREMENTS SHALL BE MAINTAINED IN EACH INDIVIDUAL OFFICER'S PERSONNEL FOLDER.

104. **Certification as Federal Law Enforcement Officers.** The Bureau shall commission any law enforcement officer meeting the personnel, qualifications and training provisions of this contract as a Federal Law Enforcement Officer.

105. **Uniforms and Equipment.**

A. Uniforms, when worn, shall positively identify the wearer as a law enforcement officer badge, name plate and tribal patch shall be visible at all times.

Uniforms of all law enforcement personnel shall be plainly distinguishable from the uniforms of other non-law enforcement personnel. Each officer shall be issued a standard identification card bearing a photograph of the officer.

B. All law enforcement officers shall be equipped with a two-way radio, emergency lights (Code 3), sirens, safety screens (cage), fire extinguisher, flashlight, emergency flares, blankets, a first aid kit, a shovel and a rappelling rope, at least 100 feet in length. Contractor shall maintain all vehicles in good working condition.

C. The Contractor shall provide all uniformed law enforcement officers with the following items and assure they are in good working condition:

1. .40 caliber, 9mm or other firearms duly authorized by the Contractor.

2. Belt holster, handcuffs, mace and pepper mace (including case), cartridge holder, and handcuffs with keys.

3. Minimum of two complete uniforms, including hat/helmet, hat shield and breast badge, baton, bullet-proof vest, foul weather gear, and inclement weather outer wear.

4. Ammunition shall be expended and replaced annually.

5. Baton.

D. The Bureau shall provide necessary equipment, when requested in writing by the Contractor and subject to availability, to the Contractor to efficiently and effectively carry out the terms and standards of the Contract.

E. All Internal Affairs investigators shall be issued a standard identification card bearing a photograph of the investigator. The Internal Affairs investigator shall wear clothing in accordance with the departmental uniform standard.

106. **Salaries.** Salaries paid law enforcement officers by the Contractor under this Contract shall be equal to or greater than the salaries paid law enforcement officers with similar

responsibilities employed directly by the Bureau of Indian Affairs.

107. Reporting. The Contractor shall prepare and submit the ~~following reports to the Contracting Officer's~~ Representative:

A. Annual Report.

Within (120) days after the end of the Contract year of this Contract, the Contractor will prepare an annual report covering the accomplishments and problems encountered during the prior year. The Annual Report shall contain the following statistical information and the report may contain any other statistical information the Contractor deems appropriate:

1. Arrest (adult, juveniles, male/female, classification of offenses);

2. Citations (classified by jurisdiction, adults, juvenile, male/female);

3. Motor Vehicle Accidents (non-injury, injury, fatality);

4. Crime statistics (classified into Part I, Part II, offenses classified by jurisdiction);

5. Patrol activities (classified as residential, dances, etc.);

6. Special Operations conducted (missing person, search and rescues, etc.);

7. Legal process served (classified by jurisdiction, warrants, subpoenas, etc.);

8. Public Assistance Contracts (motorist assistance, family disturbances resulting in counseling, weather information, etc.);

9. Crime Prevention Activities conducted (schools, chapters, etc.);

10. Vehicle Mileage Report; and

11. Other statistical information and Navajo Division of Public Safety may desire to add.

B. Internal Reporting Procedures.

The Contractor will maintain the following information as part of its performance of this Contract, but will ~~not submit this information. However, this information~~ will be available for inspection during the Bureau's yearly monitoring visit:

1. Dispatcher logs;
2. Officer logs;
3. Case reports, including arrest, investigation and incident records;
4. Juvenile records;
5. Individual arrest and disposition records;
6. Evidence records;
7. Booking logs;
8. Payroll records of all employees;
9. Reports of all traffic accidents investigated;
10. Individual background investigation records;
11. Training records and certificates of completion;
12. Codes of Conduct;
13. Jailer logs (Inmate checks);
14. Government-furnished property inventory list;
15. Employee performance appraisal files;
16. Annual physical examination records;
17. Firearms certification records;
18. Criminal case logs;
19. Firearm inventory list; and
20. Except in firearms training, each time a firearm is used for law enforcement purposes, a report shall be filed with the superior of the officer

who used the weapon. Whenever use of a weapon results in serious injury or death of any person, the officer who fired the weapon shall be placed on administrative leave, or be assigned to strictly administrative duties pending a thorough investigation of all circumstances surrounding the incident.

C. Civil Rights Violations Reports. In addition to prescribed Navajo Nation reporting guidelines, when a Contract law enforcement officer receives an oral or written allegation that a law enforcement officer employed under this Contract has violated the civil rights of any person, the receiving officer shall prepare a written report of the allegation and transmit it through the chain of command to the Navajo Department of Law Enforcement Chief of Police within seven (7) days of receipt of the allegation. No later than seven (7) days after being notified of the allegation, the Navajo Department of Law Enforcement Chief of Police shall submit written notification to the Navajo Department of Criminal Investigations Director the Bureau of Indian Affairs, the Navajo Area Office, the Federal Bureau of Investigation and the President of the Navajo Nation. If the Navajo Department of Law Enforcement Chief of Police, the District Captain or high ranking official is accused of a civil rights violation, the report of the allegation shall be transmitted directly to the Navajo Department of Criminal Investigations Director, the President of the Navajo Nation, the Federal Bureau of Investigation and the Navajo Area Office.

108. **No Assignment as Security.** No Police Officer shall be assigned to serve as bodyguards for the President, Vice-President or other politically elected or appointed official of the Navajo Nation government. This does not prohibit any Police Officer from conducting an investigation of criminal offenses or threats of criminal offenses against the President, Vice-President or other politically elected or appointed official of the Navajo Nation.

109. **No Third-Party Beneficiary.** This contract does not and is not intended to create rights in any person(s) or entities other than the contracting parties.

IGRO-190-04

# RESOLUTION OF THE INTERGOVERNMENTAL RELATIONS COMMITTEE OF THE NAVAJO NATION COUNCIL

## 20th NAVAJO NATION COUNCIL – Second Year, 2004

## AN ACTION

RELATING TO APPROPRIATIONS AND INTERGOVERNMENTAL RELATIONS; APPROVING AND AUTHORIZING THE NAVAJO DEPARTMENT OF LAW ENFORCEMENT TO RE-CONTRACT WITH THE SECRETARY OF THE U.S. DEPARTMENT OF THE INTERIOR PURSUANT TO PUBLIC LAW 93-638, AS AMENDED, BEGINNING JANUARY 1, 2005 THROUGH DECEMBER 31, 2007

**BE IT ENACTED:**

1. The Navajo Nation hereby approves and authorizes the Navajo Department of Law Enforcement to enter and/or renew a Public Law 93-638, as amended, contract with the Secretary of the U.S. Department of the Interior, Bureau of Indian Affairs for periods effective January 1, 2005 through December 31, 2007.

2. The Navajo Nation hereby approves and authorizes the President of the Navajo Nation to execute Public Law 93-638, as amended, contract and any subsequent modifications, consistent with applicable federal and Navajo Nation laws, on behalf of the Navajo Nation, and to execute any and all documents necessary to effectuate and carry out the intent of such contracts.

## CERTIFICATION

I hereby certify that the foregoing resolution was duly considered by the Intergovernmental Relations Committee of the Navajo Nation Council at a duly called meeting in Window Rock, Navajo Nation (Arizona), at which a quorum was present and that same was passed by a vote of 8 in favor and 0 opposed, this 25th day of October, 2004.

Lawrence T. Morgan, Chairperson
Intergovernmental Relations Committee

Motion: Willie Grayeyes
Second: Young Jeff Tom

THE NAVAJO NATION
Summary of Budget for
FY 2007 P.L. 93-638 BIA Funds

**Part 1. - Program Information:**

A. Program /Division: DPS - Law Enforcement

B. Contract No.: CTN00T780A2

**Part II. - Budget Information:**

| Major Category | Description | Budget |
|---|---|---|
| 2000 | Personnel Expenses - FTE 468 | 23,073,122 |
| 3000 | Travel Expenses | |
| 3500 | Meeting Expenses | |
| 4000 | Supplies | |
| 5000 | Lease & Rental | |
| 5500 | Communications and Utilities | |
| 6000 | Repairs and Maintenance | |
| 6500 | Contractual Services | |
| 7000 | Special Transactions | |
| 8000 | Assistance | |
| 9000 | Capital Outlay | |
| | **Total Budget** | 23,073,122 |

**Part III. - Signature:** [signature]

Form__07___638_BIA_Budget_Summary
9/26/2006

United States Department of the Interior
Bureau of Indian Affairs
Navajo Regional Office
P.O. Box 1060
Gallup, New Mexico 87305-1060

IN REPLY REFER TO:

February 12, 2007

Honorable Joe Shirley, Jr.
President, Navajo Nation
P.O. Box 9000
Window Rock, Arizona 86515
ATTN: Cordell Shortey, Contracting Officer, OMB

Dear President Shirley,

Transmitted herewith is a fully executed original copy of the Navajo Nation's Public law 93-638 contract modification no. Four (4) for contract number CTN00T780A3 Law Enforcement – Criminal Investigations.

The document has been forwarded to the Navajo Region Finance Office for immediate obligation. The Navajo Nation may drawdown the funds authorized under this modification.

Should you have any further questions, please feel free to contact me at (505) 863-8311.

Sincerely,

Awarding Official

bcc:District IV, OLES, AOTR
N303:SAPINTO:sap:02/12/07:x8311
2306-P3:Contract No. CTN00T780A3
23102-1

2/9/07

# THE NAVAJO NATION

POST OFFICE BOX 9000 • WINDOW ROCK, AZ 86515 • (928) 871-6000

*JOE SHIRLEY, JR*
*PRESIDENT*

*BEN SHELLY*
*VICE-PRESIDENT*

February 8, 2007

RECEIVED
BIA/NAVAJO REGIONAL OFFICE
FEB 9 2007
BRANCH OF SELF-DETERMINATION
GALLUP, NEW MEXICO

Sharon Pinto, Self Determination Officer
Office of Self Determination, Navajo Regional Office,
Bureau of Indian Affairs
P.O. Box 1060
Gallup, New Mexico 87305-1060

**RE: Criminal Investigation – Annual Funding Agreement, Modification 4, CTN00T780A3**

Dear Ms. Pinto:

The Navajo Nation transmits 3 signed sets of the above AFA. Please review and execute, upon completion please forward a signed copy for our implementation.

Please call me if you have specific concerns or questions regarding these documents.

Sincerely,

THE NAVAJO NATION

Cordell Shortey, Contracting Officer

Attachments: CTN00T780A3 – AFA and Modification No. 4 w/budget

xc: chrono/file

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: CTN00T780A3 | PAGE OF PAGES

2. AMENDMENT/MODIFICAITON NO.: Modification No. Four (4)

3. EFFECTIVE DATE: January 1, 2007

4. REQUISITION/PURCHASE REQ. NO.: 7M0L300114

5. PROJECT NO. (If applicble): Law Enforcement - CI

6. ISSUED BY CODE
U.S. Department of the Interior
Bureau of Indian Affairs
Navajo Regional Office
Gallup, New Mexico 87305-1060

7. ADMINISTERED BY (If other than Item 6) CODE
BIA - Navajo Regional Office
Branch of Self-Determination
P.O. Box 1060
Gallup, New Mexico 87305-1060

RECEIVED
BIA/NAVAJO REGIONAL OFFICE
FEB 8 2007
BRANCH OF SELF-DETERMINATION
GALLUP NEW MEXICO

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)
The Navajo Nation
Office of Contracts and Grants
P.O. Box 9000
Window Rock, Arizona 86515

Criminal Investigations

CODE | FACILITY CODE

(X) 9A. AMENDMENT OF SOLICIATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO.: CTN00T780A3

10B. DATED (SEE ITEM 11): April 15, 2005

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a)By completing items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPIRATION DATA (If required)
See attached Page 1a, Financial Information for Obligation.

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority) Public Law 93-638, as amended. |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return ALL copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Contract No. CTN00T780A3, Law Enforcement Program - Criminal Investigations is modified as follows:

1. The contract is increased by $430,977.00, which represents the initial FY 2007 direct base amount distribution as provided through congressional continuing resolutions #1 and #2 at 13.15% and 5.75% respectively.

2. The FY 2007 Annual Funding Agreement and Scope of Work is accepted and incorporated herein.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Joe Shirley, Jr., President
The Navajo Nation
Frank J. Dayish
Vice President, Navajo Nation

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
Sharon A. Pinto, Awarding Official
Cert. No. BIA-2006-L2-000024

15B. CONTRACTOR/OFFEROR (Signature of person authorized to sign)

15C. DATE SIGNED: FEB 07 2007

16B. UNITED STATES OF AMERICA (Signature of Contracting Officer)

16C. DATE SIGNED: 2-12-07

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

| CONTINUATION SHEET | Contract No. CTN00T780A3 | PAGE 1a |
|---|---|---|

NAME OF CONTRACTOR

THE NAVAJO NATION – Law Enforcement- Criminal Investigations

**MODIFICATION NO. FOUR (4)**

***FINANCIAL INFORMATION FOR OBLIGATION***

| DOCUMENT NUMBER | ACCOUNTING AND APPROPRIATION DATA | CONTRACT BALANCE BEFORE | MODIFICATION + OR - | CONTRACT BALANCE AFTER |
|---|---|---|---|---|
| CTN00T780A3 001 | KLM016/0506/37002/37730/25.2I | $3,009,775.00 | -0- | $3,009,775.00 |
| CTN00T780A3 002 | KLM016/0607/37730/25.2I | $3,344,342.00 | -0- | $3,344,342.00 |
| CTN00T780A3 003 | KLM016/20072008/J3350/25.2I | -0- | (+)$430,977.00 | $430,977.00 |
| | **TOTALS:** | **$6,354,117.00** | **(+)$430,977.00** | **$6,785,094.00** |

# FISCAL YEAR 2007
# ANNUAL FUNDING AGREEMENT

CONTRACT NO. CTN00T780A3
Criminal Investigation

BY AND BETWEEN

THE NAVAJO NATION

AND

THE UNITED STATES
DEPARTMENT OF THE INTERIOR
Bureau of Indian Affairs
Navajo Regional Office

FOR THE PERIOD

January 1, 2007 through December 31, 2007

Pursuant to 25 U.S.C. 450 et. seq.
(Pub. L. 93-638, as amended)

# ANNUAL FUNDING AGREEMENT

This Annual Funding Agreement (AFA) is entered into between the Navajo Nation and the United States Department of the Interior (DOI), pursuant to the agreement between the Navajo Nation and DOI for Criminal Investigations Program, pursuant to Title I of the Indian Self-Determination and Education Assistance Act ("ISDA"), as amended, and Pub. L. 93-638, as amended (hereinafter referred to as the Contract).

## A. PROGRAM, FUNCTIONS, SERVICES AND ACTIVITIES

1. The Navajo Nation shall administer and perform those portions of the Bureau of Indian Affairs' ("BIA") Criminal Investigation Program identified in the Scope of Work, attached hereto and incorporated herein by reference as Attachment A, in accordance with its own laws and policies and the terms, provisions, and conditions of the Contract and this AFA and any attachments hereto. The program standards, including any provisions of Federal Regulations waived by the Secretary, are identified in Section b(3) of the Contract.

2. The Navajo Nation agrees that any services or assistance provided to Indian beneficiaries under the Contract and this AFA shall be provided in a fair and uniform manner subject to applicable laws and regulations.

3. The Navajo Nation shall obtain from the BIA all such funds and other resources made available for the benefit of the tribe and Indian beneficiaries for all programs to be operated and services to be delivered by the Navajo Nation through the Contract and this AFA on behalf of the DOI, except for "Trust" and executive positions of the BIA considered non-contractible under the ISDA, as amended.

4. The BIA shall transfer to the Navajo Nation all such funds and other resources available for the benefit of the Tribe and Indian beneficiaries through the Contract in the most expeditious manner authorized by law, and shall provide technical support and assistance at the request of the Navajo Nation and as provided herein, in the most expeditious manner authorized by law.

5. The Navajo Nation shall exercise full discretion over the funds made available subject only to the provisions of the Contract, this AFA, and Federal law.

6. The Navajo Nation has identified a need for program and/or office space. DOI shall undertake reasonable efforts to make such program and/or office space available to the Navajo Nation, together with such maintenance services as may be necessary for that program and/or office space. When not available and tribal buildings are used, DOI will enter into a lease pursuant to Section 105 (f) (1) of the ISDA, as amended, and 25 CFR Part 900, Subpart H.

**B. PROGRAM FUNDING**

Subject to the availability of Congressional appropriation, DOI shall provide direct program funding for Fiscal Year 2007 in the amount of $3,344,342, exclusive of any Central Office or Regional Area shares, direct contract support, startup costs and indirect costs, in one lump sum payment to the Navajo Nation in accordance with Article B, Section 6 of the Contract. Full payment shall be made by wire transfer within ten (10) days of the date funds are made available to the BIA Awarding Official for the Contract. The funding amount represents the following activities authorized under the FY 2007 appropriations:

DOI acknowledges that the base amounts identified above do not fully fund the contracted activities.

**C. TRIBAL SHARES**

In addition to the amount referred to in Paragraph B of this AFA, DOI shall pay a sum to be negotiated representing Central Office and Regional Area shares associated with this AFA. Such