administrative leave, or be assigned to strictly administrative duties pending a thorough investigation of all circumstances surrounding the incident.

C. Civil Rights Violation Reports. In addition to prescribed Navajo Nation reporting guidelines, when a Contact law enforcement officer receives an oral or written allegation that a criminal investigator employed under this Contact has violated the civil rights of any person, the receiving officer shall prepare a written report of the allegation and transmit it through the chain of command to Department of Criminal Investigation within seven (7) days of receipt of the allegation. No later than seven (7) days after being notified of the allegation, the Director shall submit a written notification to the Division of Public Safety Director and Division of Public Safety Internal Affairs Supervisor who will notify the BIA Law Enforcement Services. If the Director of the Navajo Department of Criminal Investigations, the District Criminal Investigations Captain, or high ranking official is accused of a civil right violation, the report of the allegation shall be transmitted directly to Division of Public Safety Director and Division of Public Safety Internal Affairs Supervisor who will notify the BIA Law Enforcement Services.

112. No Third-Party Beneficiary. This contract does not and is not intended to create rights in any person(s) or entities other than the contracting parties.

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

May 5, 1999

Memorandum

To: All Holders of the Indian Affairs Manual

From: Assistant Secretary - Indian Affairs

Subject: Transmittal of Indian Affairs Manual Revising Part 40, Law Enforcement and Detention and the Updated IAM Index

This Indian Affairs Manual Release, #99-02, includes Chapter 2, Law Enforcement Standards, of Part 40, Law Enforcement and Detention. This chapter has been revised to include under paragraph 2.12, Personnel Selection, Training and Supervision, the requirements for a written examination and a psychological examination under the selection process for law enforcement officers. No other changes have been made to the Chapter.

Effective with the date of this memorandum Chapter 2 of Part 40 of the Indian Affairs Manual, issued February 24, 1999, is rescinded.

/s/ Kevin Gover
Assistant Secretary - Indian Affairs

Filing Instructions:

Remove: 40 IAM, Law Enforcement and Detention
Chapter 2, Law Enforcement Standards, Release #99-01

0 IAM, Chapter 2, Index, Release #99-01

Insert: Release #99-02:
40 IAM, Law Enforcement and Detention
Chapter 2, Law Enforcement Standards

0 IAM, Chapter 2, Index

RECEIVED

MAY 24 1999

BUREAU OF INDIAN AFFAIRS
ALBUQUERQUE AREA OFFICE
LAW ENFORCEMENT SERVICES

**2.1 Purpose.** This chapter describes the standards which govern the conduct of law enforcement programs in Indian country.

**2.2 Commissions.**

**A. BIA Commissions.** Only qualified, trained personnel with suitability verified by a background investigation are to be commissioned under the Federal law enforcement authority of the BIA. Officials who abuse their commissioning authority are subject to disciplinary actions.

**B. Special Law Enforcement Officer Commissions.** To facilitate the efficient enforcement of law enforcement, the BIA will enter into agreements with other law enforcement jurisdictions. Agreements at the national level will be established by the Director, while agreements at the state or local level will be established by the District Commanders, as appropriate. Such state or local agreements will conform to the standards established by the Director.

**C. Tribal Law Enforcement Officers.**

(1) Tribal operation of a law enforcement program does not automatically confer Federal law enforcement authority on the officers in these police departments. District Commanders will issue commissions to these officers only when:

(a) Federal jurisdiction and valid requirements exist; and

(b) Tribal law enforcement officers have been certified as having met at least the minimum standards for qualification, training, and suitability that are required of BIA law enforcement officers.

(2) If adherence to the standards in 2.2(C)(1) is not maintained, the commission is to be revoked by the official who has authority to issue the commission.

**2.3 Communicable Diseases.** All law enforcement officers will be properly trained, inoculated when appropriate, and issued proper protective equipment when dealing with communicable diseases, blood borne pathogens, and other hazardous materials. Proper procedures will be followed and protective equipment used when officers approach possible high-risk situations.

**2.4 Community Relations.** Every reasonable effort will be made to inform the public about crime and other law enforcement problems. Open communication with the public will be limited only by:

**A. Information which cannot be released** based on statute, regulations, or by direction of a United States Attorney.

**B. Information which might jeopardize:**

(1) On-going criminal investigations;
(2) The life or safety of any individual; or
(3) An individual's right to a fair trial.

**2.5 Conduct.** Allegations of unprofessional or unethical behavior by any law enforcement officer employed or commissioned by the BIA will be investigated either directly by the internal affairs unit or by an external investigative organization whose work will be monitored by the internal affairs unit. Appropriate disciplinary action will be taken against any law enforcement officer when allegations are proven.

**2.6 Cooperation.** To the extent permitted by law, the BIA will provide all possible information, assistance and support to other criminal justice agencies. Situations requiring support from organizations outside of the criminal justice system, e.g., social services, child protection, or mental health counseling, will be referred appropriately.

**2.7 Criminal Investigations** will be conducted in accordance with the agreements established between the BIA and the Department of Justice, the Federal Bureau of Investigation, United States ~~Attorneys, and in cooperation with~~ other Federal, state, local, and tribal criminal justice systems.

**2.8 Declination or Dismissal of Cases.** When any case is declined by a prosecutor or dismissed by a court due to mishandling by a law enforcement officer, such case will be reviewed by the Director and necessary corrective actions will be taken.

**2.9 Disagreements and Disputes.** To resolve issues that arise, law enforcement personnel should consult the following officials:

A. **Appropriate prosecutor** concerning issues of law or legal procedure;

B. **Immediate supervisor** regarding general law enforcement procedures; and

C. **Director, Office of Law Enforcement Services,** concerning serious policy or procedure problems arising with another criminal justice agency.

**2.10 Enforcement.**

A. **Patrol.** Active law enforcement patrol is essential to crime prevention, detection and apprehension of offenders, and positive relationships with the citizens. Patrol activities will include, but not necessarily be limited to:

(1) Enforcement of traffic laws;
(2) Enforcement of criminal laws;
(3) Responding to complaints;
(4) Conducting preliminary investigations;
(5) Detecting, apprehending, and transporting offenders, and
(6) Supporting and participating in other community-based programs, such as Drug Abuse Resistance Education (DARE) and Neighborhood Watch.

B. **Tribal Codes.** BIA police officers will enforce tribal codes only when such enforcement authority has been assigned through a formal agreement between the BIA and an Indian tribe.

**2.11 Evidence Collection and Preservation.** All evidence related to a suspected crime is to be professionally collected, processed, handled according to chain of custody standards, and properly disposed of when judicial proceedings are complete.

**2.12 Personnel Selection, Training and Supervision:**

**A. Selection.** Only qualified professional employees in the law enforcement occupational series will be commissioned as law enforcement officers in the Bureau of Indian Affairs. At a minimum, the selection process for law enforcement officers will include:

(1) An interview;
(2) A drug test;
(3) A medical examination;
(4) A physical fitness test;
(5) A written examination;
(6) A psychological examination;
(7) A background investigation; and
(8) Successful completion of a probationary period.

**B. Training.** All law enforcement officers are to successfully complete proper training from initial basic training to specialized, advanced and in-service training as careers progress and duty assignments change. The Indian Police Academy provides a full range of training courses which are continually reviewed and updated.

**C. Supervision.** All supervisors of law enforcement personnel will be properly trained and qualified as law enforcement supervisors and must successfully complete an appropriate background investigation to determine suitability.

**2.13 Physical Fitness.** Law enforcement personnel are required to meet and maintain the standards of physical fitness that have been established as necessary to perform their duties.

**2.14 Planning.** Each law enforcement program administrator is to develop a long range plan which includes organizational vision, goals, and values. The administrator is to:

(1) Communicate the plan to all officers in the unit;
(2) Review the plan annually; and
(3) Update the plan, as necessary.

**2.15 Program Reviews.** All BIA and tribal law enforcement programs operated under Self-Determination contracts will be subject to periodic inspections and reviews by the Office of Law Enforcement Services. Program managers will receive an evaluation of their program and the reviewers will provide recommendations for improvements.

**2.16 Reporting.** All law enforcement programs covered by this IAM part are required to report using the Indian Law Enforcement Information Network (INLINE).

**2.17 Rewards for Information.** Officers may purchase evidence or information or offer a reward when such action can reasonably be expected to further efforts in the investigation of a crime. The control, expenditure, and audit of these funds are not subject to public disclosure nor are the policies and procedures governing the confidential funds.

**2.18 Uniform Allowance.** Uniformed law enforcement officers will either receive an annual uniform allowance of not more than $400, or will be provided uniforms and related equipment at no charge in lieu of the allowance. The decision as to which will be offered is at the discretion of the District Commander. If the District Commander determines that an allowance will be paid, such payment will either be made:

**A. Directly** to the officer upon the officer's submission of receipts for uniform purchases. The amount of this direct payment is not to exceed the total of the receipts, up to a maximum of $400; or

**B. Indirectly** by District's issuance of a Government purchase order (or other authorized procurement instrument) to a commercial vendor on behalf of the officer.

**2.19 Use of Force.**

**A. Actions by the Officer.** Each time force is used the officer will:

(1) Verbally report the incident to the immediate supervisor as soon as practicable from the site of the incident; and

(2) Prepare a written report of the incident and submit the report to the immediate supervisor within 24 hours after the incident.

**B. Actions by the Supervisor.**

(1) Notify the District Commander of the verbal report;

(2) Comply with the DOI reporting requirements which are found in 90 IAM 1.

(3) Review the written report;

(4) Make a determination on the appropriateness of the use of force; and

(5) Provide a copy of the written report and the determination on the appropriateness of the use of force to the District Commander and to the Director, Office of Law Enforcement Services, to the attention of the Internal Affairs Unit.

**C. Actions by the Director, Office of Law Enforcement Services.** Acting through the Internal Affairs Unit, the Director will:

(1) Review the written report; and

(2) Conduct an investigation into the use of force if the report does not contain a certification by the supervisor that the use of force appears to have been appropriate.

**2.20 Vehicles.** Law enforcement vehicles will be operated only by employees who have completed the required safety and vehicle operation courses.

**2.21 Victim's Rights.** Victims of crime will be treated with courtesy and respect and will be provided adequate services by law enforcement personnel.

**2.22 Weapons.** All officers will be competent with any firearm or other lethal or non-lethal weapon carried on or off-duty. Officers will be required to periodically demonstrate proficiency in the use of weapons.

**1.1 Purpose.** This chapter provides the basic authorities and responsibilities for the law enforcement and detention programs.

**1.2 Authority.**

**A. Statute.** *Indian Law Enforcement Reform Act*, Public Law 101-379 [25 U.S.C. §§ 2801-2809].

**B. Regulations.**

(1) 25 CFR Part 10, "Indian Country Detention Facilities and Programs."

(2) 25 CFR Part 11, "Law and Order on Indian Reservations."

(3) 25 CFR Part 12, "Indian Country Law Enforcement."

**C. Handbooks.** The handbooks used in carrying out law enforcement and detention programs do not enlarge an officer's civil or criminal liability in any way. These handbooks should not be construed as the creation of a higher standard of safety or care in an evidentiary sense with respect to third party claims. Failure to follow procedures contained in these handbooks may, however, result in disciplinary actions of an administrative nature. The handbooks are available from the Director, Office of Law Enforcement Services, 417 Gold Street, SW, Albuquerque, NM 87102, (505) 248-7937. The following handbooks are to be used in law enforcement and detention operations:

(1) Adult Community Residential Handbook
(2) Adult Detention Handbook
(3) Juvenile Community Residential Handbook
(4) Juvenile Detention Handbook
(5) Model Inmate Handbook
(6) Law Enforcement Operations Handbook

**1.3 Cross Reference.** The regulations in 25 CFR Parts 10 and 12 contain references to chapters 68 and 69 of the Bureau of Indian Affairs Manual (BIAM). Chapter 69 was never issued and chapter 68 is superseded by the issuance of this Part 40 of the Indian Affairs Manual.

**1.4 Scope.** Under the regulations in 25 CFR Parts 10 and 12, the provisions of this part of the Indian Affairs Manual apply to all law enforcement programs operated by the Bureau of Indian Affairs and to those operated by an Indian Tribe or tribal organization under a Self-Determination contract. Indian tribes which have negotiated Self-Governance compacts are encouraged to comply with the standards contained in Part 40 of the IAM.

**1.5 Responsibilities.**

**A. Director, Office of Law Enforcement Services (Director):**

(3) Ensure that technical support is provided to tribally-contracted law enforcement and detention programs;

(4) Cooperate with the Director in reviewing law enforcement and detention operations and direct the implementation of any needed corrective actions; and

(5) Enter into agreements with local law enforcement agencies and/or individual officers to ensure that both law enforcement units have adequate authority to enforce laws in the jurisdiction involved, and to support each law enforcement agency in the performance of their duties.

**D. Awarding Officials.** Officials exercising delegated authority to award Self-Determination contracts are to: _

(1) Ensure that all contracts for law enforcement, detention operations, and any programs which employ conservation officers include provisions that require the Indian tribe or tribal organization to meet, as a minimum, the standards established by the Director, Office of Law Enforcement Services, for law enforcement, detention programs, or conservation officers, as appropriate;

(2) Provide a copy of the applicable Federal Regulations, this Part of the IAM, and applicable handbooks issued by the Director, Office of Law Enforcement Services, to each Self-Determination contractor affected by this Part of the IAM.

**E. Supervisors of Law Enforcement Personnel:**

(1) Support law enforcement personnel in training and development activities;

(2) Ensure that allegations of misconduct are promptly investigated and properly resolved;

(3) Review reports on use of force and take appropriate action on such reports; and

(4) Advise the agency superintendent of all allegations of misconduct and use of force, and of other pertinent law enforcement issues.

**F. Criminal Investigators:**

(1) Investigate all assigned cases thoroughly, in a timely manner, and in compliance with established procedures; and

(2) Prepare written reports meeting established quality standards.

**G. All Law Enforcement Personnel:**

(1) Conduct themselves in a professional and ethical manner;