# In the United States Court of Federal Claims

No. 07-195 C
(Filed: March 4, 2008)

*************************************
DARRELL BOYE et al., *
*
Plaintiffs, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
*************************************

## RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Presently before the court in the above-captioned case is Defendant's Motion for Protective Order. For the reasons set forth below, the court grants in part and denies in part defendant's motion.

## I. FACTUAL BACKGROUND[1]

Plaintiffs in this case are current and former employees of the Navajo Nation Division of Public Safety ("Navajo DPS"), most of whom reside within the Navajo Reservation in Arizona. Am. Compl. ¶¶ 4-5. The Bureau of Indian Affairs ("BIA") of the United States Department of the Interior is responsible for providing law enforcement on the Navajo Reservation, and, accordingly, contracts out law enforcement and criminal investigation services to the Navajo DPS via "638 contracts." Id. ¶¶ 7, 9. Plaintiffs' sole cause of action is for breach of contract, based on their purported status as third-party beneficiaries of various 638 contracts between the Navajo DPS and the BIA. Id. ¶¶ 11-18. Specifically, they allege that they are not receiving wages and benefits equal to the wages and benefits paid to their BIA counterparts, as required by the relevant 638 contract. Id. Thus, plaintiffs seek an accounting and payment of all amounts due to them, costs, attorney's fees, interest, and "such other and further relief as the court deems just and proper." Am. Compl. Wherefore ¶¶ 1-5.

## II. PROCEDURAL HISTORY

Counsel for the government filed Defendant's Corrected Motion to Dismiss on July 23, 2007, seeking dismissal of plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the

---

[1] For the purposes of this ruling, the facts are taken solely from the Amended Complaint.

Rules of the United States Court of Federal Claims ("RCFC"), and under the theory of claim preclusion.[2] Shortly after the close of briefing, on October 3, 2007, plaintiffs filed Plaintiffs' Motion to Stay Proceedings to Conduct Discovery. After considering the parties' arguments, the court granted plaintiffs' motion to stay on November 20, 2007, and indicated its intent to exercise its broad discretion to manage discovery:

> Plaintiffs, in their motion to stay, have requested discovery to assist them in opposing defendant's motion to dismiss. See Mot. Stay 2 ("Plaintiffs should be given a reasonable opportunity to present all material evidence pertinent to the motion."); id. at 3 ("At a minimum, there are five years of contracts with related documents not produced."); id. at 5 ("Defendant's assertion of Plaintiff[s'] failure to state a claim under 12(b)(6) supports Plaintiffs' request to conduct discovery to obtain the contracts in question."). The court finds that a limited amount of discovery is necessary. In particular, plaintiffs are entitled to present evidence that supports this court's jurisdiction over their complaint, and it appears that defendant is in possession of such documents.[FN] Plaintiffs may also seek to discover evidence that rebuts defendant's specific arguments under RCFC 12(b)(6).
>
> > [FN] Indeed, at a minimum, a review of all of the contracts at issue in the complaint appears necessary to determine whether those contracts confer third-party beneficiary status on plaintiffs, and therefore support this court's jurisdiction. See Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005) ("[Intent to create a third-party beneficiary] is determined by looking to the contract and, if necessary, other objective evidence."); Maniere v. United States, 31 Fed. Cl. 410, 417 (1994) ("Thus, to determine these requirements, a court looks to the agreement proffered to support the third-party beneficiary argument: whether the contract demonstrates the requisite intent or not thus establishes if the party may maintain a third-party beneficiary status.").

Order, Nov. 20, 2007, at 1-2 & n.1.

The parties commenced with the limited discovery described in the court's order. See Order, Jan. 15, 2008, at 1. However, defendant subsequently informed the court that it believed plaintiffs' discovery requests to be broader than what the court described and indicated its intent to file a motion for a protective order. See id. Defendant filed the instant motion on January 11, 2008, and the parties have completing their briefing. Plaintiffs requested oral argument, which

---

[2] Typically, claim preclusion is asserted as an affirmative defense in an answer and not a in an RCFC 12 motion to dismiss. See RCFC 8(c) ("In a pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . .").

the court held on March 3, 2008. At argument, without objection from defendant, the court accepted two exhibits offered by plaintiff, which it has duly considered.

## III. DISCUSSION

### A. Plaintiffs' Discovery Requests

In its motion to dismiss, defendant first contests the jurisdiction of this court to adjudicate plaintiffs' breach of contract claim. Specifically, defendant contends that because plaintiffs are not in privity of contract with the United States and are not third-party beneficiaries under any of the relevant 638 contracts, Tucker Act jurisdiction does not exist for their breach of contract claim. Def.'s Corrected Mot. Dismiss ("Mot. Dismiss") 9-13. Defendant also asserts that plaintiffs have not otherwise alleged a money-mandating statute that would provide a basis for the court's jurisdiction. Id. at 13-15. Further, defendant contends that the Indian Tucker Act does not provide a jurisdictional basis for plaintiffs' claim. Id. at 15-16. Finally, defendant argues that the statute of limitations prevents the court from considering plaintiffs' breach of contract claim as to any breach prior to 2001. Id. at 16-18.

In addition to contesting this court's jurisdiction, defendant contests plaintiffs' ability to state a claim upon which relief can be granted, arguing that plaintiffs' breach of contract claim is based on a nonexistent duty. Id. at 16. Plaintiffs identified the duty in the following manner: "That, as one of the duties it may not delegate, Defendant BIA has the duty to investigate to insure [sic] that its 'employees' are paid their proper salaries and benefits." Am. Compl. ¶ 13. Defendant asserts that plaintiffs have not pointed to any "provision of the 638 Contract setting forth this duty, nor does such a provision appear to exist." Mot. Dismiss 16.

In light of defendant's motion to dismiss, and upon plaintiffs' subsequent request, the court provided for limited discovery in this matter for two purposes. First, the court permitted plaintiffs to seek the relevant documents in defendant's sole possession that would allow them to establish jurisdiction in this court, as is their burden. See Order, Nov. 20, 2007, at 1-2. The court specifically identified the relevant 638 contracts as ripe for discovery, id. at 2 n.1, but left it to the parties to determine what other evidence, if any, would bear upon the court's jurisdiction. Second, the court indicated that "[p]laintiffs may also seek to discover evidence that rebuts defendant's specific arguments under RCFC 12(b)(6)." Id. at 2. As a result of the court's order, plaintiffs propounded Plaintiffs' Request for Production of Documents on defendant, seeking the following:

1. All documents pertaining to Law Enforcement contracts for the past twenty-five years between Defendant and the Navajo Nation (all its agencies and departments). This includes, but is not limited to:
   A) All finance and accounting;
   B) Annual Reports;
   C) Audits;

D) All documents related to the contracts and the terms therein; including but not limited to; personnel qualifications[;] training; certification; report writing and uniform allowances;

E) All correspondence between Defendant and the Navajo Nation and[] its departments regarding the 638 Law Enforcement Contracts;

F) All pay scales for police officers and criminal investigators [for] the same period.

2. Any and all documents regarding inspections conducted by or at the request of the BIA pursuant to the terms of the 638 Law Enforcement Contracts between Defendant and the Navajo Nation (including all of its agencies and departments). This request is for the prior twenty-five years.
3. The pay scale for Bureau of Indian Affairs Law Enforcement Officers on the Hopi Reservation. This request is for the past twenty-five years.
4. Any and all documents regarding the determination of the required number of personnel to properly staff the Navajo DPS[.]
   A) Any and all documents regarding the determination of the required number of personnel to properly staff the Hopi BIA.

   This request is for any and all documents utilized in making those determinations.
5. The Indian Affairs Manual in effect from January 1, 1972 to the present with all modifications.
6. The Law Enforcement Operations Handbook in effect from January 1, 1972 to the present with all modifications.

Def.'s Mot. Protective Order App. ("Def.'s App.") A3-A4. Plaintiffs also propounded three amended deposition notices on defendant. In the first notice, plaintiffs sought to depose "[t]he Director(s) of the Office of Indian Law Enforcement for the prior ten years." Id. at A17; accord id. at A21. In a second notice, plaintiffs sought the depositions of representatives of defendant who could testify about "[t]he rates of pay for BIA Law Enforcement Officers (including Criminal Investigators) for the prior twenty-five years" and "[t]he rates of pay for Law Enforcement Officers (including Criminal Investigators) of all Indian Tribes operating police departments pursuant to '638 Law Enforcement Contracts' . . . for the prior twenty-five years." Id. at A19. Finally, in their third notice, plaintiffs sought the depositions of representatives of defendant who were "[t]he 'Awarding Official(s)' as described in the Indian Affairs Manual Part

40 Chapter 1 during the past twenty-five years," certain "BIA official(s) located in Gallup, New Mexico,"[3] and "[t]he self-determination Specialist/Awarding Official."[4] Id. at A21.

According to defendant, it has already provided plaintiffs with the relevant contracts for the years 2002 through 2007. Def.'s Mot. Protective Order ("Mot.") 4. However, plaintiffs represent that defendant has provided them with the relevant contracts for the years 2001 through 2007. Pls.' Resp. Mot. Protective Order ("Resp.") 3.

**B. The Parties' Positions Regarding Plaintiffs' Discovery Requests**

In its motion for a protective order, defendant objects to plaintiffs' request for twenty-five years worth of documents as, "for the most part, overly broad, unduly burdensome," and an attempt to obtain material that is irrelevant to the issues about which the court permitted discovery in its November 20, 2007 order. Mot. 4. With respect to the jurisdictional issue, defendant argues that requests 1F through 6 "do not appear to relate at all to the terms of the actual contracts at issue, or whether or not those contracts expressly reflect an intent to benefit the plaintiffs, as the caselaw requires." Id. Defendant further contends that requests 1A through 1E "do not appear to relate to the third-party beneficiary question . . . ." Id. at 5. Finally, defendant argues that "[t]he depositions sought are not contemplated by the Court's order and not reasonably calculated to lead to the discovery of admissible evidence on the narrow issue of jurisdiction on a third-party beneficiary basis . . . ." Id. at 6.

Then, addressing whether plaintiffs' document request conforms to the court's order with respect to defendant's RCFC 12(b)(6) motion, defendant argues that requests 1F through 6 "appear designed to enable the plaintiffs to show that . . . the BIA did not fulfill its duty of investigation" and not "whether the 638 Contracts set forth a nondelegable duty to investigate." Id. at 4-5. Defendant further contends that requests 1A through 1E "do not appear to relate to . . . the investigatory duty question . . . ." Id. at 5. Finally, defendant argues that "[t]he depositions sought are not contemplated by the Court's order and not reasonably calculated to lead to the discovery of admissible evidence on . . . the issue of whether the contracts contain a provision setting forth a nondelegable duty to investigate the pay of Navajo Nation employees." Id. at 6.

---

[3] The deposition notice reads: "BIA official(s) located in Gallup, New Mexico with the responsibility and/or authority to insure [sic] that the terms of the subject[.]" Def.'s App. A21. Although the sentence is incomplete, the court gathers that plaintiffs sought to depose those individuals responsible for administrating the relevant 638 contracts.

[4] Plaintiffs specifically named Dolores F. Torrez, the Awarding Official of the 2002 Law Enforcement Services contract, and Sharon Pinto, the Awarding Official of the 2007 Law Enforcement–Patrol and 2007 Law Enforcement–Investigations contracts, in their third deposition notice.

Plaintiffs, in their response to defendant's motion for a protective order, do not indicate how the requested documents and depositions will provide them the evidence necessary to establish jurisdiction in this court pursuant to their third-party beneficiary theory, or otherwise. With respect to the BIA's alleged duty to investigate and ensure that plaintiffs were properly paid, plaintiffs contend that the contract expressly describes such a duty, Resp. 1, but argue that their requested discovery is necessary because the BIA allegedly has failed to properly interpret the contracts as containing the purported duty, see Resp. 2 ("[S]ince Defendant, as a party to the contract, has not enforced the pay provision[,] its interpretation will not be found in the contracts."); id. (asserting that plaintiffs sought the requested discovery "[t]o obtain evidence of the government's interpretation and duty to enforce the pay provision and law"); id. at 3 ("Should the requested documents not provide a clear 'interpretation' of the pay provision[,] Plaintiffs have set the depositions of field officers and officials responsible for administering the contracts, including the duty to investigate that the contract terms are carried out."). Thus, plaintiffs contend that although the contract language is clear, they require additional evidence to demonstrate that the BIA's interpretation of that language is incorrect. Finally, with respect to the scope of the requested discovery, plaintiffs contend that because they "have alleged a continuing tort," they are entitled to twenty-five years of contracts.[5] Id. at 3.

### C. Discovery Concerning Events Occurring Prior to 2001

Because the Tucker Act's limitations period is an absolute bar to claims older than six years, see John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750, 752-55 (2007), the court finds it necessary to first address the statute of limitations as it pertains to plaintiffs' discovery requests. In their complaint, plaintiffs allege that the BIA's breach of contract "was, and is, of a continuing nature for which the statute of limitations has no application." Am. Compl. ¶ 16; see also Pls.' Resp. Def.'s Corrected Mot. Dismiss ("Resp. Mot. Dismiss") 22-24 (arguing that the "continuing claim doctrine" obviates the need to apply the statute of limitations). Accordingly, plaintiffs seek the discovery of documents spanning the last twenty-five years and testimony concerning events of the last twenty-five years. In its motion to dismiss, defendant contends that the statute of limitations bars any claims by plaintiffs that accrued more than six years prior to their filing of the complaint in this court. Mot. Dismiss 17-18. Accordingly, in its motion for a protective order, defendant argues that the statute of limitations prevents discovery concerning contracts prior to 2001. Mot. 4. Plaintiffs respond that their "continuing tort" allegation justifies the discovery of twenty-five years of contracts.[6] Resp. 3.

---

[5] The court assumes that plaintiffs meant to argue that they have alleged a continuing breach of contract, as the Tucker Act precludes this court from entertaining tort claims. See 28 U.S.C. § 1491(a)(1).

[6] The "continuing tort" doctrine, also known as the "continuing wrong" doctrine, has rarely, if ever, been applied in this court. The reason for this failure is clear: because the doctrine concerns cases sounding in tort, subject matter specifically excluded from the court's jurisdiction, it is unlikely that Congress intended the doctrine's use in this forum. Simmons v.

The parties' dispute concerning plaintiffs' "continuing claim" allegation presents a question of law. More specifically, when it rules on defendant's motion to dismiss, assuming that it has jurisdiction over plaintiffs' complaint, the court must determine whether the relevant legal authority permits plaintiffs to pursue their claims beyond the six-year limitations period. In other words, the inquiry is not factual in nature. Thus, at this time, plaintiffs do not require twenty-five years of contracts and the related testimony to rebut defendant's statute of limitations argument.

**D. Discovery Regarding Jurisdiction: Plaintiffs' Third-Party Beneficiary Status**

The court next addresses plaintiffs' discovery requests as they pertain to this court's jurisdiction. For claims based upon an express or implied contract, the Tucker Act's waiver of sovereign immunity requires that privity exist between the plaintiff and the government. Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998). There are several exceptions to this general rule, however, including suits by intended third-party beneficiaries. First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999). In the instant case, plaintiffs base their breach of contract claim on the theory that they are third-party beneficiaries to the relevant 638 contracts between the BIA and the Navajo DPS.

"In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001). As evidence of intent, the court must consider "the language of the contract itself." Dewakuku v. Martinez, 271 F.3d 1031, 1041 (Fed. Cir. 2001). "When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced." Roedler v. Dep't of Energy, 255 F.3d 1347, 1352 (Fed. Cir. 2001); see also Montana v. United States, 124

---

United States, 71 Fed. Cl. 188, 192 (2006); see also Wechsberg v. United States, 54 Fed. Cl. 158, 164 (2000) ("Finally, the concept of a 'continuing wrong' is tortious in nature, suggesting a further limitation on this Court's authority to reach back beyond the . . . limitations period."). Conversely, the "continuing claims" doctrine, applicable when a claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages," enjoys a long history of application and discussion by this court and its predecessors. Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997). Specifically:

> The continuing claims doctrine often operates to save parties who have pled a series of distinct events–each of which gives rise to a separate cause of action–as a single continuing event. In such cases, the continuing claims doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events.

Ariadne Fin. Servs. Pty. Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998).

F.3d 1269, 1273 (Fed. Cir. 1997) (noting that if the intended third-party beneficiary is not "specifically or individually identified in the contract," the third party must instead "fall within a class clearly intended to be benefitted thereby"). To find such intent, the court may look to (1) whether the language of the contract demonstrates that "the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him," Dewakuku, 271 F.3d at 1041; (2) "the governing statute and its purpose," to the extent that "the contract implements a statutory enactment," Roedler, 255 F.3d at 1352; or (3) "other objective evidence," Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005); see also Stockton E. Water Dist. v. United States, 75 Fed. Cl. 321, 350-51 (2007) (noting that the court permitted testimony from three witnesses regarding whether certain plaintiffs were third-party beneficiaries). The question of whether a party is an intended third-party beneficiary "is a mixed question of law and fact." Flexfab, L.L.C., 424 F.3d at 1259.

It is clear from the case law that in order to ascertain third-party beneficiary status, the court must look to the language of the relevant 638 contracts and any other objective evidence from which intent to benefit might be adduced. However, plaintiffs have not identified how any of the requested discovery bears upon the intent of the contracting parties–the BIA and the Navajo DPS–to benefit them. After examining plaintiffs' discovery requests, and in the absence of any guidance from plaintiffs, the court finds that plaintiffs are entitled to the following discovery, beyond the already-produced contracts, for the purposes of establishing this court's jurisdiction:

- Plaintiffs may obtain the documents related to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007. "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other provision that directly relates to the pay or benefits to be paid pursuant to the contracts.

- Plaintiffs may obtain the correspondence between the BIA and the Navajo Nation that relates to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007. "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other provision that directly relates to the pay or benefits to be paid pursuant to the contracts.

- Plaintiffs may propound interrogatories on the "Awarding Officials" of the relevant 638 contracts for the years 2001 through 2007, on the sole issue of whether the BIA intended to benefit plaintiffs when it entered into the contract

signed by the "Awarding Official."[7] Once plaintiffs have received the interrogatory responses, they may petition the court to conduct depositions. Plaintiffs' request, if any, must explain why the requested depositions are needed to support their jurisdictional claim.

**E. Discovery Regarding the BIA's Purported Duty to Investigate**

Finally, the court addresses plaintiffs' discovery requests as they pertain to defendant's argument that the relevant 638 contracts do not describe a nondelegable duty for the BIA to investigate and ensure that plaintiffs are being properly paid. Whether the contracts describe such a duty is a matter of contract interpretation.

In interpreting a contract, the court begins by examining its language. TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006). The court considers the contract as a whole and interprets it "so as to harmonize and give reasonable meaning to all of its parts." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). "An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." Id. "When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions." TEG-Paradigm Envtl., Inc., 465 F.3d at 1338. But, "[w]hen a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous, and [the court] may then resort to extrinsic evidence to resolve the ambiguity." Id. (citations omitted).

In the instant case, plaintiffs do not appear to allege that the relevant 638 contracts are ambiguous. To the contrary, plaintiffs argue in response to defendant's motion to dismiss that the contracts expressly (1) incorporated the statutory requirement that authorized the BIA "to compel" the Navajo DPS "to provide all records and a full accounting"; (2) conferred on the BIA the statutory "duty to prohibit the Navajo DPS from withholding promised employment benefits from Plaintiffs"; (3) required the BIA to ensure that the Navajo DPS "perform the contracted law enforcement program in accordance with the . . . standards applicable to [BIA] law enforcement personnel"; and (4) acknowledged that the BIA had not delegated its duties. Resp. Mot. Dismiss 14. As plaintiffs make clear in their response to defendant's motion for a protective order, their argument is that the BIA has misinterpreted the contracts. See Resp. 2. Because they frame their argument in this manner, plaintiffs do not explain precisely how the requested discovery relates to whether the contracts contain the alleged duty. Indeed, with respect to document request 1F,[8]

---

[7] Although it did not specifically permit plaintiffs to propound interrogatories in its November 20, 2007 order, the court finds that such discovery may assist plaintiffs in establishing jurisdiction.

[8] In their response to defendant's motion for a protective order, plaintiffs claim that document request 1F contains two numbered subrequests. Resp. 4. However, these purported

plaintiffs admit that they "requested documents concerning the BIA Law Enforcement officers pay scale" to "highlight the obvious substantial differences in pay," id. at 4, even though any pay differences do not bear on whether the relevant 638 contracts describe a duty to investigate plaintiffs' pay. Because they do not assert an actual ambiguity in the contract language itself, plaintiffs do not require extrinsic evidence to support their claim that the contracts contain an express duty to investigate. Accordingly, the court finds that plaintiffs are not entitled to any of the requested discovery, beyond the already-produced contracts, for the purposes of establishing whether the relevant contracts at issue describe a nondelegable duty for the BIA to investigate and ensure that plaintiffs are being properly paid.[9]

## IV. CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** defendant's motion for a protective order. Plaintiffs are entitled to the following:

(1) The relevant 638 contracts for the years 2001 through 2007;

(2) The documents related to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007;

(3) The correspondence between the BIA and the Navajo Nation that relates to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007; and

(4) The interrogatory responses of the "Awarding Officials" of the relevant 638 contracts for the years 2001 through 2007, on the sole issue of whether the BIA intended to benefit plaintiffs when it entered into the contract.

Defendant shall not be required to produce any other document or testimony at this time. To provide the parties sufficient time to comply with this order, the court **VACATES** the remaining deadlines set forth in the court's January 15, 2008 order, and instead establishes the following schedule:

- Plaintiffs shall propound the permitted interrogatories on defendant **no later than Friday, March 21, 2008**.

---

subrequests do not appear as part of Plaintiffs' Request for Production of Documents, which was submitted by both parties in their appendices. See Def.'s App. A3-A4; Pls.' Resp. Mot. Protective Order App. 1-2.

[9] Plaintiffs are reminded that this case is at an early stage of litigation. Thus, so long as it has jurisdiction, if the court ultimately determines that the contracts are ambiguous, it will deny defendant's RCFC 12(b)(6) motion and permit discovery on the issue.

- Defendant shall provide responses to the permitted interrogatories to plaintiffs **no later than Monday, April 21, 2008**.

- Defendant shall provide the permitted document discovery to plaintiffs **no later than Monday, April 21, 2008**.

- The parties shall file a joint status report suggesting further proceedings in this case **no later than Friday, May 9, 2008**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge