**AGREEMENT BETWEEN THE SECRETARY OF THE DEPARTMENT OF THE INTERIOR AND THE NAVAJO NATION**

**A. Authority and Purpose**

**1. Authority**

This agreement, denoted a Self-Determination Contract (referred to in this agreement as the "Contract"), is entered into by the Secretary of the Interior or the Secretary of Health and Human Services (referred to in this agreement as the "Secretary"), for and on behalf of the United States pursuant to Title I of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450, et seq.) and by the authority of the Navajo Nation (referred to in this agreement as the "Contractor"). The provisions of Title I of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450, et seq.) are incorporated in this agreement.

**2. Purpose**

Each provision of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450, et seq.) and each provision of this Contract shall be liberally construed for the benefit of the Contractor to transfer the funding and the following related functions, services, activities and programs (or portions thereof), that are otherwise contractible under Section 102(a) of such Act, including all related administrative functions, from the Federal Government to the Contractor: **Law Enforcement Patrol**.

**B. Terms, Provisions and Conditions**

**1. Term**

Pursuant to Section 105(c)(I) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450j(c)(1)),



BOYE 2598

the term of this contract shall be 3 (three) years. Pursuant to Section 105(d)(1) of such Act (25 U.S.C. 450j(d), upon the election by the Contractor, the period of this Contract shall be determined on the basis of a calendar year, unless the Secretary and the Contractor agree on a different period in the annual funding agreement incorporated by reference in subsection (F)(2).

**2. Effective Date**

This Contract shall become effective upon the date of the approval and execution by the Contractor and the Secretary, unless the Contractor and the Secretary agree on an effective date other than the date specified in this paragraph.

**3. Program Standards**

The Contractor agrees to administer the program, services, functions and activities (or portions thereof) listed in subsection (A)(2) of the Contract in conformity with the following standards: **Navajo Nation laws, federal laws (including the Indian Civil Rights Act), Navajo Nation General Orders, 25 C.F.R. Part 12, 68 BIAM, and applicable U.S. Attorney Guidelines. The Secretary shall provide copies of all Bureau of Indian Affairs manuals, federal laws and regulations, as well as any updates, used as standards within this Contract. The procedures contained within this Contract supersede any conflicting Bureau procedures. In the event the Bureau updates its procedures, the Contractor will have 120 days to review these updated procedures and, at the Contractor's option, request a waiver before these updated procedures become applicable to this Contract.**

**4. Funding Amount**

Subject to the availability of appropriations, the Secretary shall make available to the Contractor the total amount specified in the annual funding agreement incorporated by reference in subsection (F)(2). Such amount shall not be less than the applicable amount determined pursuant to Section 106(a) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450j-1).

**5. Limitation of Costs**

The Contractor shall not be obligated to continue performance that requires an expenditure of funds in excess of the amount of funds awarded under this Contract. If, at any time, the Contractor has reason to believe that the total amount required for performance of this Contract or a specific activity conducted under this Contract would be greater than the amount of funds awarded under this Contract, the Contractor shall provide reasonable notice to the appropriate Secretary. If the appropriate Secretary does not take such action as may be necessary to increase the amount of funds awarded under this Contract, the Contractor may suspend performance of the Contract until such time as additional funds are awarded.

**6. Payment**

A. In general - Payments to the Contractor under this Contract shall:

(i) be made as expeditiously as practicable; and

(ii) include financial arrangements to cover funding during periods covered by joint

resolutions adopted by Congress making continuing appropriations, to the extent permitted by such resolutions.

B. Quarterly, semi-annual, lump-sum, and other methods of payment:

(i) In general - Pursuant to Section 108(b) of the Indian Self-Determination and Education Assistance Act, and notwithstanding any other provision of law, for each fiscal year covered by this Contract, the Secretary shall make available to the Contractor the funds specified for the fiscal year under the annual funding agreement incorporated by reference pursuant to subsection (F)(2) by paying to the Contractor, on a quarterly basis, one-quarter of the total amount provided for in the annual funding agreement for that fiscal year, in a lump-sum payment or as semi-annual payments, or any other method of payment authorized by law, in accordance with such method as may be requested by the Contractor and specified in the annual funding agreement; and

(ii) Method of quarterly payment - If quarterly payments are specified in the annual funding agreement incorporated by reference pursuant to subsection (F)(2), each quarterly payment made pursuant to clause (i) shall be made on the first day of each quarter of the fiscal

year, except that in any case in which the Contract year coincides with the Federal fiscal year, payment for the first quarter shall be made not later than the date that is 10 calendar days after the date on which the Office of Management and Budget apportions the appropriations for the fiscal year for the programs, services, functions and activities subject to this Contract; and

(iii) Applicability - Chapter 39 of Title 31, United States Code, shall apply to the payment of funds due under this Contract and the annual funding agreement referred to in clause (i).

**7. Records and Monitoring**

A. In general - Except for previously provided copies of tribal records that the Secretary demonstrates are clearly required to be maintained as part of the recordkeeping system of the Department of the Interior or the Department of Health and Human Services (or both), records of the Contractor shall not be considered Federal records for purposes of Chapter 5 of Title 5, United States Code.

B. Recordkeeping System - The Contractor shall maintain a recordkeeping system and, upon reasonable advance request, provide reasonable access to such records to the Secretary.

C. Responsibilities of Contractor - The Contractor shall be responsible for managing the day-to-day operations conducted under this Contract and for monitoring activities conducted under this Contract to ensure compliance with the

contract and applicable Federal requirements. With respect to the monitoring activities of the Secretary, the routine monitoring visits shall be limited to not more than one performance monitoring visit for this Contract by the head of each operating division, departmental bureau, or departmental agency, or duly authorized representative of such head unless:

(i) the Contractor agrees to one or more additional visits; or

(ii) the appropriate official determines that there is reasonable cause to believe that grounds for reassumption of the Contract, suspension of Contract payments, or other serious Contract performance deficiency may exist.

No additional visit referred to in clause (ii) shall be made until such time as reasonable advance notice that includes a description of the nature of the problem that requires the additional visit has been given to the Contractor.

**8. Property**

A. In general - As provided in Section 105(f) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450j(f)), at the request of the Contractor, the Secretary may make available, or transfer to the Contractor, all reasonably divisible real property, facilities, equipment, and personal property that the Secretary has used to provide or administer the programs, services, functions, and activities covered by this Contract. A mutually agreed upon list specifying the property, facilities, and equipment so furnished shall also be prepared by the Secretary,

with the concurrence of the Contractor, and periodically revised by the Secretary, with the concurrence of the Contractor.

B. Records - The Contractor shall maintain a record of all property referred to in subparagraph (A) or other property acquired by the Contractor under Section 105(f)(2)(A) of such Act for purposes of replacement.

C. Joint Use Agreements - Upon the request of the Contractor, the Secretary and the Contractor shall enter into a separate joint use agreement to address the shared use by the parties of real or personal property that is not reasonably divisible.

D. Acquisition of Property - The Contractor is granted the authority to acquire such excess property as the Contractor may determine to be appropriate in the judgment of the Contractor to support the programs, services, functions, and activities operated pursuant to this Contract.

E. Confiscated or Excess Property - The Secretary shall assist the Contractor in obtaining such confiscated or excess property as may become available to tribes, tribal organizations, or local governments.

F. Screener Identification Card - A screener identification card (General Services Administration form numbered 2946) shall be issued to the Contractor not later than the effective date of this Contract. The designated official shall, upon request, assist the Contractor in securing the use of the card.

G. Capital Equipment - The Contractor shall determine the capital equipment, leases, rentals, property, or services the

Contractor requires to perform the obligations of the Contractor under this subsection, and shall acquire and maintain records of such capital equipment, property rentals, leases, property, or services through applicable procurement procedures of the Contractor.

**9. Availability of Funds**

Notwithstanding any other provision of law, any funds provided under this contract.

A. shall remain available until expended; and

B. with respect to such funds, no further:

(i) approval by the Secretary, or

(ii) justifying documentation from the Contractor, shall be required prior to the expenditure of such funds.

**10. Transportation**

Beginning on the effective date of this Contract, the Secretary shall authorize the Contractor to obtain interagency motor pool vehicles and related services for performance of any activities carried out under this Contract.

**11. Federal program guidelines, manuals, or policy directives**

Except as specifically provided in the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450, et seq.) the Contractor is not required to abide by program guidelines, manuals, or policy directives of the Secretary, unless otherwise agreed to by the Contractor and the Secretary, or otherwise required by law.

**12. Disputes**

A. Third-Party Mediation Defined - For the purposes of this Contract, the term "third-party mediation" means a form of mediation whereby the Secretary and the Contractor nominate a third party who is not employed by or significantly involved with the Secretary of the Interior, the Secretary of Health and Human Services, or the Contractor, to serve as third-party mediator to mediate disputes under this Contract.

B. Alternative Procedures - In addition to, or as an alternative to, remedies and procedures prescribed by Section 110 of the Indian-Self-Determination and Education Assistance Act (25 U.S.C. 450m-1), the parties to this Contract may jointly:

(i) submit disputes under this Contract to third-party mediation; and

(ii) submit the dispute to the adjudicatory body of the Contractor, including the tribal court of the Contractor; and

(iii) submit the dispute to mediation processes provided for under the laws, policies, or procedures of the Contractor; or

(iv) use the administrative dispute resolution process authorized in subchapter IV of Chapter 5, Title 5, United States Code.

C. Effect of Decisions - The Secretary shall be bound by decisions made pursuant to the procedures set forth in subparagraph (B), except that the Secretary shall not be bound by any decision that significantly conflicts with the interests of

Indians or the United States.

**13. Administrative Procedures of Contractor**

Pursuant to the Indian Civil Rights Act of 1968 (25 U.S.C. 1301, et seq.), the laws policies, and procedures of the Contractor shall provide for administrative due process (or the equivalent of administrative due process) with respect to programs, services, functions, and activities that are provided by the Contractor pursuant to this Contract.

**14. Successor Annual Funding Agreement**

A. In general - Negotiations for a successor annual funding agreement, provided for in subsection (F)(2), shall begin not later than 120 days prior to the conclusion of the preceding annual funding agreement. Except as provided in Section 105(c)(2) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450(c)(2)), the funding for each successor annual funding agreement shall only be reduced pursuant to Section 106(b) of such Act (25 U.S.C. 450j-1(b)).

B. Information - The Secretary shall prepare and supply relevant information, and promptly comply with any request by the Contractor for information that the Contractor reasonably needs to determine the amount of funds that may be available for a successor annual funding agreement, as provided for in subsection (F)(2) of this Contract.

**15. Contract Requirements, Approval by Secretary**

A. In general - Except as provided in subparagraph (B), for the term of the contract Section 2103 of the Revised Statutes (25 U.S.C. 81) and Section 16 of the Act of June 18, 1934 (48 Stat.

937, Chapter 576; 25 U.S.C. 476) shall not apply to any contract entered into in connection with this Contract.

B. Requirements - Each Contract entered into by the Contractor with a third party in connection with performing the obligations of the Contractor under this Contract shall

(i) be in writing;

(ii) identify the interested parties, the authorities of such parties, and purpose of the Contract;

(iii) state the work to be performed under the Contract; and

(iv) state the process for making any claim, the payments to be made, and the terms of the Contract, which shall be fixed.

**C. Obligation of the Contractor**

**1. Contract Performance**

Except as provided in subsection (D)(2), the Contractor shall perform the programs, services, functions, and activities as provided in the annual funding agreement under subsection (F)(2) of this Contract.

**2. Amount of Funds**

The total amount of funds to be paid under this Contract pursuant to Section 106(a) shall be determined in an annual funding agreement entered into between the Secretary and the Contractor, which shall be incorporated into this Contract.

**3. Contracted Programs**

Subject to the availability of appropriated funds, the

Contractor shall administer the programs, services, functions, and activities identified in this Contract and funded through the annual funding agreements under subsection (F)(2).

**4. Trust Services for Individual Indians**

A. In general - To the extent that the annual funding agreement provides funding for the delivery of trust services to individual Indians that have been provided by the Secretary, the Contractor shall maintain at least the same level of service as the Secretary provided for such individual Indians, subject to the availability of appropriated funds for such services.

B. Trust Services to Individual Indians - For the purposes of this paragraph only, the term "trust services for individual Indians" means only those services that pertain to land or financial management connected to individually held allotments.

**5. Fair and Uniform Services**

The Contractor shall provide services under this Contract in a fair and uniform manner and shall provide access to an administrative or judicial body empowered to adjudicate or otherwise resolve complaints, claims, and grievances brought by program beneficiaries against the Contractor arising out of the performance of the Contract.

**D. Obligation of the United States**

**1. Trust Responsibility**

A. In general - The United States reaffirms the trust responsibility of the United States to the Navajo Nation to protect and conserve the trust resources of the Navajo Nation and the trust resources of individual Indians.

B. Construction of Contract - Nothing in this Contract may be construed to terminate, waive, modify, or reduce the trust responsibility of the United States to the tribe(s) or individual Indians. The Secretary shall act in good faith in upholding such trust responsibility.

**2. Good Faith**

To the extent that health programs are included in this Contract, and within available funds, the Secretary shall act in good faith in cooperating with the Contractor to achieve the goals set forth in the Indian Health Care Improvement Act (25 U.S.C. 1601, et seq.).

**3. Programs Retained**

As specified in the annual funding agreement, the United States hereby retains the programs, services, functions, and activities with respect to the tribe(s) that are not specifically assumed by the Contractor in the annual funding agreement under subsection (F)(2).

**E. Other Provisions**

**1. Designated Officials**

Not later than the effective date of this Contract, the United States shall provide to the Contractor, and the Contractor shall provide to the United States, a written designation of a senior official to serve as a representative for notices, proposed amendments to the Contract, and other purposes for this Contract.

**2. Contract Modifications or Amendment**

A. In general ~~Except as provided~~ in subparagraph (B), no modification to this Contract shall take effect unless such

modification is made in the form of a written amendment to the Contract, and the Contractor and the Secretary provide written consent for the modification.

B. Exception - The addition of supplemental funds for programs, functions, and activities (or portions thereof) already included in the annual funding agreement under subsection (F)(2), and the reduction of funds pursuant to Section 106(b)(2), shall not be subject to subparagraph (A).

**3. Officials Not to Benefit**

No Member of Congress, or resident commissioner, shall be admitted to any share or part of any contract executed pursuant to this Contract, or to any benefit that may arise from such contract. This paragraph may not be construed to apply to any contract with a third party entered into under this Contract if such contract is made with a corporation for the general benefit of the corporation.

**4. Covenant Against Contingent Fees**

The parties warrant that no person or selling agency has been employed or retained to solicit or secure any contract executed pursuant to this Contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business.

**F. Attachments**

**1. Approval of Contract**

Unless previously furnished to the Secretary, the resolution of the Intergovernmental Relations Committee of the

Navajo Nation Council authorizing the contracting of the programs, services, functions, and activities identified in this Contract is attached to this Contract as attachment 1.

**2. Annual Funding Agreement**

A. In general - The annual funding agreement under this Contract shall only contain:

(i) terms that identify the programs, services, functions, and activities to be performed or administered, the general budget category assigned, the funds to be provided, and the time and method of payment; and

(ii) such other provision, including a brief description of the programs, services, functions, and activities to be performed (including those supported by financial resources other than those provided by the Secretary), to which the parties agreed.

B. Incorporation by Reference - The annual funding agreement is hereby incorporated in its entirety in this Contract and attached to this Contract as attachment 2.

Kelsey A. Begay,
**President, THE NAVAJO NATION**

Secretary, Department of the Interior, or designee
**UNITED STATES OF AMERICA**

Awarding Official
BIA-2001-L1-000001
JAN 17 2002

**ANNUAL FUNDING AGREEMENT**

**BETWEEN**

**THE NAVAJO NATION**

**AND**

**THE UNITED STATES OF AMERICA**
**SECRETARY OF**
**THE DEPARTMENT OF THE INTERIOR**

This Annual Funding Agreement ("AFA") is entered into between the Navajo Nation and the United States Department of the Interior ("DOI"), pursuant to the agreement between the Navajo Nation and DOI for **Law Enforcement Patrol**, pursuant to Title I of the Indian Self-Determination and Education Assistance Act, as amended, (hereinafter referred to as the "Contract").

1. **STATEMENT OF WORK** The Navajo Nation shall administer the programs identified in the Statement of Work, attached hereto and incorporated by reference herein as Attachment A, during the term of this AFA in accordance with the provisions of the Contract and this AFA and any attachments hereto.

2. **PROGRAM FUNDING** Subject to the availability of funding, DOI shall provide the direct program funding amount of **$14,421,563.28**, for the term of this AFA, exclusive of any Central Office or Area shares, direct contract support, startup costs and indirect costs, in one lump sum payment to the Navajo Nation in accordance with Article B, Section 6 of the Contract. Full payment shall be made by wire transfer within 10 days of execution of this AFA. Accounting and budget data are attached hereto and

incorporated by reference herein as Attachment B.

A. In addition to the amount in Paragraph 2 of this AFA, the Navajo Nation is contributing an estimated **$5,206,657.00** and receives an estimate **$1,996,192.00** from other funding sources for the operations of this contracted program in furtherance of the Statement of work.

3. **TRIBAL SHARES** In addition to the amount referred to in Paragraph 2 of this AFA, DOI shall pay a sum to be negotiated representing Central Office and Area shares associated with this AFA. It does not reflect Central Office or Area Shares which the Navajo Nation has requested or included in other 2002 P.L. 93-638 contracts.

A. In addition to the amount in Paragraph 2 the Navajo Nation has identified additional contract support needs to be negotiated. This amount and any other additional contract support amount needed are subject to negotiation between the Navajo Nation and DOI. The Navajo Nation shall be entitled to contract support cost funds to the full extent specified in Section 106(a)(2) of P.L. 93-638, as amended, and related provisions. The Navajo Nation's request for contract support costs for new and expanded programs is subject to the availability of appropriations for that purpose.

B. It is understood by the parties that additional contract support funds may not be initially available to the Navajo Nation. However, upon becoming available by Congressional appropriation for this purpose or through the identification of

appropriate budget savings from Contract Support Cost line items, the Navajo Nation shall participate in the distribution of those shortfall funds. If, during the term of this AFA, it is not possible to pay all contract support amounts, DOI shall make a good faith effort, subject to applicable law, to identify funds or to obtain an appropriation to address this shortfall. In any event, if there is a contract support shortfall, DOI will report all shortfalls to Congress, and simultaneously provide the Navajo Nation with such report.

4. **INDIRECT COSTS** In addition to the amount identified in Paragraph 2 of this AFA, the Navajo Nation shall receive indirect costs applicable to the period covered by this AFA as determined pursuant to the applicable Indirect Cost Agreement, negotiated between the Navajo Nation and its cognizant agent. In the event that sufficient funds are unavailable to fully pay indirect costs associated with this AFA, DOI will pay any shortfall in indirect costs when, and to the extent that, such contract support costs shortfall funds are appropriated by Congress. In no event does the Navajo Nation waive its right to recover 100% of the indirect costs associated with this AFA.

5. **CONGRESSIONAL APPROPRIATION**

A. All funding under this AFA is subject to Congressional appropriation. Funding under this AFA may be reduced only according to the provisions of Section 106(b) of P.L. 93-638, as amended.

B. In the event that funding of this AFA is reduced because of Congressional action, the Navajo Nation retains the option to renegotiate the Statement of Work with DOI contained in Attachment A of this AFA, consistent with Section 106 of P.L. 93-638, as amended.

C. To the extent that any shortfalls exist in funding, contract support or otherwise, claimed by to the Navajo Nation, DOI shall report such shortfalls to Congress, consistent with Section 106 of P.L. 93-638, as amended.

D. Nothing in this AFA shall be deemed to be a waiver of the Navajo Nation's right to obtain 100% of its funding, contract support or otherwise as determined under Section 106.

6. **OFFICE SPACE** The Navajo Nation has identified a need for office space. Whenever feasible, DOI shall make such office space available to the Navajo Nation, together with such maintenance services as may be necessary for that office space. When not available and tribal buildings are used, DOI will enter into a lease pursuant to Section 105(f)(1) of the Act and Subpart H of the Regulations.

7. **ACCOUNTING SYSTEM** The Navajo Nation shall maintain a fiscal accounting system which will provide accurate, current and complete information with respect to this AFA, consistent with federal statutory and regulatory requirements.

8. **PERSONNEL** Unless otherwise stated elsewhere in this AFA or through an approved and executed Intergovernmental Personnel Agreement, all personnel employed by the Nation to carry out the

Contract, AFA, Statements of Work and any other attachments hereto shall meet the qualifications set forth by the Navajo Nation Department of Personnel Management. Further, all personnel employed by the Navajo Nation under this AFA will adhere to applicable Navajo Nation personnel policies and procedures, including sick leave, holidays, pay schedules and pay tables.

9. **PRE-AWARD COSTS** Pre-award costs with respect to the performance of the Contract and this AFA may be paid with funding under this AFA to the extent (a) that such costs are otherwise reasonable, allowable and allocable to performance of the attached Statement of Work, and (b) that the Nation informed DOI of costs consistent with Section 106(a)(6) P.L. 93-638, if this AFA covers the initial year of a contract.

10. **NAVAJO PREFERENCE** Consistent with Section 7(c) of P.L. 93-638, as amended, the Navajo Business Preference Law (5 N.N.C. Section 201, et seq.) and the Navajo Preference in Employment Act (15 N.N.C. Section 601, et seq.) shall apply to the administration of the Contract and this AFA.

11. **NOTICES** The following individuals are designated by the respective parties to receive notices and other information with respect to this AFA:

A. **For the Navajo Nation:**

Contracting Officer
Navajo Nation Office of Contracts and Grants
P.O. Box 646
Window Rock, Arizona, 86515

B. **For DOI:**

Awarding Official
BIA-Navajo Regional Office
P.O. Box 1060
Gallup, New Mexico 87305

12. **APPLICABLE LAW** In the performance of the Contract and this AFA, the Navajo Nation agrees to comply with all applicable federal and Navajo Nation regulations and executive orders. The parties shall renegotiate and modify the language of this AFA to conform with any applicable federal and Navajo Nation laws which are passed after the effective date of this agreement. It is the responsibility of DOI to inform the Navajo Nation of all federal laws, regulations and executive orders it believes apply to this AFA within 30 days of execution.

13. **REPORTS** During the course of this AFA, the Navajo Nation shall submit an annual program report and an annual financial report within 120 days of the close of this AFA.

14. **FEDERAL TORT CLAIMS ACT** For purposes of Federal Tort Claims Act coverage, the Navajo Nation and its employees are deemed to be employees of the Federal government while performing work under this contract. This status is not changed by the source of the funds used by the Navajo Nation to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the Navajo Nation.

15. **SEVERABILITY** The provisions of this AFA are severable. If any provision of this AFA is determined to be

invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the remainder of the AFA.

16. **SOVEREIGN IMMUNITY** Nothing in this AFA shall be construed as waiving the sovereign immunity of the Navajo Nation. The parties agree that nothing in this AFA shall waive any rights of the parties under applicable federal law.

17. **EFFECTIVE DATES** This AFA shall be effective as of **January 01, 2002** and remain in effect through **December 31, 2002**, or until a successor AFA is negotiated and becomes effective.

KAB [signature] 12-28-01

Kelsey A. Begaye, President
**THE NAVAJO NATION**
Date

[signature]

Secretary, Department of the Interior, or designee
**UNITED STATES OF AMERICA**
Date

Awarding Official
BIA-2001-L1-C0001
JAN 17 2002



BOYE 2619

**LAW ENFORCEMENT PATROL P.L.93-638 CONTRACT**

**STATEMENT OF WORK**

101. **The Contractor shall perform the following Bureau program: LAW ENFORCEMENT SERVICES.** Subject to the terms of the contract, the Annual Funding Agreement (AFA), and availability of funds, the Contractor shall perform police law enforcement activities as noted in the Indian Law Enforcement Reform Act, 25 U.S.C. § 2801, et seq.. within Navajo Indian Country, as defined in 18 U.S.C. 1151, excluding the Moencopi Administrative Unit, ("Service Area"). In addition, the Contractor will provide one law enforcement officer each to the communities of Canoncito and Alamo (New Mexico) and New Lands in Apache County (Arizona). These services shall include:

A. Maintaining law enforcement and crime prevention services as deemed necessary by the Contractor within the service area.

B. Enforcing applicable Navajo Nation, federal and state laws and ordinances.

C. Protecting private, public and government property within the service area.

D. Providing community plans, prevention programs (i.e., Drug Awareness Resistance Education (DARE), Gang Resistance Education and Training (GREAT), and the Neighborhood Watch Program).

E. Creating and implementing specialized programs, task forces and teams for particular situations, including internal affairs investigations.

F. Responding to citizen's complaints or other request for law enforcement services within the service area.

G. Providing patrol services on and off roadways and in Indian communities within the service area.

H. Providing other services, such as serving criminal warrants, summons and subpoenas. Civil summons and other Navajo Nation Court orders may be served, provided the Contractor is properly reimbursed for all travel related expenses and provided these services do not significantly interfere with the Contractor's ability to carry out its daily responsibilities and duties to the general public.

I. Writing clear, concise and comprehensive case reports, preparing cases for and testifying in court.

J. Familiarizing law enforcement personnel with all applicable provisions of the Navajo Nation Codes, federal and state laws, this statement of work, and other necessary references.

K. Conducting search and rescue operations for missing persons, runaway children, drowning victims, and for other victims of natural or manmade emergencies.

L. Completing investigations of all unattended deaths that do not involve foul play.

This contract does not include fire and rescue service, highway safety, environmental and resource enforcement provided by other Navajo Nation and federal programs.

**102. Personnel.** The Contractor shall perform the contracted law enforcement program in accordance with the qualifications, training, code of conduct, inspection and evaluation, and other standards applicable to Bureau law enforcement personnel, or the equivalent. In addition to Navajo Nation personnel employment standards, the Contractor shall require the following for each law enforcement position:

A. Employee candidates must present evidence of ability to discharge the duties of the position. Commissioned law enforcement officer candidates, in addition to other qualifications, shall demonstrate the traits and characteristics important to succeed in police work. Among these are: alertness, ability to work in stress situations, ability in oral expression, tact, integrity, capacity for effective public relations, practical intelligence and good judgment. Candidates must be honest and trustworthy; have integrity, sound judgment, temperate habits; and have a satisfactory work record. Any applicant who does not have these qualities shall not be appointed to a commissioned law enforcement position.

B. Prior to employment of any commissioned law enforcement officer, a full field background investigation shall be completed by the Contractor. Such investigation shall include, but not be limited to Navajo Nation, other tribal, local, state, and federal criminal history checks. Background checks/clearances, through fingerprint charts (FD-258) must be conducted through the Assistant Director, Identification Division, Federal Bureau of Investigation, Washington, D.C. 20537. Checks/Clearance through the National Crime Information Center (NCIC), state criminal history centers and local police and tribal court records shall also be conducted. All background check/clearances shall be recorded, documented and kept on file for each commissioned officer at the Contractor's Public Safety headquarters. Careful review and documentation shall be made on each officers' family data, education, employment, medical and military history, previous residences, organizations, and

affiliations, personal references, credit record and police record, including drivers license history and status. Background reviews shall be conducted through both a written questionnaire to be completed by the employee applicant and a personal interview with present and past supervisors and associates who have personal knowledge of the applicant's background and character. The Contractor shall update background investigation every five (5) years from the date of last background investigation on all commissioned officers.

C. Any person who has been convicted of a felony is not eligible for employment. Also any person who has been convicted of a misdemeanor, excluding minor traffic violations, within a period of three (3) years immediately preceding his/her appointment, or who has been convicted or plead guilty to a misdemeanor or domestic violence, shall not be eligible for employment as a commissioned law enforcement officer.

D. Persons appointed to commissioned law enforcement positions shall be at least 21 years of age. This requirement may be waived for United States armed services' veterans discharged under honorable conditions.

E. Applicants and commissioned law enforcement officer positions must be physically able to perform efficiently the duties of the positions, applicants shall have binocular vision correctable to 20/20 (Snellen) in each eye; uncorrected vision shall be no more than 20/100 in each eye. Near vision corrected or uncorrected shall be sufficient to read Yeager Type 2 at 14 inches. All law enforcement officers must be able to distinguish basic color. All law enforcement officer position applicants shall have the ability to hear the conversational voice, without the use of a hearing aid. Persons with an amputation of arm, hand, leg or foot shall not be employed. Applicants shall possess emotional and mental stability. Any physical condition which would cause the employee to be a hazard to himself/herself or to others shall be disqualified for appointment/employment or continued employment or appointment as a law enforcement officer. Fitness for duty examination shall be ordered for any employee in question. In addition, an annual medical examination shall be completed for each commissioned law enforcement officer to ensure fitness for duty. Medical certificates shall be placed in each individual's official personnel folder.

F. Employee candidates must complete and successfully pass a psychological evaluation conducted by a licensed psychologist prior to employment. Any applicant who does not meet this requirement shall not be hired in a law enforcement officer position. The Bureau of Indian Affairs will cooperate with the Contractor in obtaining such services through the Indian Health Service. In the event that these services cannot be

obtained through the Indian Health Services, upon written request from the Contractor, the Bureau of Indian of Affairs shall assist in developing and submitting a request for contract support funds to cover these costs. In the event that the Bureau develops a comprehensive mechanism to provide these services throughout Indian Country, the Contractor will have the opportunity to participate.

G. The Contractor, through its internal affairs unit, shall be responsible for promptly conducting administrative investigations in response to allegation of employee misconduct. Administrative investigations shall be conducted professionally, impartially and thoroughly and reports shall be timely, objective and accurate. All administrative investigations conducted by the internal affairs unit shall be documented and maintained in a confidential manner. Any subsequent disciplinary action shall be processed pursuant to applicable Navajo Nation personnel policies and procedures, as amended, and other policies and procedures applicable to the Contractor.

**103 Qualifications and Training.** The Contractor shall assure that each law enforcement officer is qualified, depending upon position classification in the field of law enforcement and has a working knowledge of arrest procedures, rules of evidence, crime scene search, preservation of evidence, report writing, testifying in court and related law enforcement functions.

A. Each law enforcement officer must pass an approved firearms qualification course every six (6) months to be qualified to carry a firearm. Whenever an officer's firearms qualification lapses, all weapons issued to the law enforcement officer shall be returned. Any of the following firearms qualification courses may be used to qualify law enforcement officers in the use of a firearm:

1. The National Rifle Association National Police Course.

2. The National Rifle Association 25-Yard Course.

3. The National Rifle Association Practical Pistol Course.

4. The Federal Bureau of Investigation Practical Pistol Course.

5. All state approved firearms courses.

6. Federal Law Enforcement Training Center Courses.

B. Newly-employed law enforcement officers shall successfully complete, within their first year of service, the approved Basic Police Recruit Training Course conducted at the Indian Police Academy and approved by the Assistant Secretary of Indian Affairs or a comparable basic police recruit training

course approved by the Assistant Secretary of Indian Affairs. An officer who fails to complete the training required by this paragraph shall be discharged or transferred to a position not involving law enforcement duties. Transfer may result in demotion. The Contractor may utilize law enforcement officer positions for newly employed law enforcement officers, classified as police recruits by the Contractor, until such time that they have successfully completed the Basic Police Recruit training required for peace officer certification.

C. Prior to, or within one year after, promotion or appointment to a supervisory law enforcement position, an employee shall complete the approved Supervisory Law Enforcement Officer Training Course conducted at the Indian Police Academy or a similar course substantially meeting or exceeding the level of training provided by the Indian Police Academy and approved by the Assistant Secretary of Indian Affairs. A law enforcement officer who is serving in a supervisory position and fails to complete the training required in this paragraph shall be demoted.

D. Each law enforcement officer shall receive a minimum of forty (40) hours of local in-service training annually to meet training needs determined by Contractor and to keep abreast with developments in the field of law enforcement.

E. The Contractor may establish and maintain a training academy for the training of its personnel. The curriculum used for training, in compliance with the Bureau's mandated requirements shall be submitted to the (COR) for approval and certification prior to the implementation of the training. The COR, within thirty (30) days of receipt of the curriculum, shall respond to the Contractor its approval or disapproval of the curriculum. If the COR fails to respond within the thirty (30) days, it shall be deemed by the Contractor that the curriculum has been approved. Any disapproval of curriculum by the COR shall explain the reason for disapproval.

F. To the extent of available resources, the Bureau shall provide additional necessary training, when requested in writing by the Contractor to enable the Contractor to carry out the terms and standards of the Contract. However, in the event that the Bureau cannot provide training needed by the Contractor to carry out the terms and conditions of this Contract, such failure will not adversely affect this Contract.

G. CERTIFICATES OF SATISFACTORY COMPLETION OF EACH OF THE ABOVE TRAINING REQUIREMENTS SHALL BE MAINTAINED IN EACH INDIVIDUAL OFFICER'S PERSONNEL FOLDER.

**104. Certification as Federal Law Enforcement Officers.** The Bureau shall commission any law enforcement officer meeting the personnel, qualifications and training provisions of this contract as a Federal Law Enforcement Officer.

**105. Uniforms and Equipment.**

A. Uniforms, when worn, shall positively identify the wearer as a law enforcement officer badge, name plate and tribal patch shall be visible at all times. Uniforms of all law enforcement personnel shall be plainly distinguishable from the uniforms of other non-law enforcement personnel. Each officer shall be issued a standard identification card bearing a photograph of the officer.

B. All law enforcement officers shall be equipped with a two-way radio, emergency lights (Code 3), sirens, safety screens (cage), fire extinguisher, flashlight, emergency flares, blankets, a first aid kit, a shovel and a rappelling rope, at least 100 feet in length. Contractor shall maintain all vehicles in good working condition.

C. The Contractor shall provide all uniformed law enforcement officers with the following items and assure they are in good working condition:

1. .40 caliber, 9mm or other firearms duly authorized by the Contractor.

2. Belt holster, handcuffs, mace and pepper mace (including case), cartridge holder, and handcuffs with keys.

3. Minimum of two complete uniforms, including hat/helmet, hat shield and breast badge, baton, bullet-proof vest, foul weather gear, and inclement weather outer wear.

4. Ammunition shall be expended and replaced annually.

5. Baton.

D. The Bureau shall provide necessary equipment, when requested in writing by the Contractor and subject to availability, to the Contractor to efficiently and effectively carry out the terms and standards of the Contract.

E. All Internal Affairs investigators shall be issued a standard identification card bearing a photograph of the investigator. The Internal Affairs investigator shall wear clothing in accordance with the departmental uniform standard.

**106. Salaries.** Salaries paid law enforcement officers by the Contractor under this Contract shall be equal to or greater than the salaries paid law enforcement officers with similar responsibilities employed directly by the Bureau of Indian Affairs.

1. Dispatcher logs;

2. Officer logs;

3. Case reports, including arrest, investigation and incident records;

4. Juvenile records;

5. Personal arrest and disposition records;

6. Evidence records;

7. Booking logs;

8. Payroll records of all employees;

9. Reports of all traffic accidents investigated;

10. Individual background investigation records;

11. Training records and certificates of completion;

12. Codes of Conduct;

13. Jailer logs (Inmate checks);

14. Government-furnished property inventory list;

15. Employee performance appraisal files;

16. Annual physical examination records;

17. Firearms certification records;

18. Criminal case logs;

19. Firearm inventory list; and

20. Except in firearms training, each time a firearm is used for law enforcement purposes, a report shall be filed with the superior of the officer who used the weapon. Whenever use of a weapon results in serious injury or death of any person, the officer who fired the weapon shall be placed on administrative leave, or be assigned to strictly administrative duties pending a thorough investigation of all circumstances surrounding the incident.

C. Standardize Offense/Incident Report including Supplement I - Narrative Continuation; Supplement II - Multiple Arrests: and Supplement In - Non Enforcement Services). The Contractor shall provide this data through agreement with the Bureau of Indian Affairs, Navajo ~~Area~~ Regional Office, to the Bureau of

Indian Affairs, Automated Data Systems, Branch of Indian Services, Post Office Box 968, Albuquerque, New Mexico 87103.

D. Civil Rights Violations Reports. In addition to prescribed Navajo Nation reporting guidelines, when a Contract law enforcement officer receives an oral or written allegation that a law enforcement officer employed under this Contract has violated the civil rights of any person, the receiving officer shall prepare a written report of the allegation and transmit it through the chain of command to the Navajo Department of Law Enforcement Chief of Police within seven (7) days of receipt of the allegation. No later than seven (7) days after being notified of the allegation, the Navajo Department of Law Enforcement Chief of Police shall submit written notification to the Navajo Department of Criminal Investigations Director the Bureau of Indian Affairs, the Navajo ~~Area~~ Regional Office, the Federal Bureau of Investigation and the President of the Navajo Nation. If the Navajo Department of Law Enforcement Chief of Police, the District Captain or high ranking official is accused of a civil rights violation, the report of the allegation shall be transmitted directly to the Navajo Department of Criminal Investigations Director, the President of the Navajo Nation, the Federal Bureau of Investigation and the Navajo ~~Area~~ Regional Office.

**108. No Assignment as Security.** No Police Officer shall be assigned to serve as bodyguards for the President, Vice-President or other politically elected or appointed official of the Navajo Nation government. This does not prohibit any Police Officer from conducting an investigation of criminal offenses or threats of criminal offenses against the President, Vice-President or other politically elected or appointed official of the Navajo Nation.