United States Department of the Interior
Bureau of Indian Affairs
Navajo Regional Office
P.O. Box 1060
Gallup, New Mexico 87305-1060

IN REPLY REFER TO:

April 11, 2006

Honorable Joe Shirley, Jr.
President, Navajo Nation
P.O. Box 9000
Window Rock, Arizona 86515
Attn: Cordell Shortey, Contracting Officer

Dear President Shirley,

Transmitted herewith is the Navajo Nation's Public Law 93-638, as amended, contract Modifications for the following contracts:

1. Modification No. Two (2) for the Law Enforcement Program – Patrol, under Contract Number, **CTN00T780A2.**

Through this modification the contract is increased by **$1,212,229.00**, which represents the final FY 2006 direct base amount distribution as appropriated by Congress which includes the 1.0% "across the board" rescission; and a distribution is provided as a base increase to be used for "high priority law enforcement needs" for the Navajo Nation.

2. Modification No. Three (3) for the Law Enforcement Program – Criminal Investigations under Contract Number, **CTN00780A3.**

Through this modification the contract is increased by **$598,964.00**, which represents the final FY 2006 direct base amount distribution as appropriated by Congress and which includes the 1.0% "across the board" rescission; and a distribution is provided for pay costs increase as provided by Congress for FY 2006.

**You are requested to provide a revised budget for each contract listed above** and which reflects the increase in budget for FY 2006. The revised budget should be submitted with the signed returned modifications.

Please review the attached Standard Form 30, Modification of Contract and should you be in agreement with such terms and conditions, please sign and date all three copies at Block 15B and 15C, for each contract. **Upon signature, please return all three original copies to this office. Once the Contract is signed by the Awarding Official, a fully executed original copy will be provided to your**

**office.** In addition, the funds awarded herein, will be forwarded to the BIA Finance office for obligation and will be made available to the Nation for immediate drawdown.

If you have questions, please feel free to contact me at (505) 863-8311.

Sincerely,

Awarding Official

Enclosure

cc: Sampson Cowboy, Director, Public Safety, Navajo Nation

N303 Reading File,
Chrono
SAP:04/11/06

AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE: CTN00T780A3 | | PAGE OF PAGES | |
| 2. AMENDMENT/MODIFICAITON NO.: Modification No. Three (3) | 3. EFFECTIVE DATE: April 11, 2006 | 4. REQUISITION/PURCHASE REQ. NO.: 6M0L300128 Amend. #1 & #2 | 5. PROJECT NO. (If applicble): Law Enforcement - CI |
| 6. ISSUED BY / CODE: U.S. Department of the Interior, Bureau of Indian Affairs, Navajo Regional Office, Gallup, New Mexico 87305-1060 | | 7. ADMINISTERED BY (If other than Item 6) / CODE: BIA - Navajo Regional Office, Branch of Self-Determination, P.O. Box 1060, Gallup, New Mexico 87305-1060 | |

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)
The Navajo Nation
Office of Contracts and Grants
P.O. Box 9000
Window Rock, Arizona 86515

Criminal Investigations

CODE | FACILITY CODE

(X) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO.
CTN00T780A3

10B. DATED (SEE ITEM 11)
April 15, 2005

BIA/NAVAJO REGIONAL OFFICE
JUN 15 2006
BRANCH OF SELF-DETERMINATION
GALLUP, NEW MEXICO

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a)By completing items 8 and 15, and returning _______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted;
or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPIRATION DATA (If required)
See attached Page 1a, Financial Information for Obligation.

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority) Public Law 93-638, as amended. |

ACCEPTED
JUN 26 2006
Ellen Kinsel
Navajo Accounting Operations

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return ALL copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
Contract No. CTN00T780A3, Law Enforcement Program - Criminal Investigations is modified as follows:
1. The contract is increased by $598,964.00, which represents the final FY 2006 direct base amount distribution as appropriated by Congress which includes the 1.0% "across the board" rescission; and a distribution is provided for pay costs increase as provided by Congress for FY 2006.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | | | |
|---|---|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print): Joe Shirley, Jr., President, The Navajo Nation; Frank J. Dayish, Vice President, Navajo Nation | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print): Sharon A. Pinto, Awarding Official, Cert. No. BIA-2006-L2-000024 | |
| 15B. CONTRACTOR/OFFEROR [signature] (Signature of person authorized to sign) | 15C. DATE SIGNED: JUN 09 2006 | 16B. UNITED STATES OF AMERICA [signature] (Signature of Contracting Officer) | 16C. DATE SIGNED: 6/21/06 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

| CONTINUATION SHEET | Contract No. CTN00T780A3 | PAGE 1a |
|---|---|---|

NAME OF CONTRACTOR

THE NAVAJO NATION – Law Enforcement- Criminal Investigations

**MODIFICATION NO. THREE (3)**

***FINANCIAL INFORMATION***
***FOR OBLIGATION***

| DOCUMENT NUMBER | ACCOUNTING AND APPROPRIATION DATA | CONTRACT BALANCE BEFORE | MODIFICATION + OR - | CONTRACT BALANCE AFTER |
|---|---|---|---|---|
| CTN00T780A3 001 | KLM016/0506/37002/37730/25.2I | $3,009,775.00 | -0- | $3,009,775.00 |
| CTN00T780A3 002 | KLM016/0607/37730/25.2I | $2,745,378.00 | (+)$598,964.00 | $3,344,342.00 |
| | **TOTALS:** | **$5,755,153.00** | **(+)$598,964.00** | **$6,354,117.00** |

| CONTINUATION SHEET | Contract No. CTN00T780A3 | PAGE 1a |
|---|---|---|

NAME OF CONTRACTOR

THE NAVAJO NATION – Law Enforcement- Criminal Investigations

**MODIFICATION NO. THREE (3)**

***FINANCIAL INFORMATION FOR OBLIGATION***

| DOCUMENT NUMBER | ACCOUNTING AND APPROPRIATION DATA | CONTRACT BALANCE BEFORE | MODIFICATION + OR - | CONTRACT BALANCE AFTER |
|---|---|---|---|---|
| CTN00T780A3 001 | KLM016/0506/37002/37730/25.2I | $3,009,775.00 | -0- | $3,009,775.00 |
| CTN00T780A3 002 | KLM016/0607/37730/25.2I | $2,745,378.00 | (+)$598,964.00 | $3,344,342.00 |
| | **TOTALS:** | **$5,755,153.00** | **(+)$598,964.00** | **$6,354,117.00** |

# ANNUAL FUNDING AGREEMENT

This Annual Funding Agreement (AFA) is entered into between the Navajo Nation and the United States Department of the Interior (DOI), pursuant to the agreement between the Navajo Nation and DOI for Criminal Investigations Program, pursuant to Title I of the Indian Self-Determination and Education Assistance Act ("ISDA"), as amended, and Pub. L. 93-638, as amended (hereinafter referred to as the Contract).

## A. PROGRAM, FUNCTIONS, SERVICES AND ACTIVITIES

1. The Navajo Nation shall administer and perform those portions of the Bureau of Indian Affairs' ("BIA") Criminal Investigations Program identified in the Scope of Work, attached hereto and incorporated herein by reference as Attachment A, in accordance with its own laws and policies and the terms, provisions, and conditions of the Contract and this AFA and any attachments hereto. The program standards, including any provisions of Federal Regulations waived by the Secretary, are identified in Section b(3) of the Contract.

2. The Navajo Nation agrees that any services or assistance provided to Indian beneficiaries under the Contract and this AFA shall be provided in a fair and uniform manner subject to applicable laws and regulations.

3. The Navajo Nation shall obtain from the BIA all such funds and other resources made available for the benefit of the tribe and Indian beneficiaries for all programs to be operated and services to be delivered by the Navajo Nation through the Contract and this AFA on behalf of the DOI, except for "Trust" and executive positions of the BIA considered non-contractible under the ISDA, as amended.

4. The BIA shall transfer to the Navajo Nation all such funds and other resources available for the benefit of the Tribe and Indian beneficiaries through the Contract in the most expeditious manner authorized by law, and shall provide technical support and

assistance at the request of the Navajo Nation and as provided herein, in the most expeditious manner authorized by law.

5. The Navajo Nation shall exercise full discretion over the funds made available subject only to the provisions of the Contract, this AFA, and Federal law.

6. The Navajo Nation has identified a need for program and/or office space. DOI shall undertake reasonable efforts to make such program and/or office space available to the Navajo Nation, together with such maintenance services as may be necessary for that program and/or office space. When not available and tribal buildings are used, DOI will enter into a lease pursuant to Section 105 (f) (1) of the ISDA, as amended, and 25 CFR Part 900, Subpart H.

**B. PROGRAM FUNDING**

Subject to the availability of Congressional appropriation, DOI shall provide direct program funding for Fiscal Year 2007 in the amount of $3,344,342 exclusive of any Central Office or Regional Area shares, direct contract support, startup costs and indirect costs, in one lump sum payment to the Navajo Nation in accordance with Article B, Section 6 of the Contract. Full payment shall be made by wire transfer within ten (10) days of the date funds are made available to the BIA Awarding Official for the Contract.

DOI acknowledges that the base amounts identified above do not fully fund the contracted activities.

**C. TRIBAL SHARES**

In addition to the amount referred to in Paragraph B of this AFA, DOI shall pay a sum to be negotiated representing Central Office and Regional Area shares associated with this AFA. Such shares do not reflect Central Office or Regional Area shares which the Navajo Nation has included in other Fiscal Year 2007 Pub. L. 93-638, as amended, contracts.

D. CONTRACT SUPPORT FUNDS

The Navajo Nation shall be entitled to contract support funds to the full extent specified in Section 106 (a)(2) of the ISDA, as amended, and related provisions. It is understood by the parties that full contract support funds may not be initially available to the Navajo Nation. However, upon becoming available by Congressional appropriation or through the identification of appropriate budget savings from Contract Support Cost line items, the Navajo Nation shall participate in the distribution of those shortfall funds. If, during the term of this AFA, it is not possible to pay all contract support amounts, DOI shall make a good faith effort, subject to applicable law, to identify funds or to obtain an appropriation to address this shortfall.

1. **Direct Contract Support**

In addition to the amount in paragraphs D. 2 and 3 of this AFA, the Navajo Nation shall receive direct contract support costs pursuant to Section 106(a)(2) of the ISDA, as amended. The amount of direct contract support costs are subject to negotiation between the Navajo Nation and DOI. To the extent that DOI does not receive sufficient appropriations to fully fund the amount of direct contract support costs that would otherwise be available under Section 106(a)(2) of the ISDA, as amended, DOI shall report such shortfall to Congress pursuant to the requirements of Section 106(c)(2) of the ISDA, as amended, and simultaneously provide the Navajo Nation with such report. DOI shall pay any shortfalls in direct contract support when, and to the extent such shortfall funds are appropriated by Congress.

2. **Indirect Costs**

In addition to the amount identified in paragraphs B, C, and D(1) of this AFA, the Navajo Nation shall receive indirect costs applicable to the period covered by this AFA as determined pursuant to the applicable Indirect Cost Agreement, negotiated between the Navajo Nation and its cognizant agent. To the extent that DOI does not receive sufficient appropriations to fully fund the amount of indirect costs that would otherwise be available under Section 106(a)(2) of the ISDA, as amended, DOI shall report such shortfall to Congress pursuant to the requirements of Section 106(c)(2) of the ISDA, as amended, and simultaneously provide the Navajo Nation with such report. DOI shall pay any shortfalls in indirect costs when, and to the extent, such shortfall funds are appropriated by Congress. In

no event does the Navajo Nation waive its right to recover 100% of the indirect costs associated with this AFA.

**E. <u>PRE-AWARD COSTS</u>**

Any costs the Navajo Nation incurs with respect to the performance of the Contract and this AFA before the award date or effective date of this AFA may be paid with funding under this AFA to the extent (a) that such costs are otherwise reasonable, allowable and allocable to performance of the attached Scope of Work, and (b) that the Nation informed BIA of costs consistent with Section 106 (a) (6) of the ISDA, as amended, if this AFA covers the initial year of a contract.

**F. <u>PROGRAM BUDGET.</u>**

The budget for the services provided under this AFA reflects the agreements reached during negotiations and is attached as Attachment B, which is incorporated herein by reference.

1. The Navajo Nation shall request prior approval from the Awarding Official for budget revisions whenever:

   a. The budget revision results from changes in the scope or stated objective of the program;
   b. The revision requires additional funding;
   c. The revision causes an increase in the amount of indirect cost for the Contract, or;
   d. The revision pertains to the addition of items requiring approval of the BIA under the ISDA, as amended, or 25 CFR Part 900.

2. All other budget revisions do not require BIA approval, including prior year savings attributable to operations of the program.

**G. <u>AVAILABILITY OF FUNDS</u>**

1. All funding under this AFA is subject to the availability of Congressional appropriations. Funding under this AFA may be reduced only according to the provisions of Section 106(b) of the ISDA, as amended. No legal liability by the Federal government for

any payment may arise until funds are made available to the BIA Awarding Official for the Contract.

2. In the event that funding of this AFA is reduced because of Congressional action, the Navajo Nation retains the option to renegotiate the Scope of Work contained in Exhibit A of this AFA, consistent with section B(5) of the Contract.

3. To the extent that any shortfalls exist in funding, contract support or otherwise, owed to the Navajo Nation, the DOI and BIA shall make a good faith effort, subject to applicable law, to identify funds or to obtain an appropriation to address this shortfall. DOI will report such shortfalls to Congress, and simultaneously provide the Navajo Nation with such report.

4. Nothing in this AFA shall be deemed a waiver of any right the Navajo Nation may have.under the Act to receive 100% of its funding, contract support or otherwise, as determined under Section 106 of the ISDA, as amended.

**H. <u>APPLICABLE LAW</u>**

In the performance of the Contract and this AFA, the Navajo Nation agrees to comply with all expressly applicable Federal laws, regulations and executive orders, including the Drug-Free Workplace Act of 1988 (Pub. L. 100-689), and all applicable Navajo Nation laws, regulations and executive orders. The parties shall renegotiate and modify the language of this AFA to conform to any applicable federal and Navajo Nation laws, regulations or executive orders which are passed after the effective date of this AFA. The BIA shall inform the Navajo Nation, in writing, of all existing federal laws, regulations and executive orders it believes apply to this AFA within 30 days of execution. The BIA shall inform the Navajo Nation, in writing, of all newly enacted or amended federal laws, regulations and executive orders it believes apply to this AFA within 30 days of adoption.

## I. MANAGEMENT SYSTEMS

The Navajo Nation shall maintain management systems consistent with requirements of the ISDA, as amended, and 25 CFR Part 900. The BIA has on file the most recent versions of the following Navajo Nation management system Policies and Procedures:

i. Navajo Nation Personnel Policies Manual.
ii. Navajo Nation Employees Travel Policies and Procedures Handbook.
iii. Property Management Policy.
iv. Navajo Nation Procurement Rules and Regulations.

The Navajo Nation agrees to provide copies of the of the following management system Policies and Procedures Manuals, within 90 days of final adoption by the responsible oversight committees:

i. Recordkeeping Policies
ii. Finance and Accounting Policies

### 1. Accounting/Financial System

The Navajo Nation shall maintain a fiscal accounting system which will provide accurate, current and complete information with respect to the Contract and this AFA in such a manner as to facilitate audit and review of the financial records consistent with federal statutory and regulatory requirements.

The Navajo Nation shall provide certification by a licensed accountant that the bookkeeping and accounting procedures that the tribal organization presently uses meets the standards of 25 CFR Part 900, Subpart F. The Navajo Nation has submitted the certification and it is on file at the BIA, Navajo Regional Office.

### 2. Personnel Management

Unless otherwise stated in this AFA or through an approved and executed Intergovernmental Personnel Agreement, all personnel employed by the Navajo Nation to carry out the Contract and this AFA shall meet the qualifications set forth by the Navajo Nation Department of Personnel Management and all personnel employed by the Navajo Nation under this AFA will adhere to applicable Navajo Nation personnel policies and procedures including sick leave, holidays, pay schedules and pay tables.

3. **Records System**

a. The Navajo Nation agrees to keep such records as required pursuant to Section 108(c)(b)(7)(A) of the ISDA, as amended; to make reports required by Section 5(a)(1) and (2) of the ISDA, as amended; and to make such information and reports available to the Indian beneficiaries as required by Section 5(c) of the ISDA, as amended. The Navajo Nation shall maintain a recordkeeping system that will allow for the maintenance of records to facilitate retrocession or reassumption of the Contract. Such records system, at a minimum, shall:

1) Provide for the creation, maintenance and safeguarding of records of lasting value, including those involving individual rights.

2) Provide for orderly retirement of records used or created under the Contract. Such records shall be returned to the BIA for disposition according to the General Records Schedules and the BIA Records Control Schedule.

b. When the Navajo Nation operates a system of records to accomplish a BIA function, the Navajo Nation shall comply with the Navajo Nation Privacy and Access to Information Act, 2 N.N.C. section 81, et seq..

c. The Navajo Nation shall make all reports and information concerning the Contract available to the Indian beneficiaries that the Contract serves or represents pursuant to the provisions of the Navajo Nation Privacy and Access to Information Act, 2 N.N.C. Section 81 et seq.

**J. EXAMINATION OF RECORDS.**

1. The Navajo Nation agrees to maintain books, records, documents and other evidence pertaining to the costs and expenses of the Contract (hereinafter collectively called "records") to the extent and in such detail as will properly reflect all net costs,

direct and indirect, of labor, materials, equipment, supplies and services, and other costs of whatever nature for which expenditure, payment or reimbursement is claimed under the provisions of the Contract or this AFA.

2. The Navajo Nation agrees to make available at the Navajo Nation offices at all reasonable times during the time period of the Contract and this AFA below any of the records, with reasonable advance notice, for inspection, audit or reproduction by any authorized representative of the Comptroller General or the Secretary of Interior as required under the ISDA, as amended, and applicable federal regulations..

3. Pursuant to Section (b)(7) of the Contract, the Navajo Nation shall preserve and make available its records related to the Contract and this AFA:

a. Until the expiration of the earlier of three years from the date of final payment under the Contract or the time period for the particular records specified in Part 1-20 of the Federal Procurement Regulations.

b. If the Contract is completely or partially cancelled, the records relating to the work terminated shall be preserved and made available for a period of three years from the date of any resulting final settlement.

4. Records which relate to appeals under the Section (b)(12), Disputes, of the Contract; litigation or the settlement of claims arising out of the performance of the Contract; or costs and expenses of the Contract as to which exception has been taken by the Awarding Official or any of his duly authorized representatives, shall be retained until such appeals, litigation, claims or exceptions have been disposed of.

5. Except for documentary evidence required under paragraph 4 above, the Navajo Nation may in fulfillment of its obligation to retain records substitute photographs, microphotographs, or other authentic reproductions or such records, after the expiration of 2 years following the last day of the month of payment or reimbursement to the Navajo

Nation of the invoice or voucher to which such records relate, unless a shorter period is authorized by the Awarding Official with the concurrence of the Comptroller General or his duly authorized representative.

6. The provisions of this paragraph (J) shall be applicable to each subcontract hereunder which is on a cost; cost-plus-a-fixed-fee, time-and-material or labor-hour basis.

7. The Navajo Nation further agrees to include in each of its subcontracts hereunder a provision to the effect that the sub-Contractor agrees that the Comptroller General, the Secretary of the Interior, the Awarding Official, and the Tribal Contracting Officer, or any of their duly authorized representatives, shall, until the expiration of 3 years after final payment under the subcontract, or of the time periods for the particular records specified in Part 1-20 of the Federal Procurement Regulations, whichever expires earlier, have access to and the right to examine any directly pertinent books, documents, papers, and records of such sub-Contractor, involving transactions related to the sub-Contract. The term "sub-Contract" as used in this paragraph only, excludes:

i. Purchase orders not exceeding $10,000; and

ii. Sub-Contracts or purchase orders for public utility services at rates established for uniform applicability to the general public.

K. <u>NAVAJO PREFERENCE</u>

Consistent with Section 7 (B) of the ISDA, as amended, the Navajo Nation Business Opportunity Act, 5 N.N.C. Section 201, <u>et seq</u>., and the Navajo Preference in Employment Act, 15 N.N.C. Section 601, <u>et seq</u>., shall apply to the administration of the Contract and this AFA.

L. <u>REPORTS</u>

During the course of this AFA, the Navajo Nation shall submit the following reports:

1. **Financial Status Report** *(SF-269A)*. The Navajo Nation agrees to submit an

original annual SF-269A report to the Awarding Official, through the designated Awarding Official's Representative (AOR). This report shall be used to monitor expenditures incurred during annual operations. The SF-269A shall be submitted with the Annual Report to the designated AOR 120 days after closure of each contract funding period.

2. **Annual Report.** The Navajo Nation agrees to submit the brief Annual Report to the Awarding Official, through the designated AOR, 120 days after closure of each contract funding period. The report shall describe the conduct of the program and activities in:

a. Accomplishments of the program objectives;
b. Description of any significant problems encountered; and
c. Any changes required to the Contract and/or Scope of Work.

The AOR will notify the Navajo Nation of delinquent report(s) and suggest the due date that the BIA must receive the delinquent report(s). If the Navajo Nation fails to submit the overdue report(s) by the established deadline, the AOR will notify the Awarding Official and recommend corrective action. A copy of such recommendation shall be provided to the Navajo Nation. The Awarding Official will than take appropriate action, consistent with the ISDA, as amended, to ensure that the Navajo Nation complies with the terms and conditions of the Contract and this AFA.

3. **Additional Reports.** Any additional reports required by law to be submitted beyond the Financial Status Report and Annual Report identified above shall be negotiated between the parties and delineated in Attachment C, which is incorporated herein by reference.

**M. SINGLE AUDIT REQUIREMENTS**

1. The Navajo Nation shall comply with the Single Audit Act Amendment of 1996, 31 U.S.C. 7501 et seq., and agrees to arrange for an annual single organization-wide audit as prescribed by the ISDA, as amended; the Single Audit Act Amendment of 1996, 31

U.S.C. 7501 et seq.; Office of Management and Budget (OMB) Circular No. A-133 and 43 CFR Part 12.

2. If the Navajo Nation fails to comply with the requirements for obtaining audits according to the Single Audit Act Amendment of 1996, the BIA may take actions as appropriate given the circumstances and as allowed pursuant to Subpart B § __.225 of the OMB Circular No. A-133.

3. In addition to the submission requirements of the Single Audit Act Amendment of 1996, the Navajo Nation shall send two copies of its Single Audit Reports to the Office of Audit and Evaluation to meet the reporting requirements of the ISDA, as amended. The address is:

Office of Audit and Evaluation
U.S. Department of the Interior
Ely Parker Building
2051 Mercator Drive
Reston, VA. 20191

N. **TECHNICAL ASSISTANCE AND MONITORING**

1. The BIA will expeditiously provide special technical assistance to assist the Navajo Nation to successfully operate the program under the Contract and this AFA.

2. The Awarding Official will monitor the submission of annual reports required under the Contract and the ISDA, as amended.

3. The BIA will provide monitoring services to ensure compliance with the terms of the Contract and this AFA. This monitoring function will include:

a. One annual evaluation (Monitoring Session) by the Navajo Region, Branch of Indian Self-Determination Office program and the Awarding Official. This visit shall be scheduled in advance as prescribed in Section (b)(7)(C) of the Contract. During the Monitoring Session, the Navajo Region, Branch of Indian

Self-Determination and the Awarding Official will review records, speak to the Program Director and staff and inspect premises to determine compliance with the Contract and this AFA.

b. Additional visits beyond the Monitoring Session shall only occur when requested by the Navajo Nation or when the Awarding Official determines that there is reasonable cause to believe that grounds for reassumption of the Contract, suspension of contract payments, or that other serious Contract performance deficiency may exist in accordance with Section (b)(7)(C) of the Contract. Such visits shall be scheduled in advance as prescribed in Section (b)(7)(C) of the Contract.

**O. <u>FEDERAL TORT CLAIMS ACT</u>**

1. For purposes of Federal Tort Claims Act coverage, the Navajo Nation and its employees are deemed to be employees of the Federal government while performing work under the contract. This status is not changed by the source of the funds used by the Navajo Nation to pay the employees salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the Navajo Nation.

2. In accordance with the requirement in 25 CFR, Part 900, Subpart M, subsection 900.188(a) the Navajo Nation agrees to designate an individual to serve as tort claims liaison with the Federal government. The designated tort claims liaison shall provide the assistance specified in 25 CFR, Part 900, and Subpart M. subsection 900.188(c).

**P. <u>CONTRACT ADMINISTRATION</u>**

1. **Federal Contract Administration**

All information or questions concerning the Contract and this Annual Funding Agreement (AFA) should be referred to:

Self-Determination Specialist/Awarding Official
Bureau of Indian Affairs – Navajo Regional Office

P.O. Box 1060
Gallup, New Mexico 87305
Telephone No. (505) 863-8403
Fax No. (505) 863-8461

2. **Tribal Contract Administration**

All notices, information, or questions concerning the Contract and this AFA should be referred to:

Navajo Nation Contracting Officer
Contracts and Grants Section - Office of Management and Budget
Post Office Box 646
Window Rock, Arizona 86515
Telephone No. (928) 871-6470
Fax No. (928)871-6567

## Q. SEVERABILITY

The provisions of this AFA are severable. If any provision of this AFA is determined to be invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the remainder of the AFA.

## R. EFFECT ON EXISTING RIGHTS

1. Nothing in this AFA shall be construed as affecting, modifying, diminishing, waiving or otherwise impairing the sovereign immunity from suit enjoyed by the Navajo Nation.

2. Nothing in this AFA shall be construed as waiving any rights of the parties under applicable federal law.

3. Nothing in this AFA shall be construed as authorizing or requiring the termination of any existing trust responsibility of the United States with respect to the Navajo Nation, Navajo people, or Indian beneficiaries.

S. **EFFECTIVE DATE**

This AFA shall be effective for the term of the funding year, January 1, 2007 through December 31, 2007, or until such time that a successor AFA is executed or a new contract is issued with a new contract term identified. However, this does not alter the obligation of the Navajo Nation to provide DOI with a proposed AFA for the following calendar year, or a notice of intent not to renew, at least 90 days prior to end of the current calendar year.

Joe Shirley, Jr., President
**THE NAVAJO NATION**

SEP 2 8 2006
Date

Secretary, Department of the Interior,
or designee
**UNITED STATES OF AMERICA**

Date

CRIMINAL INVESTIGATIONS P.L. 93-638 CONTRACT
STATEMENT OF WORK

101. The Contractor shall perform the following Bureau program: CRIMINAL INVESTIGATION SERVICES. Subject to the terms of the contract, the Annual Funding Agreement (AFA), and the availability of funds, the Contractor shall perform criminal investigation services as noted in the Indian Law Enforcement Reform Act, 25 U.S.C. § 2801, including promptly conducting investigations of suspected violations of the criminal laws of the United States which occur within the Navajo Nation as authorized by the United States Attorney (25 CFR § 12.23). All investigations shall be conducted with a view towards prosecution in court. Investigations shall be conducted professionally, impartially, and thoroughly, and reports shall be timely, objective, and accurate. Contractor shall:

A. Cooperate with any legitimate request for assistance, which it deems reasonable, made by any federal, state, local or tribal criminal justice agency. Contractor shall fully participate in all aspects of the federal criminal justice system.

B. Conduct criminal investigations, including:

1. Photograph the crime scene which includes aerial photographs when required and funded by the United States Attorney, and maintain a photo log.

2. Conduct interviews and interrogation of all appropriate persons connected with an investigation. Reports of interviews shall be completed within a reasonable period of time and shall become a permanent record of the individual criminal investigation case file.

3. Prepare crime scene sketches from which a final diagram of the crime scene is made which properly identifies all items of evidence along with accurate measures.

4. Maintain individual criminal investigation case files at each of the district stations which shall contain all reports, original notes of criminal investigators, statements, affidavits, letters, police radio call logs, telephone logs and notes, photographs with negatives, memoranda, criminal history records, crime scene sketches and diagrams, tape and video recordings of interviews, and all other document that pertain to each criminal investigation conducted within the districts. All criminal investigation case files, with exception of Internal Affairs documents, shall be kept secured and shall be made accessible to any Bureau law enforcement contracting officer's representative upon written demand and in conformity with applicable provisions of law and other internal policies and procedures of the Contractor.

5. When federal criminal investigations are closed for whatever reason, a Final Disposition Report of all investigation reported to the Contractor shall be completed and become a permanent record of an investigation case file.

6. Immediately and thoroughly conduct crime scene and other investigative work and file reports within a reasonable period of time after completing such investigative work.

7. Contractor shall conduct all investigations under this contract in a professional and impartial manner and perform its obligations in conformity with applicable provisions of the Navajo Nation laws and procedures. Contractor shall not exercise any recrimination against any criminal investigator for the proper performance of the investigator's duties under this contract.

C. Serve and respond to subpoenas:

1. Criminal investigators shall serve all subpoenas and other federal and civil processes issued by the United States Magistrate or United State District Courts. Whenever a subpoena is not served within a reasonable time after receipt, the United States Attorney's Office shall be notified in writing. Such notifications will be reported quarterly to the appropriate COR.

2. Criminal investigators shall honor and respond to all federal subpoenas. Subpoenas may require attendance at trial or a pretrial hearing, or production and delivery of certain items of evidence at a specific location.

3. All federal subpoenas issued for investigation reports shall be confirmed with the Navajo Nation Office of the Attorney General and appropriate U.S. Attorney's Office before compliance.

4. For cases under the U.S. Attorney's jurisdiction, Contractor shall contact the appropriate U.S. Attorney's Office and follow his/her instruction(s) before complying with the subpoena.

D. Identify and Preserve evidence:

1. Identify and preserve each item of evidence.

2. Maintain a secured evidence room and comply with standard rules and procedures currently in effect and as amended and promulgated by the Contractor.

3. Comply with the U.S. Attorney Guidelines regarding the preservation of evidence.

4. Evidence collected at the crime scene or from subjects shall be properly preserved and transported to a crime laboratory maintained by a criminal justice agency. Evidence shall be submitted to a laboratory no later than five (5) calendar days after it is collected.

5. There shall be no reason of evidence or other records in pending federal criminal cases as federal criminal case discovery is governed by rule 16 of the Federal Rules and Criminal Procedure and is the sole method of federal criminal case discovery.

E. Interact with United States Attorneys and other federal agencies:

1. Promptly and accurately report felony criminal cases within its jurisdiction to the appropriate Unites States Attorney's Office. Within five (5) business days after receipt of a report of a federal crime, Contractor shall notify in writing the appropriate Unites States Attorney's Office, using a standardized prosecutive report.

2. A completed prosecutive report of cases within its jurisdiction shall be submitted to the appropriate Unites States Attorney's Office within a reasonable period of time after the investigation is completed. Investigations shall be completed with due diligence and with regard to the court-imposed deadlines, i.e. indictment must occur within thirty (30) calendar days after a defendant's initial appearance.

3. Some cases involving known subjects can be declined for federal criminal prosecution after telephonic consultation with the Unites States Attorney's Office. In such cases, a standard declination letter shall be prepared adequately summarizing the facts upon which declination is based and specifically identifying the attorney who declined prosecution. Declination letters shall be sent to the appropriate Unites States Attorney's Office within a reasonable time following declination.

4. All federal civil forfeiture actions requested by the Contractor as a result of specific violations of federal law shall be consummated only upon the authorization of the Unites States Attorney. Any property seized and in the possession of the Contractor must be returned to the owner by the Contractor, if federal civil forfeiture action has not been successfully prosecuted against the property or when the Unites States Attorney remits the property to the owner.

5. Whenever juvenile is accused of committing a Federal criminal offense, Contractor shall comply with applicable Navajo Nation and federal laws.

6. Criminal investigators shall cooperate with the United States Attorney's Office in responding to short notices of proceeding such as a Grand Jury, pretrial conferences, participation at pretrial motions (suppression or evidentiary hearings), detention hearings, removal hearings, and other instances, provided that it does not significantly interfere with any on-going criminal investigations, and provided that the Navajo Department of Criminal Investigations is reimbursed for travel, meals, and lodging.

7. Prior to the release of any information to the media regarding a federal investigation or arrest, the Contractor shall have an approval of the appropriate U.S. Attorney.

F. Refer cases declined by the United States Attorney to the Navajo Nation Prosecutor for appropriate action and the Contractor will be responsible for criminal investigation if necessary.

G. Assist the victim/witness Program of the Navajo Nation with the transportation of witness and victims when necessary, and such other services the United States Attorney may

deem necessary, provided that the Navajo Department of Criminal Investigations is reimbursed for travel, meals, and lodging.

H. Testify on behalf of the Navajo Nation and the United States Government in criminal prosecution hearings, provided that the Navajo Department of Criminal Investigations is reimbursed for travel, meals, and lodging, should the testimony be on behalf of the United States Government.

I. Serve Warrants and make Arrests:

1. When federal arrest warrants are served by criminal investigators, prisoners shall be immediately advised of their Miranda Rights, and the Contractor shall work with the United States Attorney's Office regarding safe transportation to a federally approved detention center. All personal property of the prisoners shall be safeguarded and transported. The United States Marshals service shall be immediately notified of the name of the arrestee, warrant number, charges, and the location where the prisoners is incarcerated. Arrest report shall be completed immediately and filed at the district station.

2. Whenever an arrest without a warrant is made for a federal crime which occurs in the presence of a criminal investigator, the criminal investigator shall immediately advise the prisoner of his/her Miranda Rights, notify the United States Attorney's Office, and cooperate in arranging for an initial appearance for the prisoner and the safe transportation of the prisoner to a federally approved detention center.

J. Ensure that no criminal investigator or other Navajo Department of Criminal Investigations employee encourages or discourages any civil lawsuit against the United States or the Navajo Nation.

K. This contract does not include criminal investigative responsibility for waste, fraud and mismanagement in any grant, contract, or cooperative agreement in which the United States is a party. All such incidents of waste, fraud and/or mismanagement, shall be reported to the Department of Interior, Office of the Inspector General. Nor does this contract include investigative responsibilities for administrative matters that are internal to the Bureau of Indian Affairs.

102. Personnel. The Contractor shall perform the contracted criminal investigation in accordance with the qualifications, training, code of conduct, inspection and evaluation, and other standards applicable to Bureau criminal investigators personnel, or the equivalent. In addition to Navajo Nation personnel employment standards, the Contractor shall require the following for each criminal investigator position:

A. Employee candidates must present evidence of ability to discharge the duties of the position. Commissioned criminal investigator candidates, in addition to other qualifications, shall demonstrate the traits and characteristics important to succeed in police work. Among these are: alertness, ability to work in stress situations, ability in oral expression, tact, integrity, capacity for effective public relations, practical intelligence and good judgment. Candidates must be honest and trustworthy; have

integrity, sound judgment, temperate habits; and have a satisfactory work record. Any applicant who does not have these qualities shall not be appointed to a commissioned criminal investigation position.

B. Prior to employment of any commissioned criminal investigator or civilian staff member, a full field background investigation shall be completed by the Contractor. Such investigation shall include, but not be limited to Navajo Nation, other tribal, local, state, and federal criminal history checks. Background checks/clearances, through fingerprint charts (FD-258) must be conducted through the Assistant Director, Identification Division, Federal Bureau of Investigation, Washington, D.C. 20537. Checks/Clearance through the National Crime Information Center (NCIC), state criminal history centers and local police and tribal court records shall be conducted. All background check/clearances shall be recorded, documented and kept on file for reach commissioned officer at the Contractor's Public Safety headquarters. Careful review and documentation shall be made on each officer's family data, education, employment, medical and military history, previous residences, organization and affiliations, personal references, credit record and police record, including drivers license history and status. Background review shall be conducted through both a written questionnaire to be completed by the employee applicant and a personal interview with present and past supervisors and associates who have personal knowledge of the applicant's background and character. The Contractor shall update background investigation every five (5) years from the date of last background investigation on all criminal investigators.

C. Any person who is convicted of a felony is not eligible for employment. Also any person who has been convicted of a misdemeanor, excluding minor traffic violations, within a period of three (3) years immediately preceding his/her appointment, or who has been convicted or plead guilty to a misdemeanor or a domestic violence related charge, shall not be eligible for employment as a criminal investigator or a civilian staff position.

D. Persons appointed to commissioned law enforcement positions shall be at least 21 years of age. This requirement may be waived for United States armed services veterans discharged under honorable conditions.

E. Applicants and commissioned law enforcement officer positions must be physically able to perform efficiently the duties of the positions, applicants shall have binocular visions correctable to 20/20 (Snellen) in each eye; uncorrected vision shall be no more than 20/200 in each eye. Near vision corrected or uncorrected shall be sufficient to read Yeager Type 2 at 14 inches. All criminal investigators must be able to distinguish basic color. All criminal investigator position applicants shall have the ability to hear the conversational voice, without the use of a hearing aid. Persons with an amputation of arm, hand, leg or foot shall not be employed. Applicants shall possess emotional and mental stability. Any physical condition which would cause the employee to be a hazard to himself/herself or to others shall be disqualified for appointment/employment or continued employment or appointment as a law enforcement officer. Fitness for duty examination shall be ordered for any employee in question. In addition, an annual medical examination shall be placed in each individual's official personnel folder.

that the curriculum has been approved. Any disapproval of curriculum by the COR shall explain the reason for disapproval.

E. The Bureau shall provide additional necessary training, when requested in writing by the Contactor to enable the Contractor to carry out the terms and standards of the Contract. However, in the event that the Bureau cannot provide training needed by the Contractor to carry out the terms and conditions of this Contract, such failure will not adversely affect this Contract.

F. Certificates of satisfactory completion of each of the above training requirements shall be maintained in each individual criminal investigator's personnel folder.

104. Certification as Federal Law Enforcement Officers. The Bureau shall commission any criminal investigator meeting the personnel, qualifications and training provisions of this contract as a Federal Criminal Investigator.

105. Uniforms and Equipment.

A. Uniforms, when worn, shall positively identify the wearer as criminal investigator. Badge, name plate and tribal patch shall be visible at all times. Uniforms of all criminal investigations personnel shall be plainly distinguishable from the uniforms of other non-law enforcement personnel. Each criminal investigator shall be issued a standard identification card bearing a photograph of the investigator.

B. All criminal investigation <u>vehicles</u> shall be equipped with a two-way radio, emergency lights, sirens, fire extinguisher, flashlight, emergency flares, and a rappelling rope. Blankets, a first aid kit, a shovel will also be available at the stations. Contractor shall maintain all vehicles in good working condition.

C. The Contractor shall provide all criminal investigators with the following items and assure they are in good working condition:

1. .40 Caliber, 9mm or other firearms duly authorized by the Contractor.

2. Belt or shoulder holster, handcuffs case, and cartridge holder.

3. Handcuff with keys.

4. Minimum of one complete set of uniforms, including hat/helmet.

5. Badge.

6. Ammunition shall be expended and replaced annually.

7. Baton.

8. Pepper Mace.

D. The Bureau shall provide necessary equipment, when requested in writing by the Contractor and subject to availability, to the Contractor to efficiently and effectively carry out the terms and standards of the contract.

106. Salaries. Salaries paid criminal investigators by the Contractor under this Contract shall be equal to or greater than the salaries paid criminal investigators with similar responsibilities employed directly by the Bureau of Indian Affairs (25 CFR § 12.33 - 12.34).

107. Availability for investigations. A criminal investigator shall be available for investigations 24 hours a day, seven days a week.

108. No assignment as security. No Criminal Investigator shall be assigned to serve as bodyguards for the President, Vice-President or other politically elected or appointed official of the Navajo Nation Government. This does not prohibit any Criminal Investigator from conducting an investigation of criminal offenses or threats of criminal offenses against the President, Vice-President or other politically elected or appointed official of the Navajo Nation.

109. Upward Mobility Plan. The Upward mobility Plan is a component of the Department of Criminal Investigation as a staff development and training program, which is an educational support service for under graduate and graduate level employees pursuing a Bachelor of Science degree or Masters Degree in Criminal Justice Administration and/or Public Administration.

## STANDARDS

110. In performing this Contract, the Contractor shall adhere to the following standards: Navajo Nation laws, federal laws (including the Indian Civil Rights Act), Navajo Nation Public Safety General Orders, 25 CFR Part 12, 68 BIAM, and applicable U.S. Attorney Guidelines. The bureau shall provide copies of all Bureau manuals, federal laws and regulations, as well as any updates used as standards within this Contract.

## REPORTING

111. The Contract shall prepare and submit the following reports to the Contracting Officer's Representative:

A. Annual Report
Within 120 days after the end of the Contract year of this Contract, the Contractor will prepare an annual report covering the accomplishments and problems encountered during the prior year. The Annual Report shall contain the following statistical information and the report may contain any other statistical information the Contractor deems appropriate:

1. Offense Investigations (Part I, Navajo Nation Code violations, etc.).

2. Completed criminal investigation reports submitted to Navajo Nation Prosecutors.

3. Allegations of civil rights violations (Case Number and date referred to the Bureau).

4. Other statistical information the Navajo Division of Public Safety may desire to add.

5. Internal Reporting Procedures.

B. Internal Reporting Procedures.

The Contractor will maintain the following information as part of its performance of this Contract, but will not submit this information. However, this information will be available for inspection during the Bureau's yearly monitoring visit:

1. Officer logs;
2. Case reports, including arrest, investigation and incident reports;
3. Juvenile records;
4. Arrest and disposition records;
5. Evidence records;
6. Payroll records of all employees;
7. Reports of all traffic accidents investigated;
8. Individual background investigation records;
9. Training records and certifications of completion;
10. Codes of Conduct;
11. Government - furnished property inventory list;
12. Employee performance appraisal files;
13. Annual physical examination records;
14. Firearms certification records;
15. Criminal case logs;
16. Firearms inventory list; and
17. Except in firearms training, each time a firearm is used for law enforcement purposes, a report shall be filed with the superior of the criminal investigator who used the weapon. Whenever use of a weapon results in serious injury or death of any person, the criminal investigator who fired the weapon shall be placed on

administrative leave, or be assigned to strictly administrative duties pending a thorough investigation of all circumstances surrounding the incident.

C. Civil Rights Violation Reports. In addition to prescribed Navajo Nation reporting guidelines, when a Contact law enforcement officer receives an oral or written allegation that a criminal investigator employed under this Contact has violated the civil rights of any person, the receiving officer shall prepare a written report of the allegation and transmit it through the chain of command to Department of Criminal Investigation within seven (7) days of receipt of the allegation. No later than seven (7) days after being notified of the allegation, the Director shall submit a written notification to the Division of Public Safety Director and Division of Public Safety Internal Affairs Supervisor who will notify the BIA Law Enforcement Services. If the Director of the Navajo Department of Criminal Investigations, the District Criminal Investigations Captain, or high ranking official is accused of a civil right violation, the report of the allegation shall be transmitted directly to Division of Public Safety Director and Division of Public Safety Internal Affairs Supervisor who will notify the BIA Law Enforcement Services.

112. No Third-Party Beneficiary. This contract does not and is not intended to create rights in any person(s) or entities other than the contracting parties.