# In the United States Court of Federal Claims

No. 07-195 C
(Filed: September 24, 2008)

***********************************
DARRELL BOYE et al., *
*
Plaintiffs, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
***********************************

## RULING ON PLAINTIFFS' DISCOVERY MOTIONS

Before the court in the above-captioned case are (1) Plaintiffs' Motion to Supplement Response to Motion to Dismiss and Motion to Expand Scope of Discovery and (2) Plaintiffs' Motion to Compel Discovery. For the reasons set forth below, the court grants plaintiffs' motion to supplement their response, denies plaintiffs' motion to expand the scope of discovery, and denies plaintiffs' motion to compel with the right to renew.

## I. FACTUAL BACKGROUND[1]

Plaintiffs are current and former employees of the Navajo Nation Division of Public Safety ("Navajo DPS"), most of whom reside within the Navajo Reservation in Arizona. Am. Compl. ¶¶ 4-5. The Bureau of Indian Affairs ("BIA") of the United States Department of the Interior ("Department of the Interior") is responsible for providing law enforcement on the Navajo Reservation and, accordingly, contracts out law enforcement and criminal investigation services to the Navajo DPS via "638 contracts." Id. ¶¶ 7, 9. Plaintiffs' sole cause of action is for breach of contract, based on their purported status as third-party beneficiaries of various 638 contracts between the Navajo DPS and the BIA. Id. ¶¶ 11-18. Specifically, they allege that they are not receiving wages and benefits equal to the wages and benefits paid to their BIA counterparts, as required by the relevant 638 contract. Id. Thus, plaintiffs seek an accounting and payment of all amounts due to them, costs, attorney's fees, interest, and "such other and further relief as the court deems just and proper." Am. Compl. Wherefore ¶¶ 1-5.

---

[1] For the purposes of this ruling, the facts are taken solely from the Amended Complaint.

## II. PROCEDURAL HISTORY

Counsel for the government filed Defendant's Corrected Motion to Dismiss on July 23, 2007, seeking dismissal of plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), and under the theory of claim preclusion.[2] Shortly after the close of briefing, on October 3, 2007, plaintiffs filed Plaintiffs' Motion to Stay Proceedings to Conduct Discovery. After considering the parties' arguments, the court granted plaintiffs' motion to stay on November 20, 2007, and indicated its intent to exercise its broad discretion to manage discovery:

> Plaintiffs, in their motion to stay, have requested discovery to assist them in opposing defendant's motion to dismiss. See Mot. Stay 2 ("Plaintiffs should be given a reasonable opportunity to present all material evidence pertinent to the motion."); id. at 3 ("At a minimum, there are five years of contracts with related documents not produced."); id. at 5 ("Defendant's assertion of Plaintiff[s'] failure to state a claim under 12(b)(6) supports Plaintiffs' request to conduct discovery to obtain the contracts in question."). The court finds that a limited amount of discovery is necessary. In particular, plaintiffs are entitled to present evidence that supports this court's jurisdiction over their complaint, and it appears that defendant is in possession of such documents.[FN] Plaintiffs may also seek to discover evidence that rebuts defendant's specific arguments under RCFC 12(b)(6).
>
> > [FN] Indeed, at a minimum, a review of all of the contracts at issue in the complaint appears necessary to determine whether those contracts confer third-party beneficiary status on plaintiffs, and therefore support this court's jurisdiction. See Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005) ("[Intent to create a third-party beneficiary] is determined by looking to the contract and, if necessary, other objective evidence."); Maniere v. United States, 31 Fed. Cl. 410, 417 (1994) ("Thus, to determine these requirements, a court looks to the agreement proffered to support the third-party beneficiary argument: whether the contract

---

[2] Typically, claim preclusion is asserted as an affirmative defense in an answer and not a in an RCFC 12 motion to dismiss. See RCFC 8(c) ("In a pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . ."); Rivet v. Regions Bank of La., 522 U.S. 470, 476 (1998) ("Claim preclusion (res judicata), as Rule 8(c) of the Federal Rules of Civil Procedure makes clear, is an affirmative defense."); see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984) (noting that while "[r]es judicata is often analyzed further to consist of two preclusion concepts," i.e., issue preclusion and claim preclusion, the court's use of the term referred only to claim preclusion), cited in Carson v. Dep't of Energy, 398 F.3d 1369, 1375 n.8 (Fed. Cir. 2005).

demonstrates the requisite intent or not thus establishes if the party may maintain a third-party beneficiary status.").

Order, Nov. 20, 2007, at 1-2 & n.1.

Subsequent to the court's order, the parties commenced discovery. See Order, Jan. 15, 2008, at 1. Shortly thereafter, an issue arose with respect to the scope of discovery permitted by the court and, accordingly, defendant filed a motion for a protective order. On March 4, 2008, the court ruled on defendant's motion, making three determinations. First, the court held that plaintiffs were not entitled to contracts for a twenty-five year period. Ruling Def.'s Mot. Protective Order ("Ruling"), Mar. 4, 2008, at 7. Second, the court concluded that plaintiffs were entitled to the following discovery, beyond the contracts already produced by defendant, to establish jurisdiction based on their purported status as third-party beneficiaries to the 638 contracts:

- Plaintiffs may obtain the documents related to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007. "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other provision that directly relates to the pay or benefits to be paid pursuant to the contracts.

- Plaintiffs may obtain the correspondence between the BIA and the Navajo Nation that relates to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007. "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other provision that directly relates to the pay or benefits to be paid pursuant to the contracts.

- Plaintiffs may propound interrogatories on the "Awarding Officials" of the relevant 638 contracts for the years 2001 through 2007, on the sole issue of whether the BIA intended to benefit plaintiffs when it entered into the contract signed by the "Awarding Official." Once plaintiffs have received the interrogatory responses, they may petition the court to conduct depositions. Plaintiffs' request, if any, must explain why the requested depositions are needed to support their jurisdictional claim.

Id. at 8-9. Third, the court determined that because plaintiffs had not alleged that the 638 contracts contained ambiguity regarding a nondelegable duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid, they were not entitled to discovery on that issue. Id. at 9-10. The court concluded its ruling by setting forth a schedule for the propounding of interrogatories and production of documents. Id. at 10-11.

While the parties were engaged in the aforementioned discovery, plaintiffs filed motions to supplement their response to defendant's motion to dismiss and to expand the scope of discovery. Both motions arose from a newly identified document that plaintiffs believed was relevant to their case: a Memorandum of Understanding between the BIA and the Federal Bureau of Investigation ("FBI") that was signed by the Secretary of the Interior and the Attorney General of the United States in 1993. Pls.' Mot. Supplement Resp. Mot. Dismiss & Mot. Expand Scope Disc. ("Pls.' Combined Mot.") 1, 3. In its response to plaintiffs' motions, defendant indicates that although it has no objection to plaintiffs' motion to supplement their response it does oppose plaintiffs' motion to expand the scope of discovery. Def.'s Opp'n Pls.' Mot. Supplement Resp. Mot. Supplement Resp. Mot. Dismiss & Mot. Expand Scope Disc. ("Def.'s Combined Opp'n") 1-2. Plaintiffs subsequently filed a reply in support of their motions to further explain the relevance of the newly requested discovery. Pls.' Reply Mot. Supplement Resp. Def.'s [Corrected] Mot. Dismiss & Expand Disc. ("Pls.' Combined Reply") 1-3.

As briefing on plaintiffs' motions continued, additional disputes arose regarding the scope of discovery. Because the parties were unable to resolve their disputes, plaintiffs filed a motion to compel discovery. Plaintiffs assert that defendant refused to respond to all of their propounded interrogatories, even though the interrogatories were within the scope of the court's March 4, 2008 ruling, and that defendant failed to produce any additional documents in response to the court's ruling, which plaintiffs claim must exist. Pls.' Mot. Compel Disc. ("Pls.' Mot. Compel") 2-5. Defendant opposes plaintiffs' motion to compel in its entirety. Def.'s Opp'n Pls.' Mot. Compel Disc. ("Def.'s Opp'n Compel") 4-8. Plaintiffs reiterated their position in their reply brief. Pls.' Reply Def.'s Opp'n Pls.' Mot. Compel Disc. ("Pls.' Reply Compel") 1-3. The court deems oral argument unnecessary.

## III. DISCUSSION

Because defendant does not object to plaintiffs' motion to supplement their response to defendant's motion to dismiss, the court grants that motion without discussion. However, the court must address plaintiffs' two disputed motions.

### A. Plaintiffs' Motion to Expand the Scope of Discovery

As noted above, plaintiffs' motion to expand the scope of discovery is based on a newly located Memorandum of Understanding from 1993 between the Department of the Interior and the United States Department of Justice ("Department of Justice"). The purpose of the Memorandum of Understanding was "to establish guidelines regarding the respective jurisdictions of the [BIA] and the [FBI] in certain investigative matters, and to provide for the effective and efficient administration of criminal investigative service in Indian Country." Pls.' Combined Mot. Ex. ("Pls.' Combined Ex.") § I. The Memorandum of Understanding specifically provided:

> 4. Any contracts awarded under the Indian Self-Determination Act to perform the function of the BIA, Branch of Criminal Investigators, must comply with all standards applicable to the Branch of Criminal Investigators, including the following:
>
> . . . .
>
> c. Compensation for Criminal Investigators must be comparable to that of BIA Criminal Investigators.
>
> . . . .
>
> n. Tribal contractors must agree, and the BIA shall ensure, that there is an audit and evaluation of the overall contracted Criminal Investigator program at least every two years. Continuation of the contract shall be contingent upon successful completion of each audit and evaluation.

Id. § IV. Plaintiffs assert that the above-quoted clauses "conclusively affirm" their claims that they were intended beneficiaries of the 638 contracts and that the 638 contracts described a duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid. Pls.' Combined Mot. 1. But see Pls.' Combined Reply 1 n.1 ("The issue of whether Plaintiffs were the intended beneficiaries of the contract pay provisions appears to be resolved."[3]). Thus, they sought to add the Memorandum of Understanding as an exhibit to their response to defendant's motion to dismiss and expand the scope of discovery "to include all documents in possession of or available to the Departments of Justice and Interior pertaining to all such [Memorandum of Understanding] Agreements between these agencies, as well as all documentation regarding enforcement of the [Memorandum of Understanding]'s provisions related to the 638 Law Enforcement Contracts." Pls.' Combined Mot. 3. In sum, according to plaintiffs, the Memorandum of Understanding requires the Secretary of the Interior to provide proof to the Department of Justice "that the 638 Law Enforcement Officers and Criminal Investigators are being paid at the same rate as their BIA counterparts" and that discovery concerning the Secretary of the Interior's compliance with the Memorandum of Understanding "is further proof supporting Plaintiffs['] plain reading of the[] statutes, regulations and contract provisions intended to benefit them."[4] Pls.' Combined Reply 3.

Defendant opposes the expansion of discovery based on either the Memorandum of Understanding cited by plaintiffs or any other similar document. Defendant begins by

---

[3] This statement muddies plaintiffs' claim that they needed the requested discovery to prove intended third-party beneficiary status.

[4] The court finds it necessary to reiterate that plaintiffs' sole cause of action is for breach of contract.

disagreeing with plaintiffs' contention that the Memorandum of Understanding provides conclusive evidence that plaintiffs were intended beneficiaries of the 638 contracts. Def.'s Combined Opp'n 4-5. In fact, asserts defendant, the Memorandum of Understanding, "by its plain terms, . . . cannot be used by the plaintiffs to demonstrate the intent of the BIA and the Navajo Nation with respect to the 638 Contracts at issue." Id. at 5. In support of this assertion, defendant cites the following provision of the Memorandum of Understanding:

> The provisions set forth in this [Memorandum of Understanding] are solely for the purpose of internal guidance of components of the Department of the Interior and the Department of Justice. This [Memorandum of Understanding] does not, is not intended to, shall not be construed to, and may not be relied upon to, create any substantive or procedural rights enforceable at law by any party in any matter, civil, or criminal.

Id. (quoting Pls.' Combined Ex. § IV). Further, contends defendant, even if the Memorandum of Understanding contained evidence of intent, such evidence is irrelevant because the Memorandum of Understanding "predates the 638 Contracts at issue by nearly ten years" and "does not set forth the mutual intent of the contracting parties to the 638 Contracts." Id. at 5-6. In addition to disputing plaintiffs' intended third-party beneficiary argument, defendant argues that because the court has already denied plaintiffs' request to conduct discovery concerning whether the 638 contracts described a duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid, plaintiffs cannot use the Memorandum of Understanding to obtain discovery on that issue. Id. at 5.

To begin, the court notes that it has previously denied plaintiffs' request to conduct discovery concerning whether the 638 contracts described a duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid. As explained in its March 4, 2008 ruling, the court denied plaintiffs' request for discovery on this issue because plaintiffs had not alleged any ambiguity in the language of the 638 contracts. See Ruling, Mar. 4, 2008, at 8, 10 (citing TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions.")). Because plaintiffs' allegations have not changed, the court declines to reach a different conclusion with respect to the Memorandum of Understanding and related documents. Accordingly, plaintiffs may not use the Memorandum of Understanding or related documents in support of their contention that the 638 contracts described a duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid.

Shifting to plaintiffs' contention that the Memorandum of Understanding is evidence of the BIA's intent to treat them as third-party beneficiaries of the 638 contracts, the court returns to the analytical framework it outlined in its March 4, 2008 ruling. "In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly."

Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001). As evidence of intent, the court must consider "the language of the contract itself." Dewakuku v. Martinez, 271 F.3d 1031, 1041 (Fed. Cir. 2001). "When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced." Roedler v. Dep't of Energy, 255 F.3d 1347, 1352 (Fed. Cir. 2001); see also Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (noting that if the intended third-party beneficiary is not "specifically or individually identified in the contract," the third party must instead "fall within a class clearly intended to be benefitted thereby"). To find such intent, the court may look to (1) whether the language of the contract demonstrates that "the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him," Dewakuku, 271 F.3d at 1041; (2) "the governing statute and its purpose," to the extent that "the contract implements a statutory enactment," Roedler, 255 F.3d at 1352; or (3) "other objective evidence," Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005); see also Stockton E. Water Dist. v. United States, 75 Fed. Cl. 321, 350-51 (2007) (noting that the court permitted testimony from three witnesses regarding whether certain plaintiffs were third-party beneficiaries). The question of whether a party is an intended third-party beneficiary "is a mixed question of law and fact." Flexfab, L.L.C., 424 F.3d at 1259. Given this framework, the question before the court is whether the Memorandum of Understanding and related documents constitute "other objective evidence" of the intent of the contracting parties–the Navajo Nation and the BIA–to benefit plaintiffs. The court need not look any further than the plain language of the Memorandum of Understanding to conclude that they do not.

Specifically, the Memorandum of Understanding expressly prohibits any party to a civil or criminal action from relying upon any of its terms to create any legally enforceable substantive or procedural rights. Pls.' Combined Ex. § IV. This plain and unambiguous language expressly precludes plaintiffs from relying on the Memorandum of Understanding to establish their third-party beneficiary status–a procedural right. The court is troubled by plaintiffs' failure to provide any legal analysis explaining why this restrictive language did not nullify their assertion that the document supports their third-party beneficiary argument. The court is even more troubled that plaintiffs failed to mention this restrictive provision altogether. Plaintiffs' failure to acknowledge a pertinent provision in the Memorandum of Understanding that specifically and significantly undercuts their argument could be interpreted as a deliberate attempt to mislead the court. However, at this juncture, the court declines to make that adverse inference.

Moreover, even if this restrictive provision were not part of the Memorandum of Understanding, plaintiffs have provided no indication that this document, signed in 1993, remained operative when the contracts at issue in this case, which date from 2001 through 2007, were executed. Further, plaintiffs, who were not parties to the Memorandum of Understanding, have not explained how the document provides them with any protections or benefits. Accordingly, the court concludes that the Memorandum of Understanding or related documents have no bearing on the intent of the contracting parties to benefit plaintiffs. As such, plaintiffs are not entitled to the requested discovery.

**B. Plaintiffs' Motion to Compel**

As previously noted, plaintiffs contend both that defendant refused to respond to all of their propounded interrogatories, even though the interrogatories were purportedly within the scope of the court's March 4, 2008 ruling, and that defendant failed to produce any additional documents in response to the court's ruling, which plaintiffs claim must exist. Pls.' Mot. Compel 2-5. Accordingly, plaintiffs seek a court order compelling defendant to respond to their interrogatories and produce the necessary documents and sanctioning defendant by declaring that the BIA "had the duty to investigate and enforce compliance with the pay provisions." Id. at 6. The court discusses the interrogatories and document requests in turn.

**1. Interrogatories**

In its March 4, 2008 ruling, the court permitted plaintiffs to obtain "[t]he interrogatory responses of the 'Awarding Officials' of the relevant 638 contracts for the years 2001 through 2007, on the sole issue of whether the BIA intended to benefit plaintiffs when it entered into the contract." Ruling, Mar. 4, 2008, at 10. Pursuant to this ruling, plaintiffs propounded three sets of interrogatories on defendant: one set each directed to Awarding Officials Dolores F. Torrez and Sharon Pinto and a third set directed to "any other Awarding Official assigned to the 638 law enforcement contracts between the Navajo nation and the United States between 2001-2007." Pls.' Mot. Compel Ex. ("Pls.' Compel Ex.") 1. Each set of interrogatories contained the same nineteen questions, as follows:

> Interrogatory No. 1: For the time between 2001-2007 during which you were the awarding official administering 638 Law Enforcement Contracts between the Navajo Nation and the United States[,] were you aware that Navajo DPS police officers and/or criminal investigators were paid at a different rate than BIA police officers and criminal investigators "with similar responsibilities"?
>
> Interrogatory No. 1(A): If your response is yes, state in detail the actions you took in regard to this information.
>
> Interrogatory No. 1(B): If you believed it was permitted that Navajo DPS police officers and criminal investigators be paid a different rate than BIA police officers and criminal investigators "with similar responsibilities," list the basis for that belief including the specific name, date of publication and page number of any directive, manual[,] handbook or other written authority that allowed this difference in rate of pay.
>
> Interrogatory No. 1(C): If your response was no, was it your understanding that Navajo DPS police officers and criminal investigators were being paid at the same rate as BIA police officers and criminal investigators "with similar responsibilities[]"[?]

Interrogatory No. 1(D): What information or documents (the title, date of publication and page(s)) did you rely on to conclude they were being paid at the same rate[?]

Interrogatory No. 2: As the awarding official for the 638 Law Enforcement Contract, explain your understanding of contract provision 106: “Salaries” contained in the document[’]s statement of work . . . .

Interrogatory No. 3: Explain your understanding of the requirement regarding the amounts to be paid police officers contained in 25 C.F.R. Section 12.34 . . . .

Interrogatory No. 4: In the attached Law Enforcement Contracts[’] provision 106: Salaries, who does the first “Law Enforcement officers” phrase pertain to? . . .

Interrogatory No. 5: Have you ever been advised by the [Awarding Official’s Technical Representative], the Navajo Nation and/or the Navajo Department/Division of Public Safety or any other in[d]ividual organization, that Navajo Nation DPS police officers and/or criminal investigators were paid at a rate less than the contract rate required by provision 106: “Salaries” contained in the doctument[’s] statement of work . . . [?]

Interrogatory No. 6: If you were at any time advised that Navajo DPS police officers and/or criminal investigators were paid at a rate less than the contract rate required by provision 106: “Salaries” contained in the document[’s] statement of work . . . , provide an explanation of the procedure followed to investigate the violation of the contract provision.

Interrogatory No. 7: Have you at any time been informed that Navajo DPS Law Enforcement officers and criminal investigators could be paid at a rate lower than the salaries paid law enforcement officers and criminal investigators with similar responsibilities employed directly by the Bureau of Indian Affairs[?]

Interrogatory No. 8: List the title, date of publication and page(s) of any and all rules, regulations, directives or statutes stating that Navajo DPS Law Enforcement officers and criminal investigators could be paid at a lesser rate than the salaries paid law enforcement officers and criminal investigators with similar responsibilities employed directly by the Bureau of Indian Affairs.

Interrogatory No. 9: List any and all documents including, but not limited to, books, manuals, [and] pamphlets utilized by awarding officials to administer, interpret and/or enforce the terms of the 638 Law Enforcement Contracts, Annual Funding Agreement and Statement of Work. . . .

Interrogatory No. 10: Did the proposed plan of the "Awarding Official['s] Technical Representative" . . . include a method for monitoring provision 106: Salaries for police officers and criminal investigators[?]

Interrogatory No. 10(A): If no, why [was there] no established method for monitoring this provision[?]

Interrogatory No. 10(B): If there was a method for monitoring provision 106: Salaries, please state its entire terms and the current location of the documents containing this method.

Interrogatory No. 11: Describe each and every procedure utilized to [e]nsure that each of the provisions of the Statements of Work . . . were complied with by the contractor (Navajo DPS).

Interrogatory No. 11(A): Were documents produced by the contractor (Navajo DPS) as proof of compliance with the provisions of the Statements of Work reviewed by other department[s] and/or persons?

Interrogatory No. 11(B): If so, state the name(s) of each department and/or person[s].

Id. Defendant raised several general objections to the interrogatories, including: (1) objecting to those questions that went beyond the scope of the court's ruling; (2) objecting to those questions that required the "release of information or production of documents that are exempt from disclosure"; and (3) objecting to the thirty-two interrogatories that exceeded the twenty-five interrogatory limit described in RCFC 33(a).[5] Id. Due to these objections, defendant responded only to the questions numbered two and four in each of the three sets of interrogatories. Id.

Plaintiffs are dissatisfied with defendant's limited response to their interrogatories, contending that the court's ruling permitted them to propound all of the above-quoted interrogatories.[6] Pls.' Mot. Compel 2-3 (citing Ruling, Mar. 4, 2008, at 8, 10). However,

---

[5] The last of these objections is particularly well-founded. Merely because plaintiffs labeled the interrogatories as "Non-Uniform," see Pls.' Mot. Compel 2-3, does not entitle plaintiffs to depart from the RCFC.

[6] Plaintiffs' inaccurate characterization of the court's March 4, 2008 ruling as a "compromise order," Pls.' Mot. Compel 2, demonstrates a profound misunderstanding of the court's role. The ruling contained no compromises; the court analyzed the facts and arguments presented by each party and the relevant case law to determine what discovery was permitted at this stage of the proceedings. Furthermore, plaintiffs egregiously misstate the scope of the court's ruling. According to plaintiffs, "the court permitted interrogatories requesting the

plaintiffs fail to specify precisely how the unanswered interrogatories related to "whether the BIA intended to benefit plaintiffs when it entered into the contract . . . ."[7] See Ruling, Mar. 4, 2008, at 8, 10. Plaintiffs merely indicate that "[s]ome" of their interrogatories concern what actions, if any, were taken by defendant to ensure contract compliance, which, according to plaintiffs, was a measure of defendant's intent to pay plaintiffs "the contractual rate." Pls.' Reply Compel 1. Defendant counters plaintiffs' position by reiterating that the unanswered interrogatories were well beyond the scope of the court's ruling. Def.'s Opp'n Compel 5. Moreover, argues defendant, "[t]he measures the awarding officials took are irrelevant to the question of whether the contract was intended to benefit plaintiffs and whether the contract contained a nondelegable duty to investigate."[8] Id. at 6. Yet, defendant fails to specifically explain in what ways the interrogatories were beyond the scope of the court's ruling and lacked relevance to plaintiffs' argument.

As a preliminary matter, the court notes its concern with defendant's responses to the interrogatories directed to Ms. Torrez, which indicate that Ms. Torrez had retired from the BIA and that despite its "good faith effort to search for her," it has "been unable to locate her." Pls.' Compel Ex. 1. If Ms. Torrez is a retired federal employee receiving a monthly retirement check from the federal government, then defendant should have little difficulty in locating her by contacting the personnel office at the Department of the Interior or the United States Office of Personnel Management. On the other hand, it may not be possible for defendant to locate Ms. Torrez if she merely retired from federal service without qualifying for retirement benefits. Because defendant's interrogatory responses do not specify Ms. Torrez's precise status, the court

---

awarding officials' interpretation of the contract pay provisions at issue as well as questions related to any and all measures the awarding officials took to [e]nsure compliance with the contract provisions." Id. The court permitted interrogatories on neither of these topics. Instead, the interrogatories were limited to "whether the BIA intended to benefit plaintiffs when it entered into the contract . . . ." Ruling, Mar. 4, 2008, at 8; accord id. at 10.

[7] Indeed, it appears that plaintiffs may not actually require responses to their interrogatories, given their stated belief that defendant has already conceded that they were intended third-party beneficiaries of the 638 contracts (notwithstanding the fact that defendant's alleged concession does not reflect the position of the other contracting party–the Navajo Nation). See Pls.' Mot. Compel 3 n.2 ("Defendant concedes and acknowledges that Navajo DPS police officers' and criminal investigators' salaries must be equal to or greater than the salaries of their BIA counterparts."); Pls.' Reply Compel 2 ("Defendant already concedes that the contract pay provisions were for the benefit of Plaintiffs.").

[8] Because the court permitted interrogatories on the sole issue of "whether the BIA intended to benefit plaintiffs when it entered into the contract," Ruling, Mar. 4, 2008, at 8; accord id. at 10, the court need not address whether the propounded interrogatories relate to any duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid.

cannot assess the adequacy of defendant's responses. Thus, the court directs defendant to file a status report describing Ms. Torrez's status and the efforts made thus far to locate her.

Turning to the relevance of plaintiffs' interrogatories, as noted above, in determining whether a contract intentionally benefits a third party, the court may look to (1) whether the language of the contract demonstrates that "the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him," Dewakuku, 271 F.3d at 1041; (2) "the governing statute and its purpose," to the extent that "the contract implements a statutory enactment," Roedler, 255 F.3d at 1352; or (3) "other objective evidence," Flexfab, L.L.C., 424 F.3d at 1262. Thus, to prevail on their motion to compel, plaintiffs must demonstrate precisely how their interrogatories would lead to the discovery of any of these three types of evidence. Yet, plaintiffs have failed to advance any explanation for how their interrogatories might lead to such discovery. Instead, plaintiffs rely on conclusory or nonspecific statements to support their motion, such as: (1) "Strictly adhering to the parameters of the court's order[,] Plaintiffs asked the awarding officials the following questions," Pls.' Mot. Compel 3; (2) "The discovery requested by Plaintiff[s] is well with the scope of the court's order," id. at 5; and (3) "Some of Plaintiffs['] interrogatories inquire of defendant's intent: what[,] if any[,] actions Defendant undertook to ensure the provisions of the contract were complied with[,] signifying that it intended that Plaintiffs be paid the contractual rate," Pls.' Reply Compel 1. Plaintiffs' statements are insufficient to meet their burden. Accordingly, the court denies plaintiffs' motion to compel with respect to their interrogatories.

**2. Document Production**

With respect to the documents to be produced by defendant pursuant to the court's March 4, 2008 ruling, plaintiffs contend that defendant failed to produce existing relevant documents. Pls.' Mot. Compel 4-5. The court allowed plaintiffs to obtain documents and correspondence "related to the interpretation of the 'pay provisions' of the relevant 638 contracts" as evidence of the contracting parties' intent to benefit them. Ruling, Mar. 4, 2008, at 8, 10. Plaintiffs assert that such documents and correspondence includes "several documents . . . regarding contract compliance and enforcement" generated and maintained by the Awarding Official's Technical Representative that are "specifically related to the pay provisions at issue" in this case. Pls.' Mot. Compel 4. The documents sought by plaintiffs are described in a "letter from the awarding official to the Awarding Official's Technical Representative," as follows:

> The duties and responsibilities of the [Awarding Official's Technical Representative] shall include, but are not limited to, the following:
>
> . . . .
>
> (b) Prepare a plan for monitoring the contract and submit it to the Awarding Official within 45 calendar days of receipt of the designation memorandum.

> . . . .
>
> (d) Advise the tribal organization of any violation of the contract terms and provisions and promptly bring the matter to the attention of the Awarding Official if the tribal organization fails or is unable to correct or stop the violation.

Id. at 5. Thus, the court infers that plaintiffs seek both the monitoring plan and any written communications concerning possible violations of the "pay provision" of the 638 contracts. See id. at 4-5; Pls.' Reply Compel 2. Defendant objects to plaintiffs' request as beyond the scope of the court's ruling. Def.'s Opp'n Compel 6. Specifically, defendant asserts that the documents requested by plaintiffs concern "'contract compliance and enforcement'" and not the "interpretation of the pay provisions." Id. at 6-7 (quoting Pls.' Mot. Compel 4).

Defendant correctly notes that plaintiffs are seeking documents and correspondence related to the contracting parties' compliance with and enforcement of the "pay provisions." However, plaintiffs have failed to explain precisely how such documents and correspondence demonstrate the contracting parties interpretation of the "pay provisions." Nor have plaintiffs provided a legal basis for their apparent contention that contract compliance and enforcement activities, which necessarily would occur after the execution of the contract, would constitute evidence of contract interpretation as it relates to an intent to benefit a third party.[9] Instead, once again, plaintiffs rely on the conclusory statement that the documents they request "are unequivocally within the scope of the documents the court ordered Plaintiffs could obtain." Pls.' Mot. Compel 5. Plaintiffs' conclusory statement is insufficient. Accordingly, the court denies plaintiffs' motion to compel with respect to their document requests.

### 3. The Court Will Provide Plaintiffs With the Opportunity to Refile Their Motion to Compel

The court is not averse to granting motions to compel, but it cannot grant such a motion unless the moving party provides the appropriate grounds upon which it bases its claim for relief. Here, the court denies plaintiffs' motion for failure to meet this burden. However, plaintiffs may refile their motion to compel interrogatory responses from defendant if they articulate specifically how each interrogatory will lead to the discovery of evidence of intent to benefit a third party, along with the legal basis for their contention. And, plaintiffs may refile their motion to compel

---

[9] In their reply brief, plaintiffs appear to argue that their document request is meant to support their contention that the 638 contracts described a duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid. See Pls.' Reply Compel 2. The court has previously made it clear that it will not allow any discovery related to this issue. Thus, to the extent that plaintiffs seek these documents and correspondence as evidence of a claim that the BIA was contractually obligated to investigate whether the Navajo Nation was paying plaintiffs the same salary paid to BIA employees, their motion to compel is denied.

the production of documents if they articulate the legal basis for their apparent contention that the specified documents and correspondence constitute evidence concerning the interpretation of the "pay provisions," as such evidence relates to an intent to benefit a third party.

## IV. CONCLUSION

Based on the foregoing, the court **GRANTS** plaintiffs' motion to supplement their response to defendant's motion to dismiss, **DENIES** plaintiffs' motion to expand the scope of discovery, and **DENIES** plaintiffs' motion to compel with the right to renew. The court establishes the following schedule for further proceedings:

- Defendant shall file a status report describing Ms. Torrez's status and its efforts to locate her by **no later than Friday, October 31, 2008**.
- If plaintiffs choose to refile their motion to compel under the guidelines described above, they shall do so **no later than Friday, October 31, 2008**.
- If plaintiffs have not filed a motion to compel by October 31, 2008, the court will issue an order setting a schedule for supplemental briefing concerning defendant's motion to dismiss.

Moreover, because the court has denied plaintiffs' motion to compel in its entirety, plaintiffs' request for sanctions is **DENIED**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge