# In the United States Court of Federal Claims

No. 07-195 C
(Filed: March 17, 2009)

```
*************************************
DARRELL BOYE et al.,                 *
                                     *
            Plaintiffs,              *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
            Defendant.               *
*************************************
```

### RULING ON PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL DISCOVERY

Before the court in the above-captioned case is Plaintiffs' Supplemental Motion to Compel Discovery. In their motion, plaintiffs request that the court permit them to depose Awarding Official Dolores F. Torrez and a designated Awarding Official's Technical Representative. With the limitations described below, the court grants plaintiffs' narrow request.

### I.  BACKGROUND

The court has, on three prior occasions, ruled on discovery motions in this case. See Order, Nov. 18, 2008 ("November Order"); Ruling Pls.' Discovery Mots., Sept. 24, 2008 ("September Ruling"); Ruling Def.'s Mot. Protective Order, Mar. 4, 2008 ("March Ruling"). Thus, only an abbreviated review of the factual background and procedural history is necessary.

### A.  Factual Background[1]

Plaintiffs are current and former employees of the Navajo Nation Division of Public Safety ("Navajo DPS"), most of whom reside within the Navajo Reservation in Arizona. Am. Compl. ¶¶ 4-5. The Bureau of Indian Affairs ("BIA") of the United States Department of the Interior ("Department of the Interior") is responsible for providing law enforcement on the Navajo Reservation and, accordingly, contracts out law enforcement and criminal investigation services to the Navajo DPS via "638 contracts." Id. ¶¶ 7, 9. Plaintiffs' sole cause of action is for breach of contract, based on their purported status as third-party beneficiaries of various 638 contracts between the Navajo DPS and the BIA. Id. ¶¶ 11-18. Specifically, they allege that they are not receiving wages and benefits equal to the wages and benefits paid to their BIA

---

[1] For the purposes of this ruling, the facts are taken solely from the Amended Complaint.

counterparts, as required by the relevant 638 contracts.  Id.  Thus, plaintiffs seek an accounting and payment of all amounts due to them, costs, attorney's fees, interest, and "such other and further relief as the court deems just and proper."  Am. Compl. Wherefore ¶¶ 1-5.

### B. Procedural History

Counsel for the government filed Defendant's Corrected Motion to Dismiss on July 23, 2007, seeking dismissal of plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), and under the theory of claim preclusion.  Shortly after the close of briefing, on October 3, 2007, plaintiffs filed Plaintiffs' Motion to Stay Proceedings to Conduct Discovery.  After considering the parties' arguments, the court granted plaintiffs' motion to stay on November 20, 2007, and indicated its intent to exercise its broad discretion to manage discovery:

> The court finds that a limited amount of discovery is necessary.  In particular, plaintiffs are entitled to present evidence that supports this court's jurisdiction over their complaint, and it appears that defendant is in possession of such documents.  Plaintiffs may also seek to discover evidence that rebuts defendant's specific arguments under RCFC 12(b)(6).

Order, Nov. 20, 2007, at 1-2 (footnote omitted).

Subsequent to the court's order, the parties commenced discovery.  See Order, Jan. 15, 2008, at 1.  Shortly thereafter, an issue arose with respect to the scope of discovery permitted by the court and, accordingly, defendant filed a motion for a protective order.  On March 4, 2008, the court ruled on defendant's motion, making three determinations, only two of which are relevant to the instant motion. One of the court's conclusions was that plaintiffs were entitled to the following discovery, beyond the contracts already produced by defendant, to establish jurisdiction based on their purported status as third-party beneficiaries to the 638 contracts:

- Plaintiffs may obtain the documents related to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007. "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other provision that directly relates to the pay or benefits to be paid pursuant to the contracts.

- Plaintiffs may obtain the correspondence between the BIA and the Navajo Nation that relates to the interpretation of the "pay provisions" of the relevant 638 contracts for the years 2001 through 2007.  "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other

    provision that directly relates to the pay or benefits to be paid pursuant to the contracts.

- Plaintiffs may propound interrogatories on the "Awarding Officials" of the relevant 638 contracts for the years 2001 through 2007, on the sole issue of whether the BIA intended to benefit plaintiffs when it entered into the contract signed by the "Awarding Official." Once plaintiffs have received the interrogatory responses, they may petition the court to conduct depositions. Plaintiffs' request, if any, must explain why the requested depositions are needed to support their jurisdictional claim.

March Ruling 8-9. Another of the court's conclusions was that because plaintiffs had not alleged that the 638 contracts contained ambiguity regarding a nondelegable duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid, they were not entitled to discovery on that issue. Id. at 9-10. Based upon its conclusions, the court set forth a schedule for the propounding of interrogatories and the requests for the production of documents. Id. at 10-11.

      While the parties were engaged in the aforementioned discovery, plaintiffs filed motions to supplement their response to defendant's motion to dismiss and to expand the scope of discovery. As briefing on plaintiffs' motions continued, additional disputes arose regarding the plaintiffs' interrogatories and requests for the production of documents. Because the parties were unable to resolve their disputes, plaintiffs filed a motion to compel discovery. The court ruled on plaintiffs' three motions on September 24, 2008. The court first granted plaintiffs' motion to supplement their response to defendant's motion to dismiss and denied plaintiffs' motion to expand the scope of discovery. September Ruling 4-7, 14. Neither of these rulings is at issue here.

      The court then denied plaintiffs' motion to compel. Id. at 8-13. With respect to plaintiffs' interrogatories, the court concluded that plaintiffs had not demonstrated how the interrogatories related to "whether the BIA intended to benefit plaintiffs when it entered into the contract signed by the 'Awarding Official'":

> [I]n determining whether a contract intentionally benefits a third party, the court may look to (1) whether the language of the contract demonstrates that "the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him," Dewakuku [v. Martinez, 271 F.3d 1031, 1041 (Fed. Cir. 2001)]; (2) "the governing statute and its purpose," to the extent that "the contract implements a statutory enactment," Roedler [v. Dep't of Energy, 255 F.3d 1347, 1352 (Fed. Cir. 2001)]; or (3) "other objective evidence," Flexfab, L.L.C. [v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005)]. Thus, to prevail on their motion to compel, plaintiffs must demonstrate precisely how their interrogatories would lead to the discovery of any of these three types of evidence.

> Yet, plaintiffs have failed to advance any explanation for how their interrogatories might lead to such discovery. Instead, plaintiffs rely on conclusory or nonspecific statements to support their motion, such as: (1) "Strictly adhering to the parameters of the court's order[,] Plaintiffs asked the awarding officials the following questions"; (2) "The discovery requested by Plaintiff[s] is well with the scope of the court's order"; and (3) "Some of Plaintiffs['] interrogatories inquire of defendant's intent: what[,] if any[,] actions Defendant undertook to ensure the provisions of the contract were complied with[,] signifying that it intended that Plaintiffs be paid the contractual rate." Plaintiffs' statements are insufficient to meet their burden.

Id. at 12 (citations to the record omitted). With respect to plaintiffs' requests for the production of documents, which focused on a plan for monitoring contract compliance and "communications concerning possible violations of the 'pay provision' of the 638 contracts," the court concluded that plaintiffs had not established that the documents constituted evidence of an intent to benefit a third party:

> [P]laintiffs are seeking documents and correspondence related to the contracting parties' compliance with and enforcement of the "pay provisions." However, plaintiffs have failed to explain precisely how such documents and correspondence demonstrate the contracting parties['] interpretation of the "pay provisions." Nor have plaintiffs provided a legal basis for their apparent contention that contract compliance and enforcement activities, which necessarily would occur after the execution of the contract, would constitute evidence of contract interpretation as it relates to an intent to benefit a third party. Instead, once again, plaintiffs rely on the conclusory statement that the documents they request "are unequivocally within the scope of the documents the court ordered Plaintiffs could obtain." Plaintiffs' conclusory statement is insufficient.

Id. at 13 (footnote & citation omitted). Although the court denied plaintiffs' motion to compel, it afforded plaintiffs an opportunity to correct the deficiencies:

> [P]laintiffs may refile their motion to compel interrogatory responses from defendant if they articulate specifically how each interrogatory will lead to the discovery of evidence of intent to benefit a third party, along with the legal basis for their contention. And, plaintiffs may refile their motion to compel the production of documents if they articulate the legal basis for their apparent contention that the specified documents and correspondence constitute evidence concerning the interpretation of the "pay provisions," as such evidence relates to an intent to benefit a third party.

Id. at 13-14. The court then set forth a deadline for plaintiffs to file a renewed motion to compel if plaintiffs opted to pursue that option. Id. at 14.

Plaintiffs exercised their right to renew and filed a second motion to compel on November 12, 2008.  However, as noted in the court's November 18, 2008 order, plaintiffs' second motion to compel failed to conform with the court's September 24, 2008 ruling.  With respect to plaintiffs' interrogatories, the court noted:

> [P]laintiffs do not separately analyze each interrogatory as the court directed.  In fact, plaintiffs do not even address how the propounded interrogatories, as a whole, will lead to the discovery of evidence of intent to benefit a third party.  Instead, plaintiffs appear to assert that some or all of the interrogatories requested information concerning the administration of the contracts, and that the contracting parties' course of conduct during contract administration provided evidence of the contract's meaning.[FN1]  While course of conduct can be relevant to interpreting a contract, plaintiffs fail to explain how each propounded interrogatory would reveal evidence of course of conduct.  The court requires much more specificity than what was provided by plaintiffs.[FN2]
>
>> [FN1] Although plaintiffs do not expressly describe the interrogatories in this manner or explicitly make this argument, the court infers the description and argument from the following passage, reproduced verbatim: . . . .
>>
>> [FN2] Specifically, the court would expect plaintiffs to identify each contested interrogatory, discuss how that interrogatory would lead to the discovery of evidence of intent to benefit a third party (e.g., course of conduct or otherwise), and provide legal support for their contention.

November Order 2 & nn.1-2 (citations omitted).  And, with respect to the document production requests, the court noted:

> Along with contending that the requested documents provide relevant evidence of course of conduct, plaintiffs present the following two arguments: (1) "The requested discovery at a minimum is relevant to elaborate on the contract provisions requiring the [Bureau of Indian Affairs]'s yearly auditing and inspection which is interpreted as the duty to ensure compl[ia]nce"; and (2) "These documents provide evidence of Defendant's recognition of its duty to ensure compliance with provisions of the contract including the pay provision."  At the outset, the court must reject the latter two arguments.  The court has repeatedly held that "because plaintiffs [have] not alleged that the 638 contracts contained ambiguity regarding a nondelegable duty on the part of the BIA to investigate and ensure that plaintiffs were being properly paid, they [are] not entitled to discovery on that issue."  Plaintiffs have provided the court with no reason to alter this holding.  As a result, plaintiffs are left with their argument that the requested documents "define[] Defendant's interpretation of the pay provision" through course of conduct.  Yet, as with their arguments regarding the

>   interrogatories, plaintiffs fail to explain how each document would reveal evidence of course of conduct that reflected an intent of the contracting parties to benefit them. For example, plaintiffs would need to explain how a possible violation of a "pay provision" means that they were intended third-party beneficiaries of the contract. Merely stating that it is so is insufficient.

Id. at 3 (citations omitted). Accordingly, because plaintiffs "failed to provide the factual and legal basis for their discovery requests that the court required," the court denied their second motion to compel. Id. However, the court provided plaintiffs with "one further opportunity to pursue their motion to compel," so long as the motion "clearly and cogently conform[ed]" with the guidelines set forth in the order and the court's September 24, 2008 ruling. Id.

Thus, plaintiffs filed the instant motion to compel on January 6, 2009. Instead of requesting a court order directing defendant to respond to their interrogatories and document production requests as contemplated by the court in its September 24, 2008 ruling and November 18, 2008 order, plaintiffs impliedly invoked the court's directive in its March 4, 2008 ruling to "petition the court to conduct depositions":

>   Based on the above[,] Plaintiffs request leave to take Ms. Torrez['s] deposition and the deposition of at least one sub-AOTR to explain why they believed that the specific mandates regarding salaries supported by statute and CFR[]s could be ignored.² Equally[,] they should also explain why[,] if in fact there were shortfalls in financing the law enforcement operations[,] they did not advise the Navajo Nation of its rights and the process to appeal, or . . . , [to] file a lawsuit to have their contractual rights enforced. Those that suffered the loss are the law enforcement officers who[] . . . performed a lonely, stressful[,] demanding job at a rate of pay Congress specifically forbade.
>
>   WHEREFORE, Plaintiffs respectfully request the court permit them to depose Ms. Torrez, and one designated sub-AOTR[,] on the issues described above.

Mot. 8 (footnote added). In its opposition brief, defendant notes plaintiffs' failure to renew their prior motion to compel. Def.'s Opp'n Pls.' Supplemental Mot. Compel Disc. 1, 3. Further,

---

   ² In their motion, plaintiffs indicate that a "sub-AOTR" is an Awarding Official's Technical Representative, but in their reply brief, they describe a "sub-AOTR" as an assistant to an Awarding Official's Technical Representative. Compare Pls.' Supplemental Mot. Compel Disc. ("Mot.") 6, with Pls.' Reply Supplemental Mot. Compel Disc. ("Reply") 3. According to documents contained in the appendix attached to defendant's reply in support of its motion to dismiss, which indicates that an Awarding Official's Technical Representative is separate and distinct from a Subordinate Awarding Official's Technical Representative, App. 25, 27-32, plaintiffs' contention in their reply brief is correct.

defendant objects to plaintiffs' deposition requests, arguing that the proposed topics for the depositions do not relate to whether plaintiffs were intended third-party beneficiaries of the 638 contracts. Id. at 1, 4. Rather, defendant asserts, the proposed topics concern the "failures" of the BIA "to properly administer the contract and ensure compliance," and thus relate solely to plaintiffs' claim that the BIA had a duty to investigate and ensure that plaintiffs were being properly paid–an issue about which the court had prohibited discovery. Id. at 4 (citing November Order 3). In their reply brief, plaintiffs, for the first time, discuss the interrogatories and document production requests. Reply 1-3 (interrogatories), 3-6 (document requests). At the conclusion of their reply brief, plaintiffs request that "the court order Defendant to full respond to the submitted discovery and permit the depositions of Ms. Torrez and at least one [Awarding Official's Technical Representative] and sub-AOTR." Id. at 7.

## II. DISCUSSION

As a threshold matter, the court concludes that plaintiffs have abandoned their attempt to compel defendant's responses to their interrogatories and document production requests. The court permitted plaintiffs "one further opportunity to pursue their motion to compel." November Order 3. Despite this clear statement, plaintiffs made absolutely no references to the unanswered interrogatories or unfulfilled document production requests in their motion to compel.[3] Plaintiffs only addressed the interrogatories and document production requests in their reply brief after defendant mentioned the deficiency in its opposition brief. These late contentions do not rectify plaintiffs' failure to raise the issues in their motion to compel.[4] See Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). The court has provided plaintiffs with ample opportunity to file a compliant

---

[3] Indeed, in their motion to compel, plaintiffs only refer to the responses to one interrogatory (Interrogatory No. 5) provided by Ms. Torrez and another Awarding Official, Sharon Pinto. See Mot. 2-3 & n.1. However, plaintiffs do not argue that these two responses are in any way inadequate.

[4] Moreover, even if the court were to incorporate the new contentions in plaintiffs' reply brief into their motion to compel, it would find that plaintiffs had still failed to provide the necessary factual and legal basis for all but one of the interrogatories. Plaintiffs merely assert that Ms. Torrez failed to respond to Interrogatories No. 1, 1(A), 1(B), 1(C), 7, 8, 9, 10(A), 10(B), 11(A), and 11(B), Reply 2-3, contending that those "questions have fundamental relevancy" because "[i]t is a basic principle of contract law that the conduct of the parties to a contract is evidence of its terms," id. at 3. As the court noted in its November 18, 2008 order: "While course of conduct can be relevant to interpreting a contract, plaintiffs fail to explain how each propounded interrogatory would reveal evidence of course of conduct." November Order 2. The same conclusion would be warranted here.

motion to compel, see November Order 3; September Ruling 13-14; their failure to take advantage of these opportunities is a problem of their own making.

Thus, the court is left with plaintiffs' request to depose Ms. Torrez and one designated Awarding Official's Technical Representative on the following two issues: (1) "to explain why they believed that the specific mandates regarding salaries supported by statute and CFR[]s could be ignored," and (2) to "explain why[,] if in fact there were shortfalls in financing the law enforcement operations[,] they did not advise the Navajo Nation of its rights and the process to appeal, or . . . , [to] file a lawsuit to have their contractual rights enforced." Mot. 8. In its March 4, 2008 ruling, the court permitted plaintiffs to petition the court to request depositions of the "Awarding Officials" of the relevant 638 contracts, but required plaintiffs to explain, in their request, "why the requested depositions are needed to support their jurisdictional claim." March Ruling 8-9. The court wanted to ensure that, as with the interrogatories from which the depositions were to be based, any depositions would be conducted in a manner designed to elicit information concerning whether plaintiffs were intended third-party beneficiaries of the 638 contracts.

In the instant motion to compel, plaintiffs appear to contend that the conduct of Ms. Torrez and other BIA personnel, all of whom were responsible for monitoring contract compliance and ensuring that the contracting parties did not violate the terms of the contracts, is relevant to whether the parties to the 638 contracts intended plaintiffs to benefit from those contracts. See Mot. 6. Yet, plaintiffs offer only the most generic of legal arguments to support their apparent contention that contract compliance and enforcement activities constitute evidence of contract interpretation as it relates to an intent to benefit a third party: "It is a basic principle of contract law that the conduct of the parties to a contract is evidence of its terms." Reply 3. While course of conduct may be relevant, plaintiffs have failed to provide any legal support for the application of this principle to this case. Moreover, plaintiffs have not alleged that any of the terms of the contract, including the payment term, is ambiguous, which is a predicate for the court's consideration of extrinsic evidence. See TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions.").

Although plaintiffs' legal support for their deposition requests is less than satisfactory, the court does find that limited depositions are appropriate at this stage of the case. Defendant has provided plaintiffs with an interrogatory response from Ms. Torrez that addresses the "pay provisions" of the 638 contracts for which she was the Awarding Official, and plaintiffs are entitled to explore this response with Ms. Torrez as it relates to this court's jurisdiction. Moreover, the court is unwilling to foreclose consideration of plaintiffs' contention that contract compliance and enforcement activities may constitute evidence of contract interpretation as it

relates to an intent to benefit a third party, notwithstanding the lack of legal support proffered by plaintiffs.[5]

Accordingly, the court will allow plaintiffs to conduct depositions that conform with the following guidelines:

> 1. Plaintiffs may depose Ms. Torrez. The deposition shall be limited to the following topics: (1) Ms. Torrez's responses to Interrogatory No. 2 and Interrogatory No. 4, as the responses relate to the court's jurisdiction; (2) whether Ms. Torrez monitored contract compliance; (3) if Ms. Torrez monitored contract compliance, how she did so; (4) if Ms. Torrez monitored contract compliance, whether she noted any violations of the "pay provisions";[6] (5) if Ms. Torrez noted a violation of a "pay provision," what actions she took to report and remedy the violation; and (6) whether, at the time that the Navajo DPS and the BIA executed each of the 638 contracts for which she was the Awarding Official, the Navajo DPS and the BIA intended plaintiffs to benefit from the relevant 638 contract. Any attempt by plaintiffs to stray from these topics will constitute sanctionable behavior.
>
> 2. Plaintiffs may depose one Awarding Official's Technical Representative or Subordinate Awarding Official's Technical Representative for one of the 638 contracts at issue in this case.[7] The deposition shall be limited to the following topics: (1) whether the representative monitored contract compliance; (2) if the

---

[5] However, if plaintiffs ultimately fail to provide such legal support in their supplemental briefing, the court will be unable to credit any purported evidence concerning contract compliance and enforcement activities when ruling on the third-party beneficiary issue. To date, plaintiffs have failed to cite case law (or other legal sources) that supports their proposition that contract performance can constitute evidence of intended third-party beneficiary status. Plaintiffs state a general legal proposition, but more is required. If discovery yields evidence supporting plaintiffs' legal theory, plaintiffs should not rest on bald assertions of legal principles, but rather provide concrete examples supporting those assertions.

[6] "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other provision that directly relates to the pay or benefits to be paid pursuant to the contracts.

[7] In the appendix attached to defendant's reply in support of its motion to dismiss, Danny Breuninger is identified as an Awarding Official's Technical Representative and Michelle Kedelty is identified as the Subordinate Awarding Official's Technical Representative for the 2002 638 contract. App. 27, 30. However, plaintiffs may name any of the Awarding Official's Technical Representatives or Subordinate Awarding Official's Technical Representatives identified in the 638 contracts in their possession.

Case 1:07-cv-00195-MMS   Document 64   Filed 03/17/09   Page 10 of 10

representative monitored contract compliance, how the representative did so; (3) if the representative monitored contract compliance, whether the representative noted any violations of the "pay provisions";[8] and (4) if the representative noted a violation of a "pay provision," what actions the representative took to report and remedy the violation. Any attempt by plaintiffs to stray from these topics will constitute sanctionable behavior.

3. In general, plaintiffs' questions shall be designed to elicit information concerning whether plaintiffs were intended third-party beneficiaries of the 638 contracts–the only issue about which the court is permitting discovery.

4. Plaintiffs should take care not to inquire about the existence of a nondelegable duty to investigate and ensure compliance with the "pay provisions" of the contract–an issue about which the court has prohibited discovery. In other words, plaintiffs may inquire about whether the deponents monitored contract compliance and enforced the "pay provisions" and how they did so, but not whether the deponents were, or believed they were, required to monitor contract compliance and enforce the "pay provisions."

The foregoing guidelines are not intended to set forth the specific questions that plaintiffs must pose, or to provide an exhaustive list of questions that plaintiffs may pose, to the witnesses at deposition. Rather, the four numbered paragraphs provide a framework for inquiry. Plaintiffs may wish to pose additional questions to the witnesses; however, they may do so only if those questions are confined to the topics identified above. In sum, the court's goal is not to hamstring plaintiffs, but to avoid a fishing expedition that would seek to explore irrelevant material.

### III.  CONCLUSION

With the limitations described above, the court **GRANTS** plaintiffs' motion to compel. The parties should confer and schedule the depositions **with due haste**. Plaintiffs, by **no later than Wednesday, April 15, 2009**, shall file a status report informing the court of the deposition dates. Once the court receives plaintiffs' status report, it will issue an order setting a schedule for supplemental briefing concerning defendant's motion to dismiss.

**IT IS SO ORDERED.**

                                                  s/ Margaret M. Sweeney
                                                  MARGARET M. SWEENEY
                                                  Judge

---

[8] "Pay provisions" means the "Salary" paragraph in the contracts already in the record before the court, the equivalent provision in the remaining relevant 638 contracts, and any other provision that directly relates to the pay or benefits to be paid pursuant to the contracts.